# COMMONWEALTH OF MASSACHUSETTS
## PLYMOUTH COUNTY
### Docket Report

**1883CV01017 Barbara Craw on behalf of Herself and other similarly situated individuals vs. Hometown America, LLC et al**

| | | | |
|---|---|---|---|
| **CASE TYPE:** | Torts | **FILE DATE:** | 09/25/2018 |
| **ACTION CODE:** | B99 | **CASE TRACK:** | F - Fast Track |
| **DESCRIPTION:** | Other Tortious Action | | |
| **CASE DISPOSITION DATE** | | **CASE STATUS :** | Open |
| **CASE DISPOSITION:** | Pending | **STATUS DATE :** | 09/25/2018 |
| **CASE JUDGE:** | | **CASE SESSION:** | Civil B |

| DCM TRACK | | |
|---|---|---|
| **Tickler Description** | **Due Date** | **Completion Date** |
| Service | 12/24/2018 | 09/15/2018 |
| Answer | 01/23/2019 | |
| Rule 12/19/20 Served By | 01/23/2019 | |
| Rule 15 Served By | 01/23/2019 | |
| Rule 12/19/20 Filed By | 02/22/2019 | |
| Rule 15 Filed By | 02/22/2019 | |
| Rule 12/19/20 Heard By | 03/25/2019 | |
| Rule 15 Heard By | 03/25/2019 | |
| Discovery | 07/22/2019 | |
| Rule 56 Served By | 08/21/2019 | |
| Rule 56 Filed By | 09/20/2019 | |
| Final Pre-Trial Conference | 01/20/2020 | |
| Judgment | 09/24/2020 | |

| PARTIES | |
|---|---|
| **Plaintiff**<br>Barbara Craw on behalf of Herself and other similarly situated individuals | **Private Counsel**                                   674669<br>Ethan Horowitz<br>Northeast Justice Center<br>Northeast Justice Center<br>50 Island St<br>Ste 203B<br>Lawrence, MA 01840<br>Work Phone (978) 888-0624<br>Added Date: 09/25/2018 |
| **Defendant**<br>Hometown America Management, LLC | |
| **Defendant**<br>Hometown America, LLC | A TRUE COPY ATTEST<br><br>Clerk of Courts |

**COMMONWEALTH OF MASSACHUSETTS**
PLYMOUTH COUNTY
Docket Report

| | |
|---|---|
| **Defendant**<br>Hometown Oak Point I, LLC | |
| **Defendant**<br>Hometown Oak Point II, LLC | |
| **Defendant**<br>Hometown Oakhill, LLC | |

| FINANCIAL DETAILS | | | | | |
|---|---|---|---|---|---|
| Date | Fees/Fines/Costs/Charge | Assessed | Paid | Dismissed | Balance |
| 09/25/2018 | Civil Filing Fee (per Plaintiff)<br>Receipt: 11501 Date: 09/25/2018 | 240.00 | 240.00 | 0.00 | 0.00 |
| 09/25/2018 | Civil Security Fee (G.L. c. 262, § 4A)<br>Receipt: 11501 Date: 09/25/2018 | 20.00 | 20.00 | 0.00 | 0.00 |
| 09/25/2018 | Civil Surcharge (G.L. c. 262, § 4C)<br>Receipt: 11501 Date: 09/25/2018 | 15.00 | 15.00 | 0.00 | 0.00 |
| 09/25/2018 | Fee for Blank Summons or Writ<br>(except Writ of Habeas Corpus) MGL<br>262 sec 4b Receipt: 11501 Date:<br>09/25/2018 | 35.00 | 35.00 | 0.00 | 0.00 |
| | **Total** | **310.00** | **310.00** | **0.00** | **0.00** |

| INFORMATIONAL DOCKET ENTRIES | | | |
|---|---|---|---|
| Date | Ref | Description | Judge |
| 09/25/2018 | | Attorney appearance<br>On this date Ethan Horowitz, Esq. added as Private Counsel for Plaintiff Barbara Craw | |
| 09/25/2018 | | Case assigned to:<br>DCM Track F - Fast Track was added on 09/25/2018 | |
| 09/25/2018 | 1 | Original civil complaint filed. | |
| 09/25/2018 | 2 | Civil action cover sheet filed. | |
| 09/25/2018 | | Notice of 93A complaint sent to Attorney General | |
| 10/15/2018 | 3 | Service Returned for<br>Defendant Hometown America, LLC: Service accepted by counsel; | |
| 10/15/2018 | 4 | Service Returned for<br>Defendant Hometown Oakhill, LLC: Service accepted by counsel; | |
| 10/15/2018 | 5 | Service Returned for<br>Defendant Hometown Oak Point I, LLC: Service accepted by counsel; | |
| 10/15/2018 | 6 | Service Returned for<br>Defendant Hometown Oak Point II, LLC: Service accepted by counsel; | |
| 10/15/2018 | 7 | Service Returned for<br>Defendant Hometown America Management, LLC: Service accepted by counsel; | |
| 10/19/2018 | 8 | Notice of Removal to the United States District Court filed by<br><br>defendants, Hometown America, LLC Hometown America Management, LLC, Hometown Oakhill, LLC , Hometown Oak Point I, LLC and Hometown Oak Point II, LLC<br><br>Applies To: Hometown America, LLC (Defendant); Hometown Oakhill, LLC (Defendant); Hometown Oak Point I, LLC (Defendant); Hometown Oak Point II, LLC (Defendant); Hometown America Management, LLC (Defendant) | |

*10-22-18*

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSSETS

| | |
|---|---|
| **BARBARA CRAW,**<br>**on behalf of herself and others**<br>**similarly situated,** | )<br>)<br>) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **HOMETOWN AMERICA, LLC;** | ) |
| **HOMETOWN AMERICA** | ) |
| **MANAGEMENT, LLC; HOMETOWN** | ) |
| **OAKHILL, LLC; HOMETOWN** | ) |
| **OAKPOINT I, LLC; and HOMETOWN** | ) |
| **OAKPOINT II, LLC** | ) |
| | ) |
| **Defendants.** | ) |

Case No. _____

I hereby certify on _10/17/18_ that the
foregoing document is true and correct copy of the
☐ electronic docket in the captioned case _10/15/18_
☑ electronically filed original filed on _10/15/18_
☐ original filed in my office on _____
Robert M. Farrell
Clerk, U.S. District Court
District of Massachusetts

By: _____
Deputy Clerk

## NOTICE OF REMOVAL

To the Clerk of the United States District Court for the District of Massachusetts and to

Plaintiff Barbara Craw and her attorneys of record:

**PLEASE TAKE NOTICE** that Defendants Hometown America, LLC ("Hometown

America"), Hometown America Management, LLC ("Hometown America Management"),

Hometown Oakhill, LLC ("Hometown Oakhill"), Hometown Oak Point I, LLC ("Hometown

Oak Point I") and Hometown Oak Point II, LLC ("Hometown Oak Point II")[1] (collectively,

"Defendants"), hereby file this Notice of Removal on the grounds set forth below.

   1.     The state court action is removable to this Court, and this Court has jurisdiction

over this civil action, under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, as well

as 28 U.S.C. §§ 1367, 1441(a) and 1453, because this is a putative class action involving more

than 100 putative class members, the aggregate amount in controversy, excluding interest and

costs, exceeds $5,000,000, and there is minimal diversity.

---

[1] Hometown Oak Point I and Hometown Oak Point II are together referred to as "Hometown Oak Point."

## I.    PLEADINGS AND PROCESS

2.    On or about September 25, 2018, Plaintiff Barbara Craw ("Plaintiff") commenced this putative class action, filing her original Class Action Complaint in the Superior Court of the Commonwealth of Massachusetts, County of Plymouth, titled *Barbara Craw v. Hometown America, LLC, et al.*, Case No. 1883CV01017 (the "Action"). *See generally* Class Action Complaint for Injunctive Relief and Damages ("Complaint" or "Compl."), attached as Exhibit B to the Declaration of Lisa C. Goodheart ("Goodheart Decl."), Exhibit 1 to this Notice of Removal.

3.    Plaintiff's Complaint asserts causes of action on behalf of herself and a putative class against: (i) all Defendants for violation of the Massachusetts Consumer Protection Act, General Laws c. 93A § 9 ("Consumer Protection Act"); and (ii) Hometown Oakhill and Hometown Oak Point for breach of contract; additionally, on behalf of herself only, she asserts a cause of action against (iii) Hometown America Management and Hometown Oakhill, for violation of the Massachusetts Quiet Enjoyment Statute, General Laws c. 186 § 14 ("Quiet Enjoyment Statute").[2]

4.    Defendants were first served with the Summons and Complaint on September 28, 2018.

5.    Pursuant to 28 U.S.C. § 1446(a), Defendants are requesting certified copies of all records and proceedings in the Action, together with a certified copy of the docket sheet for the Action, and will file the same with this Court within 28 days of the filing of this Notice of Removal, in accordance with Local Rule 81.1(a).

---

[2] Compl. at pp. 18-21.

6.     Because Plymouth County, Massachusetts is located within the District of Massachusetts, this Notice of Removal is properly filed in this Court pursuant to 28 U.S.C. §§ 101, 1441, and 1446.[3]

## II.    CITIZENSHIP OF THE PARTIES

### A.    Citizenship of Plaintiff

7.     As alleged, Plaintiff Barbara Craw is, and was at the time the Complaint was filed, domiciled in and a citizen of the Commonwealth of Massachusetts.[4]

### B.    Citizenship of Defendants

8.     Hometown America is, and was at the time the Complaint was filed, a Delaware limited liability company with its principal place of business in Chicago, Illinois.[5] "For purposes of determining subject matter jurisdiction under CAFA … a limited liability company is considered an unincorporated association and is therefore a citizen of both the state where it has its principal place of business and the state under whose laws it is organized." *Khath v. Midland Funding, LLC*, Civil Action No. 14-14184-MLW, 2016 WL 1267387, at *4 n.4 (D. Mass. Jan. 7, 2016), *report and recommendation adopted as modified*, 2016 WL 1275606 (D. Mass. Mar. 30, 2016); 28 U.S.C. § 1332(d)(10). Pursuant to 28 U.S.C. § 1332(d)(2), Hometown America is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the Commonwealth of Massachusetts within the meaning of the Acts of Congress relating to the removal of cases. *See McMorris v. TJX Companies, Inc.*, 493 F. Supp. 2d 158, 162 (D. Mass. 2007) ("[U]nder CAFA, diversity jurisdiction exists in class actions so long as

---

[3] While filing this Notice of Removal, Defendants expressly preserve and do not waive any defense based on lack of personal jurisdiction. *See, e.g., In re Lupron Marketing and Sales Practices Litig.*, 245 F.Supp.2d 280, 302 (D. Mass. 2003) ("A defendant's removal of an action does not waive an objection to lack of personal jurisdiction."). Defendants also do not waive and specifically preserve any and all other defenses applicable to the claims of putative class members.
[4] Compl. ¶28.
[5] Declaration of Stephen Braun ("Braun Decl."), attached as Exhibit 2 to this Notice of Removal, at ¶2.

'any member of a class of plaintiffs is a citizen of a State different from any defendant,' or 'any member of a class of plaintiffs is ... a citizen or subject of a foreign state and any defendant is a citizen of a State.'") (quoting 28 U.S.C. § 1332(d)(2)(A)-(B)).

9.      Hometown America Management is, and was at the time the Complaint was filed, a Delaware limited liability company with its principal place of business in Chicago, Illinois.[6]  Pursuant to 28 U.S.C. § 1332(d)(2), Hometown America Management is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the Commonwealth of Massachusetts within the meaning of the Acts of Congress relating to the removal of cases. *See McMorris*, 493 F. Supp. 2d at 162.

10.      Hometown Oakhill is, and was at the time the Complaint was filed, a Delaware limited liability company with its principal place of business in Chicago, Illinois.[7]  Pursuant to 28 U.S.C. § 1332(d)(2), Hometown Oakhill is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the Commonwealth of Massachusetts within the meaning of the Acts of Congress relating to the removal of cases. *See McMorris*, 493 F. Supp. 2d at 162.

11.      Hometown Oak Point I is, and was at the time the Complaint was filed, a Delaware limited liability company with its principal place of business in Chicago, Illinois.[8]  Pursuant to 28 U.S.C. § 1332(d)(2), Hometown Oak Point I is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the Commonwealth of Massachusetts within the meaning of the Acts of Congress relating to the removal of cases. *See McMorris*, 493 F. Supp. 2d at 162.

12.      Hometown Oak Point II is, and was at the time the Complaint was filed, a

---

[6] Braun Decl. at ¶3.
[7] Braun Decl. at ¶4.
[8] Braun Decl. at ¶5.

Delaware limited liability company with its principal place of business in Chicago, Illinois.[9]

Pursuant to 28 U.S.C. § 1332(d)(2), Hometown Oak Point II is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the Commonwealth of Massachusetts within the meaning of the Acts of Congress relating to the removal of cases. *See McMorris*, 493 F. Supp. 2d at 162.

## III.    THIS COURT HAS JURISDICTION OVER THIS ACTION UNDER CAFA

13.    Plaintiff filed this putative class action against Defendants on behalf of an alleged class of "more than one-thousand (1,000) current and former resident-households of the Oakhill and Oak Point manufactured housing communities, which have lived in either community at any time since September of 2012" (the "Class").[10]

14.    The gravamen of Plaintiff's Complaint is that Defendant Hometown America, through its affiliates, implemented a policy that unlawfully shifts the burden of maintaining and repairing infrastructure at the residents' home-sites to the residents.[11]

15.    Plaintiff specifically alleges that "[t]hrough its enforcement of the Policy, Hometown has attempted to saddle its residents with the responsibility for home-site infrastructure that Hometown, as both a manufactured home community operator and landlord, is required by law to maintain, repair and replace."[12]

16.    In the Complaint, Plaintiff requests that the Court grant the following relief:

(a) "Enter an order against all Defendants, jointly and severally, awarding to Ms. Craw and the members of the Putative Class the actual, incidental, consequential and multiple damages suffered by them or the maximum

---

[9] Braun Decl. at ¶6.
[10] Compl. ¶91.
[11] *See generally* Compl.
[12] Compl. ¶5.

amount of statutory or nominal damages provided or permitted by law;

(b) "Issue an injunction ordering Defendants within sixty days to submit for the Court's approval written policies and procedures whereby Defendants will assume responsibility for the maintenance, repair and replacement of the home-site infrastructure located at Oakhill as well as Oak Point and, upon Court approval, issue an injunction ordering all Defendants to implement said policy";

(c) "Issue an injunction ordering Defendants to immediately perform all maintenance, repair and replacement work to home-site infrastructure located at Oakhill and Oak Point so that Oakhill and Oak Point home sites are all in good repair, as required by law";

(d) "Enter an order against all Defendants, jointly and severally, awarding to Ms. Craw and the members of the Putative Class the litigation costs and reasonable attorney's fees associated with the prosecution of this action";

(e) "Enter an order against all Defendants, jointly and severally, awarding to Ms. Craw and the members of the Putative Class pre- and post-judgment interest on all applicable amount awards by the Court";

(f) "Enter any further order the Court deems necessary for the just and proper resolution of this matter."[13]

17.     In 2005, "CAFA was enacted with the stated purpose of expanding the number of class actions that could be heard in federal court." *Pazol v. Tough Mudder Inc.*, 819 F.3d 548, 552 (1st Cir. 2016). Accordingly, "'no antiremoval presumption attends cases invoking CAFA.'" *Khath*, 2016 WL 1267387, at *5 n.5 (quoting *Dart Cherokee Basin Operating Co.*,

---

[13] Compl., Request for Relief at pp. 21-22.

*LLC v. Owens*, 135 S. Ct. 547, 554 (2014)); *see also McMorris*, 493 F. Supp. 2d at 166
("CAFA implements its statutory policy by favoring federal courts over state courts."); *Amoche
v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 47-48 (1st Cir. 2009) (noting how CAFA "made a
federal forum more accessible to removing defendants by imposing only a minimal diversity
requirement, eliminating the statutory one-year time limit for removal, and providing for
interlocutory appeal of a federal district court's remand order"); *Youtsey v. Avibank Mfg., Inc.*,
734 F. Supp. 2d 230, 236, n.3 (D. Mass. 2010) (commenting that "it may be even *easier* to
remove a CAFA case to federal court than a non-CAFA case") (emphasis in original).

18.    Accordingly, CAFA expands federal jurisdiction over class actions and
expressly provides that class actions filed in state court are removable to federal court where:
(a) the putative class contains at least 100 class members; (b) any member of the putative class
is a citizen of a state different from that of any defendant; and (c) the aggregate amount in
controversy for the putative class exceeds $5,000,000, exclusive of interest and costs.[14] 28
U.S.C. § 1332(d); *accord Manson v. GMAC Mortg., LLC*, 602 F. Supp. 2d 289, 293 (D. Mass.
2009).

19.    As discussed below, this case satisfies CAFA's requirements for federal
jurisdiction.  In addition, none of the exceptions to CAFA jurisdiction apply here. 28 U.S.C.
§ 1332(d).

### A.    The Putative Class Exceeds 100 Members.

20.    CAFA's first requirement is that the putative class consist of at least 100

---

[14] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in
controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that
Plaintiff can state a claim or is entitled to any relief. Defendants deny liability, deny Plaintiff is entitled to any relief,
and deny that a class can be properly certified in this matter. *See Amoche*, 556 F.3d at 51 ("Finally, the plaintiffs'
likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is
what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover.") (emphasis in
original).

persons.   28 U.S.C. § 1332(d)(5)(B).   That requirement is readily met here. Plaintiff's

Complaint alleges that there are "approximately one-hundred seventy-five (175) resident

families of Oakhill" and "approximately nine-hundred seventy-five (975) resident families of

Oak Point."[15]  Plaintiff alleges a Class of "more than one-thousand (1,000) current and former

resident-households of the Oakhill and Oak Point manufactured housing communities."[16]

Plaintiff's allegations and definition of the Class in the Complaint are plainly sufficient to

establish that the putative class exceeds 100 persons.  *See, e.g., Williams v. Am. Honda Fin.

Corp.*, Civil Action No. 14-12859-LTS, 2014 WL 5494914, at *2 (D. Mass. Oct. 30, 2014)

(numerosity requirement satisfied since, "[a]lthough the complaint does not specify the size of

the prospective class, it extrapolates from 'Honda's loan volume and the number of auto loan

defaults and auto repossessions resulting from that volume' that 'the prospective class numbers

in the thousands .... As such, the complaint arguably provides enough information from which

Honda could have ascertained that the first two elements required for federal jurisdiction

under CAFA are satisfied here."); *see also Dart Cherokee*, 135 S. Ct. at 554. Thus, the

requirement of 28 U.S.C. § 1332(d)(5)(B) is satisfied.

   **B.**    **Minimal Diversity Exists.**

   21.    The second CAFA requirement is minimal diversity – at least one putative class

member and at least one defendant must be citizens of different states.   28 U.S.C.

§ 1332(d)(2)(A).

   22.    Here, at least one putative class member is a citizen of the Commonwealth of

Massachusetts, namely, Plaintiff Barbara Craw.[17] Plaintiff alleges that she "has resided in

---

[15] Compl. ¶¶30, 31.
[16] Compl. ¶ 91.
[17] Compl. ¶28.

Oakhill," a community in Attleboro, Massachusetts, "since 2006."[18] And at least one defendant is diverse from Plaintiff. In fact, all Defendants are diverse from Plaintiff. As discussed above, all Defendants are Delaware limited liability companies whose principal places of business are in Chicago, Illinois,[19] and thus are citizens of the States of Delaware and Illinois for diversity purposes. *See Khath*, 2016 WL 1267387, at *4 n.4. Thus, the minimal diversity requirement is satisfied. 28 U.S.C. § 1332(d)(2).

<blockquote><strong>C.    The CAFA Amount in Controversy Requirement is Satisfied.</strong></blockquote>

23.    CAFA's third and final requirement is that that the aggregate amount in controversy exceed $5,000,000 for the entire putative class, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2); 1332(d)(6) ("[T]he claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interests and costs.").

24.    The Supreme Court has instructed that, in a notice of removal, the removing party seeking to invoke CAFA jurisdiction "need include only a *plausible allegation* that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554 (citing 28 U.S.C. § 1446(a) (emphasis added); *see also Waith aka v. Amazon.com, Inc.*, Civil Action No. 17-40141-TSH, 2018 WL 4092074, at *1 (D. Mass. Aug. 28, 2018) (same). "While a defendant's notice of removal requires only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold, evidence establishing the amount is required when a plaintiff contests the initial allegation." *Waith*, 2018 WL 4092074, at *1 (citing *Dart Charokee*, 135 S. Ct. at 554). Even then, the First Circuit has explained that defendants need only show a "reasonable probability" that more than $5 million is in dispute. *Pazol*, 819 F.3d at

---

[18] Compl. ¶28.
[19] *See supra*, at ¶¶8-12.

552.

25.     The ultimate inquiry is what amount is put in controversy by the plaintiff's complaint, not what the plaintiff will actually be awarded. "'[T]he plaintiff['s] likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiff[ ] [is] ultimately likely to recover.'" *Youtsey*, 734 F. Supp. 2d at 237-38 (quoting *Amoche*, 556 F.3d at 48).

26.     "To determine the amount in controversy, the court first looks to whether the plaintiff made specific damage allegations in the complaint." *Kersey v. Staples*, Civil Action No. 17-11267-NMG, 2018 WL 2077598, at *2 (D. Mass. May 2, 2018), *appeal filed* May 15, 2018 (citing *Coventry Sewage Associates v. Dworkin Realty Co.*, 71 F.3d 1, 6 (1st Cir. 1995)). "In the CAFA context, if a Complaint is uncertain or ambiguous as to the amount in controversy, a court should assess whether the amount is satisfied by looking to the 'entire record.'" *Garick v. Mercedes-Benz USA, LLC*, Civil Action No. 17-12042-IT, 2018 WL 1570163, at *3 (D. Mass. Mar. 30, 2018) (quoting *Amoche*, 556 F.3d at 51). A defendant may establish the jurisdictional amount by "calculation from the complaint's allegations," "by reference to the plaintiff's informal estimates or settlement demands," or "by introducing evidence, in the form of affidavits from the defendant's employees about how much it would cost to satisfy the plaintiff's demands." *Amoche v. Guarantee Tr. Life Ins. Co.*, Civil Action No. 07-371-JD, 2008 WL 3843903, at *4 (D.N.H. Aug. 14, 2008), *aff'd*, 556 F.3d 41 (1st Cir. 2009) (citing *McPhail v. Deere & Co.*, 529 F.3d. 947, 954 (10th Cir. 2008); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006)); *cf. Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 78 (1st Cir. 2014) ("correspondence from the plaintiff to the defendant concerning damages can constitute an 'other paper' for purposes of Section 1446(b)(3)").

27.     In this case, Plaintiff's Complaint seeks on behalf the Class "actual, incidental, consequential and multiple damages suffered by them or the maximum amount of statutory or nominal damages provided or permitted by law."[20] Plaintiff does not attach a specific dollar amount to any of these damages claims in the Complaint. However, other documents within the "entire record" demonstrate that the amount in controversy exceeds $5,000,000. *Amoche*, 556 F.3d at 51.

28.     For example, the Civil Action Cover Sheet that accompanied Plaintiff's Complaint states that Plaintiff is seeking $11,000,000 in damages.[21] *See Toro v. CSX Intermodal Terminals, Inc.*, 199 F. Supp.3d 320, 323-24 (D. Mass. 2016) (amount demanded by plaintiff on state court cover sheet relevant).

29.     Consistent with that estimation of its damages, Plaintiff also sent demand letters to Defendants seeking $11,040,000.[22] District courts within the First Circuit have held that "a settlement demand is relevant evidence of the amount in controversy." *See, e.g.*, *Hogan v. Wal-Mart Stores E., L.P.*, Civil Action No. 13-603 S, 2014 WL 66658, at *4 (D.R.I. Jan. 8, 2014); *Ramchandra v. Amtrak Nat. R.R. Corp.*, 345 F. Supp. 2d 33, 34 (D. Mass. 2004) (same). So, too, have courts from outside the First Circuit. *See, e.g.*, *Cohn v. Petsmart*, 281 F.2d 837, 840 (9th Cir. 2002) ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."); *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) ("[D]ocuments that demonstrate plaintiff's own estimation of its claim are a proper means of supporting the allegations in the notice of removal, even though they cannot be used to support the ultimate amount of liability."); *Else v. Ford Motor Co.*, Civil Action No. 14-2687-L, 2014 WL 7404125, *5 (N.D. Tex. Dec. 31, 2014) (pre-suit

---

[20] Compl. at pp. 21-22.
[21] *See* Goodheart Decl., Ex. A at Civil Action Cover Sheet.
[22] *See* Goodheart Decl. at ¶4; *id.* at Ex. C.

demand letter "is relevant and significant to the amount in controversy in this case because it is compelling evidence of Plaintiff's assessment of the value of her case").

30.     Here, in demand letters sent to Defendants on August 21, 2018 as required by the Consumer Protection Act, Plaintiff demanded from Defendants one-million, six hundred and eighty-thousand dollars ($1,680,000) for current and former Oakhill residents, plus nine-million, three-hundred and sixty thousand dollars ($9,360,000) for current and former Oak Point residents.[23] These dollar amounts, according to Plaintiff's letters, "represent[] a retroactive abatement of rent corresponding to critical leasehold services that were improperly withheld during the last four years."[24] Plaintiff's demand letters assumed a rent abatement of $200 per month, which Plaintiff's counsel estimated to be one-third of the monthly lot rent at Oakhill and Oak Point for each of the 175 home-sites at Oakhill and each of the 975 home-sites at Oak Point.[25]

31.     200 dollars per month for 48 months,[26] multiplied by 1150 putative class members, totals $11,040,000.

32.     Thus, the "entire record" in the Action, including Plaintiff's Civil Case Cover Sheet and its demand letters to Defendants, have "plausibly" put into controversy an amount that exceeds the $5,000,000 threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6). *Dart Charokee*, 135 S. Ct. at 554.

33.     Plaintiff alleges a claim under the Massachusetts Consumer Protection Act. Plaintiff also seeks on behalf of the Class "the actual, incidental, consequential and multiple damages suffered by them or the maximum amount of statutory or nominal damages provided

---

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] Plaintiff's calculation reflects that the applicable statute of limitations on her Consumer Protection Act claim is 4 years. *See* Mass. Gen. L. c. 260, § 5A.

or permitted by law."[27] This Court has stated that "[w]hen a plaintiff makes a claim under a statute including a damage multiplier, a court must apply that factor in evaluating the amount in controversy." *Lucas v. Ultima Framingham LLC*, Civil Action No. 12-12380, 2013 WL 5405668, at *3 (D. Mass. Sept. 27, 2013). Although Defendants dispute Plaintiff's entitlement to any damages, "[t]reble damages" are recoverable for a violation of the Consumer Protection Act under certain circumstances. *See Baker v. Equity Residential Management, L.L.C.*, 996 F. Supp. 2d 1, 7 (D. Mass. Feb. 12, 2014) ("[T]reble damages under Mass. Gen. L. c. 93A, § 9(3) … may be included in the jurisdictional minimum calculation.").

34.    Plaintiff's Complaint also seeks attorneys' fees.[28] In the First Circuit, attorneys' fees are properly included in the amount in controversy if an underlying statute or contract authorizes an award of attorneys' fees. *See Spielman v. Genzyme Corp.*, 251 F.3d 1, 6-7 (1st Cir. 2001). The Consumer Protection Law allows plaintiffs to collect attorney's fees. *See* Mass. Gen. L. c. 93A, § 9(4). Although Defendants dispute Plaintiff's entitlement to recover such fees, a fair estimate of potential attorneys' fees would be 25% of damages. *See Bezdek v. Vibram, USA Inc.*, 79 F. Supp. 3d 324, 349 (D. Mass. 2015) ("Within the First Circuit, courts generally award fees in the range of 20–30% [of the common fund], with 25% as 'the benchmark.'").

35.    For all the foregoing reasons, the $5,000,000 CAFA amount in controversy requirement is satisfied here.  28 U.S.C. §§ 1332(d)(2), 1332(d)(6).

**D.    The Exceptions to CAFA Jurisdiction Do Not Apply.**

36.    CAFA provides two mandatory exceptions and one discretionary exception to the application of federal jurisdiction. *See* 28 U.S.C. §§ 1332(d)(3)-(4). In this case, it is clear

---

[27] Compl. at pp. 21-22.
[28] Compl., Request for Relief at pp. 21-22.

that no exception applies. Each CAFA exception requires, as a starting point, that the "primary defendants" are citizens of the forum state or that "significant relief" is sought from a citizen of the forum state. *See* 28 U.S.C. § 1332(d)(3)-(4) (local controversy CAFA exception requires that "significant relief" be sought from an in-state defendant; home state and discretionary CAFA exceptions require that all "primary defendants" be resident defendants). When determining citizenship under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Therefore, Hometown America, Hometown America Management, Hometown Oakhill, and Hometown Oak Point are not citizens of Massachusetts for purposes of CAFA. *See supra*, at ¶¶8-12; *Khath*, 2016 WL 1267387, at *4 n.4 (stating that limited liability companies are "unincorporated associations" for purposes of CAFA).

37.    Accordingly, because the CAFA prerequisites are met and none of the exceptions apply, this civil action is properly removable under CAFA.

## V.    **TIMELINESS OF REMOVAL**

38.    Defendants were first served with the Summons and Complaint on September 28, 2018, *see supra*, at ¶4, and this Notice of Removal is timely filed with this Court within thirty (30) days of that date.

39.    Defendants have sought no similar relief with respect to this matter.

## VI.    **ALL OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED**

40.    Venue is proper in this district under 28 U.S.C. § 1446(a) because this district and division embrace the place in which the removed action has been pending.

41.    So far as Defendants are aware, no further proceedings occurred in this Action prior to Defendants filing of this Notice of Removal.

42.    A Notice of Filing of Notice of Removal, with a copy of the Notice of Removal attached, will be filed promptly in the Superior Court of the Commonwealth of Massachusetts, County of Plymouth, in accordance with the provisions of 28 U.S.C. § 1446(d).

43.    Written notice of the filings of this Notice of Removal will be given to the adverse parties as required by law.

44.    For all the foregoing reasons, this Court has original jurisdiction under 28 U.S.C. § 1332, 28 U.S.C. § 1367, 28 U.S.C. § 1441 (a), and 28 U.S.C. § 1453.

45.    In the event that any questions should arise with regard to the propriety of the removal of this Action, Defendants respectfully request the opportunity to present a brief and oral argument in support of their positions expressed herein.

**WHEREFORE**, Defendants hereby give notice that all further proceedings in this matter shall take place in the United States District Court for the District of Massachusetts, unless and until held otherwise by that Court.

HOMETOWN AMERICA, LLC, HOMETOWN AMERICA
MANAGEMENT, LLC, HOMETOWN OAKHILL, LLC,
HOMETOWN OAK POINT I, LLC, and HOMETOWN
OAK POINT II, LLC,

By their attorneys,


/s/ Tristan P. Colangelo
Lisa C. Goodheart (BBO No. 552755)
goodheart@sugarmanrogers.com
Tristan P. Colangelo (BBO No. 682202)
colangelo@sugarmanrogers.com
SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
101 Merrimac Street, Suite 900
Boston, MA 02114-4737
(617) 227-3030

Dated:  October 15, 2018

## CERTIFICATE OF SERVICE

I, Tristan P. Colangelo, hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail and email on October 15, 2018.

Ethan Horowitz, Esq.
Northeast Justice Center
50 Island Street, Ste. 203B
Lawrence, MA 01840


/s/ Tristan P. Colangelo
Tristan P. Colangelo

4833-6101-2088, v. 2

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

| | | |
|---|---|---|
| BARBARA CRAW, on behalf of herself and other similarly situated individuals, | X X X | |
| Plaintiff, | X X X | SUPERIOR COURT CIVIL ACTION NO: 1883CvO1017 |
| vs. | X X | JURY TRIAL |
| HOMETOWN AMERICA, LLC, a Delaware limited liability company; HOMETOWN AMERICA MANAGEMENT, LLC, a Delaware limited liability company; HOMETOWN OAKHILL, LLC, a Delaware limited liability company; HOMETOWN OAK POINT I, LLC, a Delaware limited liability company; HOMETOWN OAK POINT II, LLC, a Delaware limited liability company, | X X X X X X X X X | DEMANDED |
| Defendants. | X X | |

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

SEP 25 2018

Clerk of Court

## CLASS ACTION COMPLAINT
## FOR INJUNCTIVE RELIEF AND DAMAGES

### INTRODUCTION

1.      As one of the largest operators of manufactured housing communities in the Commonwealth, Defendant Hometown America, LLC ("Hometown") makes management decisions that impact approximately two-thousand (2,000) Massachusetts families which pay rent so that the manufactured houses they own may sit on land in each such community, also called home sites, leased to them by Hometown or one of its affiliates.

2.      Although commonly referred to as mobile homes, these families' manufactured houses are in all practical respects immobile, given that relocation of such housing is generally impracticable due to the design or age of the home, the prohibitive cost of relocating the home or the shortage of sites to which the home may be relocated – an economic reality which confers

tremendous leverage upon Hometown in its dealings with the residents of the manufactured housing communities it owns.

3.     Unfortunately for the hundreds of resident families who reside in Hometown's Oakhill and Oak Point manufactured home communities, located respectively in Attleboro and Middleborough, Hometown has abused this leverage in order to shirk the most basic obligation it owes to those who lease home sites in both communities – the obligation to maintain the land on which those residents' manufactured homes sit.

4.     Specifically, for at least the last six years, Hometown has implemented an unlawful policy at Oakhill and Oak Point that shifts onto those communities' residents the substantial burden of maintaining, repairing and replacing the permanent improvements built into the land on those residents' leased home sites ("Policy"), in violation of the Manufactured Housing Community Law as well as decades of jurisprudence protecting the rights of residential tenants.

5.     Through its enforcement of the Policy, Hometown has attempted to saddle its residents with the responsibility for home-site infrastructure that Hometown, as both a manufactured home community operator and landlord, is required by law to maintain, repair and replace.

6.     Such infrastructure includes the cement slab upon which many residents' homes sit, the paved walkways and driveways leading from each home to the street and the underground sprinkler systems which water the grass on rented home sites, among other permanent improvements built into the leased land of both communities.

7.     At best, the Policy has resulted in a substantial inconvenience for Oakhill and Oak Point residents, many of whom have been forced to choose between either coping with the loss

of important home-site infrastructure or paying out-of-pocket to maintain the same – such as cracking walkways, deteriorating driveways and aging underground sprinklers, among others.

8.      At worst, the Policy has resulted in perilous conditions for Oakhill and Oak Point residents, many of whose leased home sites are routinely inundated with water because cement slabs or paved walkways and driveways have not been graded properly or because the land on which their homes sit has not otherwise been adequately maintained so as to repel water away from residents' homes.

9.      Regardless of the specific result, Hometown – in conjunction with the other four defendants which on paper assist Hometown with setting policy and managing operations at Oakhill and Oak Point – has collected millions of dollars in home-site rent from Oakhill and Oak Point residents for maintenance services related to the maintenance of home-site infrastructure that neither Hometown nor any other related entity has provided.

10.      Plaintiff Barbara Craw has lived with her disabled son in Oakhill for more than ten years – where the manufactured home she owns sits on land leased to her by Hometown affiliates Defendant Hometown Oakhill, LLC and Defendant Hometown America Management, LLC – and has suffered under the Policy more than most.

11.      Since Ms. Craw moved into Oakhill, Ms. Craw's leased home site has routinely flooded, flooding which over the years has inundated her yard, rendered her driveway unusable and damaged both the paved walkways around her home as well as her front porch.

12.      After three years of complaining to Hometown's Oakhill management team about these conditions, management installed additional drains on Ms. Craw's home site, drains which alleviated some of the flooding in her yard but did not resolve the ongoing inundation of her driveway and paved walkways.

13.    Moreover, Oakhill management refused to repair the damage to infrastructure located on Ms. Craw's leased home site that was caused by such flooding.

14.    When the new drains failed to resolve the poor conditions on her home site and Oakhill management began to ignore her complaints anew, Ms. Craw started withholding rent and asserted to management that the inundation of her home site was the result of inherent defects with the grading and layout of the land itself – defects which would require more costly corrective action.

15.    Instead of addressing the problems raised by Ms. Craw, Hometown hired an attorney who attributed the flooding to weather anomalies and threatened Ms. Craw with eviction if she failed to pay rent.

16.    Terrified of how she and her disabled son would cope with an eviction, Ms. Craw relented, ceased withholding rent and scaled back her complaints.

17.    Nevertheless, Ms. Craw's home site has continued to flood on a routine basis and Oakhill management has continued to ignore Ms. Craw's meek requests that it repair the flood damage to her leased home site as well as that it make the necessary changes to the home site which would prevent future flooding.

18.    Oakhill management has even gone so far as to include a provision in the standard resident Lease Agreement which purports to shift onto community residents the responsibility for maintaining the permanent improvements built into residents' leased home sites – a provision which directly contravenes the Manufactured Housing Community Law and its regulations.

19.    Regrettably, Oakhill is not the only manufactured home community in the Commonwealth impacted by Hometown's unlawful Policy.

20.    Just as it did at Oakhill, within a few years of its purchase of Oak Point — where residents' manufactured homes sit on land leased to them by Hometown affiliates Defendants Hometown Oak Point I, LLC and Hometown Oak Point II, LLC as well as Defendant Hometown America Management, LLC – Hometown effected a similar roll-out of the Policy that shifted the burden of improperly maintained home-site infrastructure and resultant flooding onto community residents.

21.    In the early years of Hometown's tenure as operator of Oak Point, effectuation of the Policy included a campaign of obfuscation by Oak Point management, which intentionally ignored residents' complaints about flooding and assured particularly vocal residents that the excessive water on their leased home sites was not a real problem or could be fixed with minor repairs.

22.    As the complaints of flooding grew, Hometown – just as it did at Oak Hill – began disclaiming all responsibility for maintenance to home-site infrastructure and hired lawyers in an effort to silence residents.

23.    Hometown went even so far as to allow a senior Hometown manager to represent publicly to local government officials that Oak Point residents are responsible for maintaining the permanent improvements built into their leased home sites – a statement which directly contravenes the Manufactured Housing Community Law and its regulations as well as decades of jurisprudence protecting the rights of residential tenants.

24.    By this action, Ms. Craw – on behalf of herself and other similarly-situated residents of Oakhill and Oak Point – seeks an injunction ordering Defendants to implement policies and procedures maintaining, repairing and replacing as necessary all permanent elements

of the home sites in those communities so that all home sites are safe and in good repair, as required by law.

25.     By this action, Ms. Craw – on behalf of herself and other similarly-situated current and former residents of Oakhill and Oak Point – seeks damages from Defendants to compensate those residents for injuries they have suffered as a result of Defendants' improper refusal to maintain, repair or replace the permanent elements of the home sites in those communities.

## JURISDICTION & VENUE

26.     Ms. Craw invokes the jurisdiction of the Court pursuant to Sections 3 and 4 of General Laws Chapter 212 – as the amount in controversy implicated by the instant action is greater than twenty-five-thousand dollars ($25,000), pursuant to Section 1 of General Laws Chapter 214 – insofar as Ms. Craw seeks equitable redress for Defendants' misconduct and pursuant to Section 9(1) of General Laws Chapter 93A – insofar as Ms. Craw seeks to hold Defendants liable for their violations of the Consumer Protection Act.

27.     Venue before the Court is proper pursuant to Sections 1 and 8 of Chapter 223, as Defendants Hometown Oak Point I, LLC and Hometown Oak Point II, LLC maintain their usual place of business in Middleborough within the County of Plymouth.

## PARTIES

28.     Plaintiff Craw is a disabled, single-mother who has resided in Oakhill with her disabled minor son since 2006.

29.     Defendant Hometown America, LLC ("Hometown") – through its affiliates – indirectly owns, manages and sets policy at over twenty-four-thousand (24,000) home sites located at sixty (60) manufactured housing communities throughout the country, six (6) of which

are located in the Commonwealth and which include Oakhill and Oak Point – located in Attleboro, and Middleborough, Massachusetts, respectively.

30.    Defendant Hometown Oakhill, LLC ("Hometown Oakhill") is an affiliate of Hometown which owns the land on which Oakhill is located and the sole business of which is to lease such land to the approximately one-hundred seventy-five (175) resident families of Oakhill.

31.    Defendants Hometown Oak Point I, LLC and Hometown Oak Point II, LLC (collectively, "Hometown Oak Point") are affiliates of Hometown which own the land on which Oak Point is located and the sole business of which is to lease such land to the approximately nine-hundred seventy-five (975) resident families of Oak Point.

32.    Defendant Hometown America Management, LLC ("Hometown Management") is an affiliate of Hometown that has represented itself to be the managing agent at or beneficial owner of Oakhill or Oak Point.

<u>FACTS</u>

I.    HOMETOWN'S IMPLEMENTATION OF THE POLICY AT OAKHILL

33.    In January of 2006, Hometown Oakhill purchased the land on which the Oakhill manufactured housing community sits from the community's former owner for $6.99 million.

34.    At the time of Hometown Oakhill's purchase of the Oakhill community, Hometown Oakhill had existed for less than four months.

35.    At the time Hometown Oakhill completed the purchase of the Oakhill community, Hometown was the sole Controlling Person and Guarantor of Hometown Oakhill – pursuant to the mortgage securing the land on which Oakhill sits in the amount of the loan that financed Hometown Oakhill's purchase of that community.

36.    At or around the time of Hometown Oakhill's purchase of the Oakhill community, Hometown Oakhill entered into a Management Agreement obligating Hometown Management to operate Oakhill.

37.    Shortly after Hometown Oakhill's purchase of the Oakhill community, Ms. Craw purchased a manufactured home at Oakhill and was instructed to begin paying monthly rent to "Hometown America" so that her home could sit on and her family could occupy a leased home site ("Site No. 100").

38.    Ms. Craw decided to purchase a manufactured home at and lease Site No. 100 because the transaction provided her with an affordable method of becoming a first-time homeowner while she managed her career and raised her then-infant son.

39.    At or around the time Ms. Craw moved into her manufactured home located on Site No. 100, Oakhill Community Manager Tammy Feeney provided Ms. Craw with various documents to sign, which formalized the terms of Ms. Craw's tenancy at Oakhill and which Ms. Feeney countersigned on behalf of Hometown Oakhill and Hometown Management.

40.    During her first year residing at Oakhill, Site No. 100 routinely flooded during and after rainstorms – flooding which regularly covered the driveway and cement walkways built into Site No. 100, flooding which often inundated the side-yard of Site No. 100 and flooding which sometimes even reached the crawl space under Ms. Craw's home.

41.    Ms. Craw – who was particularly concerned about how the regular dampness might create mold that would aggravate her son's asthma – promptly complained about the flood problem to Community Manager Feeney who suggested the water issues were the result of anomalous weather conditions.

8

42.    However, the flooding on Site No. 100 did not vary from year to year as Ms. Feeney had suggested, but remained consistent.

43.    Moreover, the flooding often created dangerous conditions on Site No. 100 as the flood waters routinely covered the driveway and front walkways on Site No. 100 – a condition which prevented Ms. Craw from parking her car in the driveway and required her to cross ankle-deep water so that she and her young son could reach her home's front door.

44.    The first step of Ms. Craw's front porch, which was often submerged in water, even rotted out.

45.    And so, Ms. Craw continued to complain to Ms. Feeney about the conditions on Site No. 100, complaints which Ms. Feeney finally addressed in or around November of 2009 by causing a channel drain and catch basin to be installed on or near Site No. 100 – in an attempt to divert accumulated water away from Ms. Craw's home.

46.    Although these improvements reduced the flooding in Site No. 100's side-yard, they did not resolve the underlying problem with the home site and water continued to inundate the driveway and cement walkways on Site No. 100 – such that the cement walkways on the Site began to crack and crumble.

47.    Frustrated by Oakhill's slow and ineffective response to the problem conditions on her leased home site, in or around May of 2010, Ms. Craw suggested to Ms. Feeney that Site No. 100's permanent elements – such as the cement around her home or the driveway – might need to be re-graded or otherwise improved in order to prevent the regular flooding.

48.    During this conversation, Ms. Craw also requested that Ms. Feeney arrange for the repair of damage to Site No. 100's cement walkways caused by the continual flooding.

49.     In response to Ms. Craw's suggestion, Ms. Feeney stated that Oakhill was not responsible for such improvements or repairs – an assertion which surprised Ms. Craw, who responded in turn by formally withholding her home-site rent until Oakhill resolved the ongoing perilous conditions at Site No. 100.

50.     Shortly thereafter, Ms. Craw received a letter from the Law Offices of Russo & Scolnick – drafted by Attorney Mark R. Laverty – who wrote on behalf of Hometown.

51.     In this letter, Attorney Laverty attributed Ms. Craw's concerns to anomalous weather, asserted that Oakhill management had resolved her concerns, suggested that any remaining concerns were Ms. Craw's responsibility to remedy and threatened to evict Ms. Craw and her son if she did not pay rent.

52.     Terrified by Attorney Laverty's letter, Ms. Craw promptly paid her rent and tried to make due with the difficult situation.

53.     Yet, despite Attorney Laverty's assertions to the contrary, the flooding problem on Site No. 100 had not been resolved and water continued to inundate the home site's driveway and cement walkways just as before.

54.     While Ms. Craw continued to complain about the flooding on her home site to Ms. Feeney, Ms. Craw's fear of retaliation greatly tempered her complaints and Ms. Feeney's responses oscillated between disclaiming responsibility and blaming anomalous weather conditions.

55.     In or around 2013, Ms. Craw received a cancer diagnosis, a condition which forced her to leave her job so that she could focus her energies on her health and which restricted her ability to complain to Oakhill management about the problematic conditions on Site No. 100.

56.    Nevertheless, in the intervening years, Ms. Craw has continued to raise concerns about the condition of Site No. 100 with the new Oakhill Community Manager – Josephine Santa Fe (née Pizzimenti) who replaced Ms. Feeney – as well as with Hometown Regional Manager Kyle Howieson, the former of whom has consistently responded to Ms. Craw's concerns with non-committal platitudes and the latter of whom usually fails to respond at all.

57.    Ironically, although Oakhill has remained steadfast in its refusal to provide critical infrastructure maintenance services to Ms. Craw's leased home site, her monthly rent payments have continued to increase, from four-hundred dollars ($400) per month when she first moved into the community in 2006 to six-hundred ten dollars ($610) per month at present – an increase of more than fifty-percent (50%)

58.    In August of this year, in an effort to control her annual rent increases, Ms. Craw requested that Community Manager Santa Fe provide Ms. Craw with a copy of the community's standard five-year Lease Agreement.

59.    Upon review of the Lease Agreement, Ms. Craw was surprised to learn that Hometown's informal policy of evading responsibility for maintaining, repairing and replacing the permanent improvements on her leased home site was in fact a formal written policy.

60.    Specifically, Section 6 of the proposed Lease Agreement provides in relevant part:

> 6. HOMESITE AND HOMESITE MAINTENANCE
> The physical improvements provided for the exclusive use of RESIDENT are the homesite referenced above and utility connections located on the homesite. Other improvements located on the homesite at the initiation of this Agreement such as concrete surfaces, if any, trees and other fixtures are to be maintained by RESIDENT during the period of RESIDENT's tenancy. ...

11

II.    HOMETOWN'S IMPLEMENTATION OF THE POLICY AT OAK POINT

61.    In November of 2011, Hometown Oak Point purchased the land on which the Oak Point community sits from the community's former owners for more than $55 million.

62.    At the time Hometown Oak Point completed the purchase of the Oak Point community, the Hometown Oak Point entities had existed for less than one month.

63.    At the time of Hometown Oak Point's purchase of the Oak Point community, Hometown assumed liability for, and was listed as the Key Principal in, the mortgage securing the land on which Oak Point sits.

64.    Following Hometown Oak Point's purchase of the Oak Point community, Hometown Oak Point entered into an arrangement through which Hometown Management became the property manager of Oak Point.

65.    Accordingly, the standard Oak Point Home Site Agreement lists Hometown Oak Point as the lessors and Hometown Management as the "beneficial owner."

66.    By no later than 2012, Oak Point General Manager Fred Taylor and Oak Point Community Manager Peter Conant were aware of water drainage problems that were impacting home sites leased to various Oak Point residents and that were caused by improperly maintained permanent improvements to those home sites.

67.    Yet, in response to inquiries from Oak Point residents respecting water accumulation on their leased home sites, Mr. Conant routinely suggested that the reported standing water on each home site's cement slab or in each home site's yard was a normal occurrence that should not concern residents or otherwise acted as if the reported problems were not serious.

68.     If pushed by residents, General Manager Taylor or his interim successor – Oak Point Office Manager Debbera Silva – would agree to make minor repairs to address those residents' concerns – such as installing an extra drain on a home site.

69.     However, at no time did Oak Point management acknowledge that the ongoing water accumulation problems at Oak Point were community-wide problems and caused by permanent home-site improvements that were improperly graded or otherwise inadequately maintained to repel water from residents' homes.

70.     By 2015, the growing number of water accumulation complaints from Oak Point residents became so great that Oak Point management – specifically Oak Point's new General Manager Doreen Lang – began advising residents that the reported flooding as well as the property damage it caused, though serious and substantial, were the responsibility of the residents.

71.     Moreover, Oak Point management's explicit direction to residents that they assume responsibility for the maintenance of the infrastructure on their leased home sites extended well beyond issues related to flooding and included representations to residents that residents were also responsible for repairing basic wear-and-tear to home-site infrastructure, such as paved walkways, paved driveways or underground sprinkler systems.

72.     In or around November of 2017, Oak Point residents began to organize and through these efforts eventually submitted complaints about the worsening conditions at over one-hundred home sites to the U.S. Department of Housing and Urban Development ("HUD"), which responded by opening an official inquiry into conditions at Oak Point.

73.    Moreover, numerous residents also began complaining about conditions at Oak Point to officials at the Town of Middleborough, which began raising residents' concerns at meetings of the Town Board of Selectmen.

74.    At one of these meetings, held on April 30th of this year, Mr. Conant – speaking on behalf of Hometown and under mounting pressure to reverse the Policy – told the Board of Selectmen that Hometown would take responsibility for fully remediating the water accumulation that was impacting Oak Point home sites.

75.    Nevertheless, following HUD's announcement that it had limited the scope of its inquiry to the approximately eleven-percent of Oak Point's home sites that had been constructed after 2011, Hometown retracted Mr. Conant's statement and explained that Hometown was not responsible for the eighty-nine-percent of Oak Point's home-site infrastructure that fell outside of the scope of HUD's inquiry because such infrastructure had been installed by the entity from which Hometown had purchased the community in 2011.

76.    This assertion was reiterated publicly by Regional Manager Kyle Howieson while speaking on behalf of Hometown at a Board of Selectmen meeting on July 23rd of this year.

77.    When asked at the July 23rd meeting how he could reconcile Hometown's refusal to maintain Oak Point home-site infrastructure, such as the cement slab (or pad), with the contrary requirements of the Manufactured Housing Community Law, Mr. Howieson responded that he "read the statute" and "[i]t doesn't say that the owners are responsible for the pad."

78.    When asked at the July 23rd meeting how he could reconcile his interpretation of the Law with the contrary interpretation of the Office of the Attorney General in the Guide to Manufactured Housing Community Law, a Law which the Attorney General is charged by

14

statute to implement, Mr. Howieson responded that "the guide to manufactured housing document … isn't the law" but rather is just "someone's interpretation of the law."

79.    Only after intervention by Hometown's litigation counsel, in a letter sent approximately three weeks after Mr. Howieson's July 23rd statements, did Hometown's Policy purportedly "evolve" such that it agreed to "abide by the Attorney General's interpretation of the applicable regulations governing manufactured home communities."

80.    However, into what exactly the Policy has evolved remains unclear.

81.    Moreover, Defendant Hometown Oak Point has not modified the language of the standard Home Site Agreement which purports to obligate Oak Point residents to maintain all aspects of their leased home sites:

> *11. Maintenance. Alterations. Inspection.*
>
> *The Home Owner covenants and agrees to maintain the Home Site, the Home and any appurtenances to the Home (such as garage, front stoop or deck) in first class condition. …*

III.    CLASS ALLEGATIONS

82.    After learning of the breadth and brazenness with which the Defendants had employed the Policy to violate not only her rights but the rights of numerous other Oakhill and Oak Point residents, Ms. Craw retained counsel and caused a thirty-day demand letter to be sent to all Defendants, pursuant to the Consumer Protection Act, on August 21st of this year.

83.    Through this letter, Ms. Craw – on behalf of herself and all similarly-situated current and former residents of Oakhill and Oak Point – demanded that Defendants: (A) immediately discontinue the Policy; (B) immediately maintain, repair or replace the home-site infrastructure in Oakhill and Oak Point so that all home sites therein are safe and in good repair; and (C) compensate Oakhill and Oak Point residents for the injuries they have suffered as a result of the Policy.

15

84.    On September 24th, Defendants timely responded with an unreasonable settlement offer and Ms. Craw subsequently commenced the instant class action lawsuit.

A.    GENERAL LAWS CHAPTER 93A, SECTION 9(2)

85.    Ms. Craw brings her Consumer Protection Act claim on behalf of herself and a putative class of more than one-thousand (1,000) current and former resident-households of the Oakhill and Oak Point manufactured housing communities ("Putative Class") which have resided in either community at any time since September of 2012 ("Putative Class").

86.    Ms. Craw is similarly situated to all members of the Putative Class insofar as both Ms. Craw and all such members have resided in a manufactured housing community at which one or more of the Defendants have consistently enforced the Policy as well as deprived both Ms. Craw and the Putative Class members of critical home-site infrastructure maintenance, repair or replacement services that Defendants were required by law to provide.

87.    Ms. Craw has suffered an injury similar to the injury suffered by all members of the Putative Class insofar as both Ms. Craw and all such class members have paid substantial sums of rent to one or more Defendants corresponding to critical home-site infrastructure maintenance, repair or replacement services that Defendants neither provided nor caused to be provided.

88.    Ms. Craw and undersigned counsel have demonstrated that they can and will both fairly and adequately protect the interests of the Putative Class members in pursuing this action.

89.    Specifically, Ms. Craw has a demonstrated track-record of public service, is committed to obtaining a just resolution of this dispute to the benefit of all Putative Class members and lacks any reason because of which she may fail to vigorously seek the same.

90.    Specifically, the undersigned counsel is the director of a civil legal aid organization, holds both consumer law as well as class action experience, is also committed to obtaining a just resolution of this dispute to the benefit of all Putative Class members and similarly lacks any reason because of which he may fail to vigorously seek the same.

B.    CIVIL PROCEDURE RULE 23

91.    Ms. Craw brings her breach of contract claim on behalf of herself and a putative class of more than one-thousand (1,000) current and former resident-households of the Oakhill and Oak Point manufactured housing communities, which have lived in either community at any time since September of 2012 ("Putative Class"), a group which is numerous and which would be impracticable to join individually to the instant action.

92.    Ms. Craw's contract claim presents for judicial determination factual and legal questions that are common to all members of the Putative Class and which predominate over any questions affecting only individual members, namely:

(a) determination of the scope and duration of the Policy;

(b) determination of whether the Policy violated the Manufactured Housing Community Law and corresponding regulations;

(c) determination of whether the leasehold contracts entered into between one or more Defendants and the Putative Class members all expressly or impliedly incorporated the Policy into such leasehold contracts;

(d) determination of whether such express or implied provisions are void as a matter of public policy and should be or should have been reformed to incorporate the applicable requirements of the Manufactured Housing Community Law and corresponding regulations; and

17

(e) determination of whether Defendants' implementation of the Policy breached the Putative Class members' leasehold contracts.

93.     Ms. Craw's contract claim is typical of the claims of Putative Class members, as such claims are all based on the same Policy which was incorporated expressly or impliedly into all members' leasehold contracts and which was implemented uniformly as to all members such that the members' claims are all rooted in identical legal as well as remedial theories.

94.     Ms. Craw and undersigned counsel have demonstrated that they can and will both fairly and adequately protect the interests of all Putative Class members in pursuing this action.

95.     Ms. Craws' proposed class action is superior to other available methods for the fair and efficient adjudication of this controversy in that the relatively modest losses suffered by individual Putative Class members would be economically infeasible to litigate on an individual basis and that such piecemeal litigation would risk inconsistent application of the critical protections of the Manufactured Housing Community Law at-issue before the Court.

FIRST CAUSE OF ACTION
BY BARBARA CRAW ON BEHALF OF HERSELF AND THE PUTATIVE CLASS
CONSUMER PROTECTION ACT – GENERAL LAWS C. 93A § 9
AS TO ALL DEFENDANTS

96.     Paragraphs 1 through 95 are incorporated herein, as if fully restated below.

97.     Ms. Craw and each Putative Class member is a person, as that term is used in Section 9(1) of Chapter 93A.

98.     Defendants are each a person engaged in the conduct of a trade or commerce, as those terms are used in Sections 2(a) and 9(1) of Chapter 93A – specifically as either an operator or licensee, as those terms are used in Section 10.01 of Code of Massachusetts Regulations Title 940.

99.     Defendants' implementation of the Policy is an unfair or deceptive act or practice, pursuant to Section 2 of Chapter 93A and Section 10.00 *et seq.* of Code of Massachusetts Regulations Title 940, specifically Regulation 10.04(5)(f).

100.    Defendants knew or should have known that the Policy violated the Manufactured Housing Community Law, as well as corresponding regulations, and their implementation of such Policy has been willful.

101.    Defendants knew or should have known that their conduct has violated the Manufactured Housing Community Law and their failure to offer a reasonable settlement offer was in bad faith.

102.    Defendants' implementation of the Policy has injured Ms. Craw and each member of the Putative Class.

103.    Defendants' ongoing implementation of the Policy will irreparably harm Ms. Craw and each member of the Putative Class by forcing them to endure unsafe conditions on their home sites and requiring them to pursue repeated legal action to enforce their right, under the Manufactured Housing Community Law, to properly maintained home-site infrastructure.

104.    Equitable relief requiring Defendants to comply with their obligations under the Manufactured Housing Community Law simply requires Defendants to follow the law and will substantially benefit Ms. Craw and each member of the Putative Class.

SECOND CAUSE OF ACTION
BY BARBARA CRAW ON BEHALF OF HERSELF AND THE PUTATIVE CLASS
BREACH OF CONTRACT
<u>AS TO DEFENDANTS HOMETOWN OAKHILL AND HOMETOWN OAK POINT</u>

105.    Paragraphs 1 through 104 are incorporated herein, as if fully restated below.

106.    Ms. Craw and each member of the Putative Class has entered into a valid and binding lease contract – either for a specific term or at-will – with Defendants Hometown

19

Oakhill or Hometown Oak Point so that each member may occupy a home site at either Oakhill or Oak Point.

107.    Defendants Hometown Oakhill or Hometown Oak Point breached each such contract by implementing the Policy and withholding critical home-site infrastructure maintenance services required as a matter of law by the contracts.

108.    Ms. Craw and each member of the Putative Class complied sufficiently with their obligations under each such contract as a matter of law so as not to excuse the breaching conduct of Defendants Hometown Oakhill or Hometown Oak Point.

109.    The breaching conduct by Defendants Hometown Oakhill or Hometown Oak Point deprived Ms. Craw and each member of the Putative Class of their expectancy under the contracts and accordingly caused damage to Ms. Craw and each member of the Putative Class.

110.    The continued breaching conduct by Defendants Hometown Oakhill and Hometown Oak Point will irreparably harm Ms. Craw and each member of the Putative Class by forcing Ms. Craw and the Putative Class to endure unsafe conditions on their unique home sites – for which there is no adequate remedy at law.

111.    Equitable relief requiring Defendants Hometown Oakhill and Hometown Oak Point to comply with their obligations under the contracts simply requires the two defendants to follow the law and will substantially benefit Ms. Craw and each member of the Putative Class.

THIRD CAUSE OF ACTION
BY BARBARA CRAW ON BEHALF OF HERSELF
QUIET ENJOYMENT STATUTE – GENERAL LAWS C. 186 § 14
<u>AS TO DEFENDANTS HOMETOWN OAKHILL AND HOMETOWN MANAGEMENT</u>

112.    Paragraphs 1 through 111 are incorporated herein, as if fully restated below.

113.    Ms. Craw is a tenant or lessee, as contemplated in Section 14 of Chapter 186.

114.    Defendants Oakhill and Hometown Management are each a landlord or lessor, as those terms are used in Section 14 of Chapter 186.

115.    Implementation of the Policy by Defendants Hometown Oakhill and Hometown Management substantially impaired the character and value of Ms. Craw's leasehold or home site.

116.    Defendants Hometown Oakhill and Hometown Management knew or should have known that the Policy would substantially impair the character and value of Ms. Craw's leasehold or home site.

117.    Implementation of the Policy by Defendants Hometown Oakhill and Hometown Management reduced the value of Ms. Craw's leasehold or otherwise caused her damage.

118.    Defendant Hometown Oakhill's and Defendant Hometown Management's ongoing implementation of the Policy will irreparably harm Ms. Craw by forcing her to endure unsafe conditions on her leased home site and requiring her to pursue repeated legal action to enforce her right to properly maintained home-site infrastructure.

119.    Equitable relief requiring Defendants Hometown Oakhill and Hometown Management to comply with their obligations under the law simply requires the defendants to follow the law and will substantially benefit Ms. Craw and other residents of communities operated by the two defendants.

## REQUESTED RELIEF

WHEREFORE, Ms. Craw requests that the Court:

A.    Enter an order against all Defendants, jointly and severally, awarding to Ms. Craw and the members of the Putative Class the actual, incidental, consequential and multiple damages

suffered by them or the maximum amount of statutory or nominal damages provided or permitted by law;

B.    Issue an injunction ordering Defendants to immediately perform all maintenance, repair and replacement work to home-site infrastructure located at Oakhill and Oak Point so that Oakhill and Oak Point home sites are all in good repair, as required by law;

C.    Issue an injunction ordering Defendants within sixty days to submit for the Court's approval written policies and procedures whereby Defendants will assume responsibility for the maintenance, repair and replacement of the home-site infrastructure located at Oakhill as well as Oak Point and, upon Court approval, issue an injunction ordering all Defendants to implement said policies and procedures;

D.    Enter an order against all Defendants, jointly and severally, awarding to Ms. Craw and the members of the Putative Class the litigation costs and reasonable attorney's fees associated with the prosecution of this action;

E.    Enter an order against all Defendants, jointly and severally, awarding to Ms. Craw and the members of the Putative Class pre- and post-judgment interest on all applicable amounts awarded by the Court;

F.    Enter any further order the Court deems necessary for the just and proper resolution of this matter.

Respectfully submitted,                           This 25th day of September, 2018
BARBARA CRAW,
By her attorneys,

Ethan R. Horowitz
BBO # 674669
Northeast Justice Center

A TRUE COPY ATTEST

Clerk of Courts

22

50 Island Street, Suite 203B
Lawrence, MA 01840
(978) 888-0624
ehorowitz@njc-ma.org

| CIVIL ACTION COVER SHEET | DOCKET NUMBER<br>1883CV01017 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| PLAINTIFF(S): | Barbara Craw, on behalf of herself and others similarly situated | COUNTY |
|---|---|---|
| ADDRESS: | 1003 Oak Hill Avenue, No. 100, Attleboro MA 02703 | Plymouth |

| | | DEFENDANT(S): | Hometown Oak Hill I, LLC; Hometown Oak Hill II, LLC; Hometown |
|---|---|---|---|
| | | | America, LLC; Hometown America Management, LLC & Hometown Oakhill, LLC |
| ATTORNEY: | Ethan R. Horowitz, Esq. | | |
| ADDRESS: | Northeast Justice Center | ADDRESS: | 200 Oak Point Drive, Middleborough MA 02346 |
| 50 Island Street, Ste. 203B, Lawrence MA 01840 | | | 150 North Wacker Drive, Ste. 2800, Chicago IL 60606 |
| | | | 1003 Oak Hill Avenue, No. 66, Attleboro MA 02703 |
| BBO: | 674669 | | |

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO.<br>B99/A99 | TYPE OF ACTION (specify)<br>Consumer Protection Act/Other Contract | TRACK<br>F | HAS A JURY CLAIM BEEN MADE?<br>[X] YES    [ ] NO |
|---|---|---|---|

*If "Other" please describe:    Consumer Protection Act class action respecting rights of manufactured housing community residents

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages.  For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses .......................................................... $ _____
  2. Total doctor expenses ............................................................ $ _____
  3. Total chiropractic expenses .................................................... $ _____
  4. Total physical therapy expenses ............................................. $ _____
  5. Total other expenses (describe below) .................................... $ _____
                                                            **Subtotal (A):** $ _____

B. Documented lost wages and compensation to date ................. $ _____
C. Documented property damages to dated ................................. $ _____
D. Reasonably anticipated future medical and hospital expenses ... $ _____
E. Reasonably anticipated lost wages ......................................... $ _____
F. Other documented items of damages (describe below) ............. $ _____

*(stamp within statement area)*
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY
FILED
SEP 2 5 2018
Clerk of Court

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                                            **TOTAL (A-F):** $ _____

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):
Community owners/operators charged rent corresponding to services not provided and breached tenancy contracts                      **TOTAL:** $   11,000,000

as well as violated  Consumer Protection Act

**Signature of Attorney/Pro Se Plaintiff:** X _____                      **Date:** 09/25/2018

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record:** X _____                      **Date:** 09/25/2018

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 1883CV01017 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Barbara Craw on behalf of Herself and other similarly situated individuals vs. Hometown America, LLC et al | Robert S. Creedon, Jr., Clerk of Courts |
|---|---|
| TO: File Copy | COURT NAME & ADDRESS Plymouth County Superior Court - Plymouth 52 Obery Street - Suite 2041 Plymouth, MA 02360 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | | DEADLINE | |
|---|---|---|---|
| | SERVED BY | FILED BY | HEARD BY |
| Service of process made and return filed with the Court | | 12/24/2018 | |
| Response to the complaint filed (also see MRCP 12) | | 01/23/2019 | |
| All motions under MRCP 12, 19, and 20 | 01/23/2019 | 02/22/2019 | 03/25/2019 |
| All motions under MRCP 15 | 01/23/2019 | 02/22/2019 | 03/25/2019 |
| All discovery requests **and depositions** served and non-expert depositions completed | 07/22/2019 | | |
| All motions under MRCP 56 | 08/21/2019 | 09/20/2019 | |
| Final pre-trial conference held and/or firm trial date set | | | 01/20/2020 |
| Case shall be resolved and judgment shall issue by | | | 09/24/2020 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 09/25/2018 | ASSISTANT CLERK | PHONE |
|---|---|---|

Date/Time Printed: 09-25-2018 14:57:52                                   SCV026\ 08/2018

| NOTICE TO ATTORNEY GENERAL OF COMPLAINT ON CHAPTER 93A ACTION | DOCKET NUMBER<br>1883CV01017 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

CASE NAME:
Barbara Craw on behalf of Herself and other similarly situated individuals vs. Hometown America, LLC et al

Robert S. Creedon, Jr., Clerk of Courts

Attorney General
Consumer Protection Division
One Ashburton Place
Boston, MA 02108-1698

COURT NAME & ADDRESS
Plymouth County Superior Court - Plymouth
52 Obery Street - Suite 2041
Plymouth, MA 02360

Pursuant to G.L. c. 93A, § 10, enclosed is a copy of the complaint seeking relief under G.L. c. 93A. The action was filed in this court on 09/25/2018.

| DATE<br>10/02/2018 | CLERK OF COURTS<br>Robert S. Creedon, Jr., Clerk of Courts |
|---|---|

| **Summons** | CIVIL DOCKET NO.<br>18-cv-1017 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

CASE NAME:
Barbara Craw, et al.

Plaintiff(s)

vs.

Hometown America, LLC, et al.

Defendant(s)

Robert S. Creedon, Jr.          Clerk of Courts

Plymouth          County

COURT NAME & ADDRESS:

Plymouth Superior Court

52 Obery Street, Suite 2041

Plymouth, MA 02360

THIS SUMMONS IS DIRECTED TO Hometown America, LLC (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the          Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT
PLYMOUTH COUNTY

OCT 15 2018

Clerk of Court

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business, Plymouth Superior Court 52 Obery Street, Suite 2041, Plymouth, MA 02360 (address), by mail or in person **AND**

b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

| | |
|---|---|
| **Summons** | **Trial Court of Massachusetts** |
| CIVIL DOCKET NO. | **The Superior Court** |
| 18-CV-1017 | |

| | |
|---|---|
| CASE NAME: | Robert S. Creedon, Jr.    Clerk of Courts |
| Barbara Craw, et al. | Plymouth    County |
| Plaintiff(s) | COURT NAME & ADDRESS: |
| vs. | Plymouth Superior Court |
| Hometown America, LLC, et al. | 52 Obery Street, Suite 2041 |
| Defendant(s) | Plymouth, MA 02360 |

THIS SUMMONS IS DIRECTED TO _Hometown America, LLC_ (Defendant's name)

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT
PLYMOUTH COUNTY

OCT 15 2018

Clerk of Court

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's complaint filed against you is attached to this summons and the original complaint has been filed in the _____ Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business, Plymouth Superior Court 52 Obery Street, Suite 2041, Plymouth, MA 02360 (address), by mail or in person **AND**

b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A TRUE COPY ATTEST

Clerk of Courts

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

4. **Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required Information on All Filings:**

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant _____, Chief Justice on _September 25th_, 20 _18_ . (Seal)

Clerk-Magistrate _____

**Note:** The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _Sept. 28, 2018_ accepted service of a I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: _Oct. 3, 2018_                Signature: _Lin C Goodheart_
                                        _Attorney for_
                                        _Hometown America,_
                                        _LLC_

**N.B.   TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

Date: _Sept. 28, 2018_

**Summons**

CIVIL DOCKET NO.

18-CV-1017

**Trial Court of Massachusetts**

**The Superior Court**

| | |
|---|---|
| CASE NAME: | Robert S. Creedon, Jr.    Clerk of Courts |
| Barbara Craw, et al. | Plymouth    County |
| Plaintiff(s) | COURT NAME & ADDRESS: |
| Hometown America, LLC, et al. | Plymouth Superior Court |
| | 52 Obery Street, Suite 2041 |
| Defendant(s) | Plymouth, MA 02360 |

THIS SUMMONS IS DIRECTED TO Hometown Oakhill, LLC (Defendant's name)

<u>You are being sued.</u> The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the ___ Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

OCT 15 2018

Clerk of Court

**1. <u>You must respond to this lawsuit in writing within 20 days.</u>**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business, Plymouth Superior Court 52 Obery Street, Suite 2041, Plymouth, MA 02360 (address), by mail or in person **AND**

b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

**3. What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A TRUE COPY ATTEST

Clerk of Courts

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

#### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

#### 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant _____, Chief Justice on _September 25th_, 20 _18_ . (Seal)

Clerk-Magistrate _____

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

PROOF OF SERVICE OF PROCESS

I hereby certify that on _Sept. 28, 2018_ _accepted service of_ I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: _Oct. 3, 2018_                    Signature: _Lisa C Goodheart_
_Attorney for Hometown_
_Oak hill, LLC_

N.B.   TO PROCESS SERVER:

   PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Date: _Sept. 28, 2018_

| Summons | CIVIL DOCKET NO. | Trial Court of Massachusetts |
|---|---|---|
| | 18-CV-1017 | The Superior Court |

CASE NAME:

Barbara Craw, et al.

Plaintiff(s)

vs.

Hometown America, LLC, et al.

Defendant(s)

Robert S. Creedon, Jr.        Clerk of Courts

Plymouth        County

COURT NAME & ADDRESS:

Plymouth Superior Court

52 Obery Street, Suite 2041

Plymouth, MA 02360

THIS SUMMONS IS DIRECTED TO Hometown Oak Point I, LLC (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the _____ Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

OCT 15 2018

Clerk of Court

### 1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

### 2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business, Plymouth Superior Court 52 Obery Street, Suite 2041, Plymouth, MA 02360 (address), by mail or in person **AND**

b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

### 3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A TRUE COPY ATTEST

Clerk of Courts

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

4. **Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required Information on All Filings:**

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant _____ , Chief Justice on *September 25th* , 20 *16* . (Seal)

Clerk-Magistrate _____

**Note:** The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

PROOF OF SERVICE OF PROCESS

I hereby certify that on _Sept. 28, 2018_ , *accepted service of* I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass.R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: _Oct. 3, 2018_

Signature: _Fred C Goodheart_

*Attorney for Hometown Oak Point I, LLC*

**N.B.   TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Date: _Sept. 28, 2018_

| Summons | CIVIL DOCKET NO. | Trial Court of Massachusetts |
|---|---|---|
| | 18-CV-1017 | The Superior Court |

| CASE NAME: | |
|---|---|
| Barbara Crean, et al. | Robert S. Creedon, Jr.    Clerk of Courts |
| | Plymouth    County |
| Plaintiff(s) | COURT NAME & ADDRESS: |
| vs. | Plymouth Superior Court |
| Hometown America, LLC, et al. | 52 Obery Street, Suite 2041 |
| | Plymouth, MA 02360 |
| Defendant(s) | |

THIS SUMMONS IS DIRECTED TO __Hometown Oak Point II, LLC__ (Defendant's name)

<u>You are being sued.</u> The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the _____ Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

OCT 15 2018

Clerk of Court

1. <u>You must respond to this lawsuit in writing within 20 days.</u>

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

    a) Filing your **signed original** response with the Clerk's Office for Civil Business, Plymouth Superior Court 52 Obery Street, Suite 2041, Plymouth, MA 02360 (address), by mail or in person **AND**

    b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A TRUE COPY ATTEST

Clerk of Courts

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

## 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

## 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant , Chief Justice on September 25th, 20 16 . (Seal)

Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

### PROOF OF SERVICE OF PROCESS

I hereby certify that on Sept. 28, 2018 accepted service of I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: Oct. 3, 2018                    Signature: Lura C Goodheart

Attorney for Hometown

~~America, LLC~~ Oak

Point II, LLC

**N.B. TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

Date: Sept. 28, 2018

| **Summons** | CIVIL DOCKET NO.<br>18-CV-1017 | **Trial Court of Massachusetts**<br>**The Superior Court** | |
|---|---|---|---|
| CASE NAME:<br>Barbara Craw, et al.<br><br>Plaintiff(s)<br><br>vs.<br><br>Hometown America, LLC, et al.<br><br>Defendant(s) | | Robert S. Creedon, Jr. | Clerk of Courts |
| | | Plymouth | County |
| | | COURT NAME & ADDRESS:<br>Plymouth Superior Court<br>52 Obery Street, Suite 2041<br>Plymouth, MA 02360 | |

THIS SUMMONS IS DIRECTED TO Hometown America Management, LLC (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the _____ Court.

### YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

OCT. 1 5 2018

Clerk of Court

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business, Plymouth Superior Court 52 Obery Street, Suite 2041, Plymouth, MA 02360 (address), by mail or in person **AND**

b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

**3. What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A TRUE COPY ATTEST

Clerk of Courts

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

### 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant        , Chief Justice on *September 25ᵗʰ*, 20 *16* . (Seal)

Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

## PROOF OF SERVICE OF PROCESS

I hereby certify that on *Sept. 28, 2018* ~~I served a copy of this summons, together with a copy of the complaint~~ *accepted service of* in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: *Oct. 3, 2018*                    Signature: *Lisa C Goodheart*
                                          *Attorney for*
                                          *Hometown America*
                                          *Management, LLC*

**N.B.   TO PROCESS SERVER:**

   **PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

Date: *Sept. 28, 2018*

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSSETS

|  |  |  |
|---|---|---|
| BARBARA CRAW,<br>on behalf of herself and others<br>similarly situated, | ) )<br>)<br>) |  |
| Plaintiff, | )<br>) | Case No. _____ |
| v. | )<br>) |  |
| HOMETOWN AMERICA, LLC;<br>HOMETOWN AMERICA<br>MANAGEMENT, LLC; HOMETOWN<br>OAKHILL, LLC; HOMETOWN<br>OAKPOINT I, LLC; and HOMETOWN<br>OAKPOINT II, LLC | )<br>)<br>)<br>)<br>)<br>)<br>) |  |
| Defendants. | ) |  |

## NOTICE OF REMOVAL

To the Clerk of the United States District Court for the District of Massachusetts and to

Plaintiff Barbara Craw and her attorneys of record:

**PLEASE TAKE NOTICE** that Defendants Hometown America, LLC ("Hometown

America"), Hometown America Management, LLC ("Hometown America Management"),

Hometown Oakhill, LLC ("Hometown Oakhill"), Hometown Oak Point I, LLC ("Hometown

Oak Point I") and Hometown Oak Point II, LLC ("Hometown Oak Point II")[1] (collectively,

"Defendants"), hereby file this Notice of Removal on the grounds set forth below.

1.      The state court action is removable to this Court, and this Court has jurisdiction

over this civil action, under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, as well

as 28 U.S.C. §§ 1367, 1441(a) and 1453, because this is a putative class action involving more

than 100 putative class members, the aggregate amount in controversy, excluding interest and

costs, exceeds $5,000,000, and there is minimal diversity.

---

[1] Hometown Oak Point I and Hometown Oak Point II are together referred to as "Hometown Oak Point."

I.    **PLEADINGS AND PROCESS**

2.    On or about September 25, 2018, Plaintiff Barbara Craw ("Plaintiff") commenced this putative class action, filing her original Class Action Complaint in the Superior Court of the Commonwealth of Massachusetts, County of Plymouth, titled *Barbara Craw v. Hometown America, LLC, et al.*, Case No. 1883CV01017 (the "Action"). *See generally* Class Action Complaint for Injunctive Relief and Damages ("Complaint" or "Compl."), attached as Exhibit B to the Declaration of Lisa C. Goodheart ("Goodheart Decl."), Exhibit 1 to this Notice of Removal.

3.    Plaintiff's Complaint asserts causes of action on behalf of herself and a putative class against: (i) all Defendants for violation of the Massachusetts Consumer Protection Act, General Laws c. 93A § 9 ("Consumer Protection Act"); and (ii) Hometown Oakhill and Hometown Oak Point for breach of contract; additionally, on behalf of herself only, she asserts a cause of action against (iii) Hometown America Management and Hometown Oakhill, for violation of the Massachusetts Quiet Enjoyment Statute, General Laws c. 186 § 14 ("Quiet Enjoyment Statute").[2]

4.    Defendants were first served with the Summons and Complaint on September 28, 2018.

5.    Pursuant to 28 U.S.C. § 1446(a), Defendants are requesting certified copies of all records and proceedings in the Action, together with a certified copy of the docket sheet for the Action, and will file the same with this Court within 28 days of the filing of this Notice of Removal, in accordance with Local Rule 81.1(a).

---

[2] Compl. at pp. 18-21.

2

6.     Because Plymouth County, Massachusetts is located within the District of Massachusetts, this Notice of Removal is properly filed in this Court pursuant to 28 U.S.C. §§ 101, 1441, and 1446.[3]

## II.     CITIZENSHIP OF THE PARTIES

### A.     Citizenship of Plaintiff

7.     As alleged, Plaintiff Barbara Craw is, and was at the time the Complaint was filed, domiciled in and a citizen of the Commonwealth of Massachusetts.[4]

### B.     Citizenship of Defendants

8.     Hometown America is, and was at the time the Complaint was filed, a Delaware limited liability company with its principal place of business in Chicago, Illinois.[5] "For purposes of determining subject matter jurisdiction under CAFA … a limited liability company is considered an unincorporated association and is therefore a citizen of both the state where it has its principal place of business and the state under whose laws it is organized." *Khath v. Midland Funding, LLC*, Civil Action No. 14-14184-MLW, 2016 WL 1267387, at *4 n.4 (D. Mass. Jan. 7, 2016), *report and recommendation adopted as modified*, 2016 WL 1275606 (D. Mass. Mar. 30, 2016); 28 U.S.C. § 1332(d)(10). Pursuant to 28 U.S.C. § 1332(d)(2), Hometown America is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the Commonwealth of Massachusetts within the meaning of the Acts of Congress relating to the removal of cases. *See McMorris v. TJX Companies, Inc.*, 493 F. Supp. 2d 158, 162 (D. Mass. 2007) ("[U]nder CAFA, diversity jurisdiction exists in class actions so long as

---

[3] While filing this Notice of Removal, Defendants expressly preserve and do not waive any defense based on lack of personal jurisdiction. *See, e.g., In re Lupron Marketing and Sales Practices Litig.*, 245 F.Supp.2d 280, 302 (D. Mass. 2003) ("A defendant's removal of an action does not waive an objection to lack of personal jurisdiction."). Defendants also do not waive and specifically preserve any and all other defenses applicable to the claims of putative class members.
[4] Compl. ¶28.
[5] Declaration of Stephen Braun ("Braun Decl."), attached as Exhibit 2 to this Notice of Removal, at ¶2.

'any member of a class of plaintiffs is a citizen of a State different from any defendant,' or 'any member of a class of plaintiffs is ... a citizen or subject of a foreign state and any defendant is a citizen of a State.'") (quoting 28 U.S.C. § 1332(d)(2)(A)-(B)).

9.    Hometown America Management is, and was at the time the Complaint was filed, a Delaware limited liability company with its principal place of business in Chicago, Illinois.[6] Pursuant to 28 U.S.C. § 1332(d)(2), Hometown America Management is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the Commonwealth of Massachusetts within the meaning of the Acts of Congress relating to the removal of cases. *See McMorris*, 493 F. Supp. 2d at 162.

10.   Hometown Oakhill is, and was at the time the Complaint was filed, a Delaware limited liability company with its principal place of business in Chicago, Illinois.[7] Pursuant to 28 U.S.C. § 1332(d)(2), Hometown Oakhill is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the Commonwealth of Massachusetts within the meaning of the Acts of Congress relating to the removal of cases. *See McMorris*, 493 F. Supp. 2d at 162.

11.   Hometown Oak Point I is, and was at the time the Complaint was filed, a Delaware limited liability company with its principal place of business in Chicago, Illinois.[8] Pursuant to 28 U.S.C. § 1332(d)(2), Hometown Oak Point I is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the Commonwealth of Massachusetts within the meaning of the Acts of Congress relating to the removal of cases. *See McMorris*, 493 F. Supp. 2d at 162.

12.   Hometown Oak Point II is, and was at the time the Complaint was filed, a

---

[6] Braun Decl. at ¶3.
[7] Braun Decl. at ¶4.
[8] Braun Decl. at ¶5.

Delaware limited liability company with its principal place of business in Chicago, Illinois.[9] Pursuant to 28 U.S.C. § 1332(d)(2), Hometown Oak Point II is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the Commonwealth of Massachusetts within the meaning of the Acts of Congress relating to the removal of cases. *See McMorris*, 493 F. Supp. 2d at 162.

## III.    THIS COURT HAS JURISDICTION OVER THIS ACTION UNDER CAFA

13.    Plaintiff filed this putative class action against Defendants on behalf of an alleged class of "more than one-thousand (1,000) current and former resident-households of the Oakhill and Oak Point manufactured housing communities, which have lived in either community at any time since September of 2012" (the "Class").[10]

14.    The gravamen of Plaintiff's Complaint is that Defendant Hometown America, through its affiliates, implemented a policy that unlawfully shifts the burden of maintaining and repairing infrastructure at the residents' home-sites to the residents.[11]

15.    Plaintiff specifically alleges that "[t]hrough its enforcement of the Policy, Hometown has attempted to saddle its residents with the responsibility for home-site infrastructure that Hometown, as both a manufactured home community operator and landlord, is required by law to maintain, repair and replace."[12]

16.    In the Complaint, Plaintiff requests that the Court grant the following relief:

(a) "Enter an order against all Defendants, jointly and severally, awarding to Ms. Craw and the members of the Putative Class the actual, incidental, consequential and multiple damages suffered by them or the maximum

---

[9] Braun Decl. at ¶6.
[10] Compl. ¶91.
[11] *See generally* Compl.
[12] Compl. ¶5.

amount of statutory or nominal damages provided or permitted by law;

(b) "Issue an injunction ordering Defendants within sixty days to submit for the Court's approval written policies and procedures whereby Defendants will assume responsibility for the maintenance, repair and replacement of the home-site infrastructure located at Oakhill as well as Oak Point and, upon Court approval, issue an injunction ordering all Defendants to implement said policy";

(c) "Issue an injunction ordering Defendants to immediately perform all maintenance, repair and replacement work to home-site infrastructure located at Oakhill and Oak Point so that Oakhill and Oak Point home sites are all in good repair, as required by law";

(d) "Enter an order against all Defendants, jointly and severally, awarding to Ms. Craw and the members of the Putative Class the litigation costs and reasonable attorney's fees associated with the prosecution of this action";

(e) "Enter an order against all Defendants, jointly and severally, awarding to Ms. Craw and the members of the Putative Class pre- and post-judgment interest on all applicable amount awards by the Court";

(f) "Enter any further order the Court deems necessary for the just and proper resolution of this matter."[13]

17.    In 2005, "CAFA was enacted with the stated purpose of expanding the number of class actions that could be heard in federal court." *Pazol v. Tough Mudder Inc.*, 819 F.3d 548, 552 (1st Cir. 2016). Accordingly, "'no antiremoval presumption attends cases invoking CAFA.'" *Khath*, 2016 WL 1267387, at *5 n.5 (quoting *Dart Cherokee Basin Operating Co.*,

---

[13] Compl., Request for Relief at pp. 21-22.

*LLC v. Owens*, 135 S. Ct. 547, 554 (2014)); *see also McMorris*, 493 F. Supp. 2d at 166
("CAFA implements its statutory policy by favoring federal courts over state courts."); *Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 47-48 (1st Cir. 2009) (noting how CAFA "made a federal forum more accessible to removing defendants by imposing only a minimal diversity requirement, eliminating the statutory one-year time limit for removal, and providing for interlocutory appeal of a federal district court's remand order"); *Youtsey v. Avibank Mfg., Inc.*, 734 F. Supp. 2d 230, 236, n.3 (D. Mass. 2010) (commenting that "it may be even *easier* to remove a CAFA case to federal court than a non-CAFA case") (emphasis in original).

18.    Accordingly, CAFA expands federal jurisdiction over class actions and expressly provides that class actions filed in state court are removable to federal court where: (a) the putative class contains at least 100 class members; (b) any member of the putative class is a citizen of a state different from that of any defendant; and (c) the aggregate amount in controversy for the putative class exceeds $5,000,000, exclusive of interest and costs.[14] 28 U.S.C. § 1332(d); *accord Manson v. GMAC Mortg., LLC*, 602 F. Supp. 2d 289, 293 (D. Mass. 2009).

19.    As discussed below, this case satisfies CAFA's requirements for federal jurisdiction. In addition, none of the exceptions to CAFA jurisdiction apply here. 28 U.S.C. § 1332(d).

A.    **The Putative Class Exceeds 100 Members.**

20.    CAFA's first requirement is that the putative class consist of at least 100

---

[14] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiff can state a claim or is entitled to any relief. Defendants deny liability, deny Plaintiff is entitled to any relief, and deny that a class can be properly certified in this matter. *See Amoche*, 556 F.3d at 51 ("Finally, the plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover.") (emphasis in original).

persons.    28 U.S.C. § 1332(d)(5)(B).    That requirement is readily met here. Plaintiff's

Complaint alleges that there are "approximately one-hundred seventy-five (175) resident

families of Oakhill" and "approximately nine-hundred seventy-five (975) resident families of

Oak Point."[15] Plaintiff alleges a Class of "more than one-thousand (1,000) current and former

resident-households of the Oakhill and Oak Point manufactured housing communities."[16]

Plaintiff's allegations and definition of the Class in the Complaint are plainly sufficient to

establish that the putative class exceeds 100 persons. *See, e.g., Williams v. Am. Honda Fin.*

*Corp.*, Civil Action No. 14-12859-LTS, 2014 WL 5494914, at *2 (D. Mass. Oct. 30, 2014)

(numerosity requirement satisfied since, "[a]lthough the complaint does not specify the size of

the prospective class, it extrapolates from 'Honda's loan volume and the number of auto loan

defaults and auto repossessions resulting from that volume' that 'the prospective class numbers

in the thousands …. As such, the complaint arguably provides enough information from which

Honda could have ascertained that the first two elements required for federal jurisdiction

under CAFA are satisfied here."); *see also Dart Cherokee*, 135 S. Ct. at 554. Thus, the

requirement of 28 U.S.C. § 1332(d)(5)(B) is satisfied.

**B.    Minimal Diversity Exists.**

21.    The second CAFA requirement is minimal diversity – at least one putative class

member and at least one defendant must be citizens of different states.    28 U.S.C.

§ 1332(d)(2)(A).

22.    Here, at least one putative class member is a citizen of the Commonwealth of

Massachusetts, namely, Plaintiff Barbara Craw.[17] Plaintiff alleges that she "has resided in

---

[15] Compl. ¶¶30, 31.
[16] Compl. ¶ 91.
[17] Compl. ¶28.

8

Oakhill," a community in Attleboro, Massachusetts, "since 2006."[18] And at least one defendant is diverse from Plaintiff. In fact, all Defendants are diverse from Plaintiff. As discussed above, all Defendants are Delaware limited liability companies whose principal places of business are in Chicago, Illinois,[19] and thus are citizens of the States of Delaware and Illinois for diversity purposes. *See Khath*, 2016 WL 1267387, at *4 n.4. Thus, the minimal diversity requirement is satisfied. 28 U.S.C. § 1332(d)(2).

### C.    The CAFA Amount in Controversy Requirement is Satisfied.

23.    CAFA's third and final requirement is that that the aggregate amount in controversy exceed $5,000,000 for the entire putative class, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2); 1332(d)(6) ("[T]he claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interests and costs.").

24.    The Supreme Court has instructed that, in a notice of removal, the removing party seeking to invoke CAFA jurisdiction "need include only a *plausible allegation* that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554 (citing 28 U.S.C. § 1446(a) (emphasis added); *see also Waith aka v. Amazon.com, Inc.*, Civil Action No. 17-40141-TSH, 2018 WL 4092074, at *1 (D. Mass. Aug. 28, 2018) (same). "While a defendant's notice of removal requires only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold, evidence establishing the amount is required when a plaintiff contests the initial allegation." *Waith*, 2018 WL 4092074, at *1 (citing *Dart Charokee*, 135 S. Ct. at 554). Even then, the First Circuit has explained that defendants need only show a "reasonable probability" that more than $5 million is in dispute. *Pazol*, 819 F.3d at

---

[18] Compl. ¶28.
[19] *See supra*, at ¶¶8-12.

9

552.

25.     The ultimate inquiry is what amount is put in controversy by the plaintiff's

complaint, not what the plaintiff will actually be awarded. "'[T]he plaintiff['s] likelihood of

success on the merits is largely irrelevant to the court's jurisdiction because the pertinent

question is what is in controversy in the case, not how much the plaintiff[ ] [is] ultimately

likely to recover.'" *Youtsey*, 734 F. Supp. 2d at 237-38 (quoting *Amoche*, 556 F.3d at 48).

26.     "To determine the amount in controversy, the court first looks to whether the

plaintiff made specific damage allegations in the complaint." *Kersey v. Staples*, Civil Action

No. 17-11267-NMG, 2018 WL 2077598, at *2 (D. Mass. May 2, 2018), *appeal filed* May 15,

2018 (citing *Coventry Sewage Associates v. Dworkin Realty Co.*, 71 F.3d 1, 6 (1st Cir. 1995)).

"In the CAFA context, if a Complaint is uncertain or ambiguous as to the amount in

controversy, a court should assess whether the amount is satisfied by looking to the 'entire

record.'" *Garick v. Mercedes-Benz USA, LLC*, Civil Action No. 17-12042-IT, 2018 WL

1570163, at *3 (D. Mass. Mar. 30, 2018) (quoting *Amoche*, 556 F.3d at 51). A defendant may

establish the jurisdictional amount by "calculation from the complaint's allegations," "by

reference to the plaintiff's informal estimates or settlement demands," or "by introducing

evidence, in the form of affidavits from the defendant's employees about how much it would

cost to satisfy the plaintiff's demands." *Amoche v. Guarantee Tr. Life Ins. Co.*, Civil Action

No. 07-371-JD, 2008 WL 3843903, at *4 (D.N.H. Aug. 14, 2008), *aff'd*, 556 F.3d 41 (1st Cir.

2009) (citing *McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008); *Meridian Sec. Ins.

Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006)); *cf. Romulus v. CVS Pharmacy, Inc.*,

770 F.3d 67, 78 (1st Cir. 2014) ("correspondence from the plaintiff to the defendant concerning

damages can constitute an 'other paper' for purposes of Section 1446(b)(3)").

27. In this case, Plaintiff's Complaint seeks on behalf the Class "actual, incidental, consequential and multiple damages suffered by them or the maximum amount of statutory or nominal damages provided or permitted by law."[20] Plaintiff does not attach a specific dollar amount to any of these damages claims in the Complaint. However, other documents within the "entire record" demonstrate that the amount in controversy exceeds $5,000,000. *Amoche*, 556 F.3d at 51.

28. For example, the Civil Action Cover Sheet that accompanied Plaintiff's Complaint states that Plaintiff is seeking $11,000,000 in damages.[21] *See Toro v. CSX Intermodal Terminals, Inc.*, 199 F. Supp.3d 320, 323-24 (D. Mass. 2016) (amount demanded by plaintiff on state court cover sheet relevant).

29. Consistent with that estimation of its damages, Plaintiff also sent demand letters to Defendants seeking $11,040,000.[22] District courts within the First Circuit have held that "a settlement demand is relevant evidence of the amount in controversy." *See, e.g., Hogan v. Wal-Mart Stores E., L.P.*, Civil Action No. 13-603 S, 2014 WL 66658, at *4 (D.R.I. Jan. 8, 2014); *Ramchandra v. Amtrak Nat. R.R. Corp.*, 345 F. Supp. 2d 33, 34 (D. Mass. 2004) (same). So, too, have courts from outside the First Circuit. *See, e.g., Cohn v. Petsmart*, 281 F.2d 837, 840 (9th Cir. 2002) ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."); *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) ("[D]ocuments that demonstrate plaintiff's own estimation of its claim are a proper means of supporting the allegations in the notice of removal, even though they cannot be used to support the ultimate amount of liability."); *Else v. Ford Motor Co.*, Civil Action No. 14-2687-L, 2014 WL 7404125, *5 (N.D. Tex. Dec. 31, 2014) (pre-suit

---

[20] Compl. at pp. 21-22.
[21] *See* Goodheart Decl., Ex. A at Civil Action Cover Sheet.
[22] *See* Goodheart Decl. at ¶4; *id.* at Ex. C.

demand letter "is relevant and significant to the amount in controversy in this case because it is compelling evidence of Plaintiff's assessment of the value of her case").

30.     Here, in demand letters sent to Defendants on August 21, 2018 as required by the Consumer Protection Act, Plaintiff demanded from Defendants one-million, six hundred and eighty-thousand dollars ($1,680,000) for current and former Oakhill residents, plus nine-million, three-hundred and sixty thousand dollars ($9,360,000) for current and former Oak Point residents.[23] These dollar amounts, according to Plaintiff's letters, "represent[] a retroactive abatement of rent corresponding to critical leasehold services that were improperly withheld during the last four years."[24] Plaintiff's demand letters assumed a rent abatement of $200 per month, which Plaintiff's counsel estimated to be one-third of the monthly lot rent at Oakhill and Oak Point for each of the 175 home-sites at Oakhill and each of the 975 home-sites at Oak Point.[25]

31.     200 dollars per month for 48 months,[26] multiplied by 1150 putative class members, totals $11,040,000.

32.     Thus, the "entire record" in the Action, including Plaintiff's Civil Case Cover Sheet and its demand letters to Defendants, have "plausibly" put into controversy an amount that exceeds the $5,000,000 threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6). *Dart Charokee*, 135 S. Ct. at 554.

33.     Plaintiff alleges a claim under the Massachusetts Consumer Protection Act. Plaintiff also seeks on behalf of the Class "the actual, incidental, consequential and multiple damages suffered by them or the maximum amount of statutory or nominal damages provided

---

[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] Plaintiff's calculation reflects that the applicable statute of limitations on her Consumer Protection Act claim is 4 years. *See* Mass. Gen. L. c. 260, § 5A.

or permitted by law."[27] This Court has stated that "[w]hen a plaintiff makes a claim under a statute including a damage multiplier, a court must apply that factor in evaluating the amount in controversy." *Lucas v. Ultima Framingham LLC*, Civil Action No. 12-12380, 2013 WL 5405668, at \*3 (D. Mass. Sept. 27, 2013). Although Defendants dispute Plaintiff's entitlement to any damages, "[t]reble damages" are recoverable for a violation of the Consumer Protection Act under certain circumstances. *See Baker v. Equity Residential Management, L.L.C.*, 996 F. Supp. 2d 1, 7 (D. Mass. Feb. 12, 2014) ("[T]reble damages under Mass. Gen. L. c. 93A, § 9(3) … may be included in the jurisdictional minimum calculation.").

34.    Plaintiff's Complaint also seeks attorneys' fees.[28] In the First Circuit, attorneys' fees are properly included in the amount in controversy if an underlying statute or contract authorizes an award of attorneys' fees. *See Spielman v. Genzyme Corp.*, 251 F.3d 1, 6-7 (1st Cir. 2001). The Consumer Protection Law allows plaintiffs to collect attorney's fees. *See* Mass. Gen. L. c. 93A, § 9(4). Although Defendants dispute Plaintiff's entitlement to recover such fees, a fair estimate of potential attorneys' fees would be 25% of damages. *See Bezdek v. Vibram, USA Inc.*, 79 F. Supp. 3d 324, 349 (D. Mass. 2015) ("Within the First Circuit, courts generally award fees in the range of 20–30% [of the common fund], with 25% as 'the benchmark.'").

35.    For all the foregoing reasons, the $5,000,000 CAFA amount in controversy requirement is satisfied here. 28 U.S.C. §§ 1332(d)(2), 1332(d)(6).

**D.    The Exceptions to CAFA Jurisdiction Do Not Apply.**

36.    CAFA provides two mandatory exceptions and one discretionary exception to the application of federal jurisdiction. *See* 28 U.S.C. §§ 1332(d)(3)-(4). In this case, it is clear

---

[27] Compl. at pp. 21-22.
[28] Compl., Request for Relief at pp. 21-22.

13

that no exception applies. Each CAFA exception requires, as a starting point, that the "primary defendants" are citizens of the forum state or that "significant relief" is sought from a citizen of the forum state. *See* 28 U.S.C. § 1332(d)(3)-(4) (local controversy CAFA exception requires that "significant relief" be sought from an in-state defendant; home state and discretionary CAFA exceptions require that all "primary defendants" be resident defendants). When determining citizenship under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Therefore, Hometown America, Hometown America Management, Hometown Oakhill, and Hometown Oak Point are not citizens of Massachusetts for purposes of CAFA. *See supra*, at ¶¶8-12; *Khath*, 2016 WL 1267387, at *4 n.4 (stating that limited liability companies are "unincorporated associations" for purposes of CAFA).

37.     Accordingly, because the CAFA prerequisites are met and none of the exceptions apply, this civil action is properly removable under CAFA.

**V.     TIMELINESS OF REMOVAL**

38.     Defendants were first served with the Summons and Complaint on September 28, 2018, *see supra*, at ¶4, and this Notice of Removal is timely filed with this Court within thirty (30) days of that date.

39.     Defendants have sought no similar relief with respect to this matter.

**VI.     ALL OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED**

40.     Venue is proper in this district under 28 U.S.C. § 1446(a) because this district and division embrace the place in which the removed action has been pending.

41.     So far as Defendants are aware, no further proceedings occurred in this Action prior to Defendants filing of this Notice of Removal.

42.    A Notice of Filing of Notice of Removal, with a copy of the Notice of Removal attached, will be filed promptly in the Superior Court of the Commonwealth of Massachusetts, County of Plymouth, in accordance with the provisions of 28 U.S.C. § 1446(d).

43.    Written notice of the filings of this Notice of Removal will be given to the adverse parties as required by law.

44.    For all the foregoing reasons, this Court has original jurisdiction under 28 U.S.C. § 1332, 28 U.S.C. § 1367, 28 U.S.C. § 1441 (a), and 28 U.S.C. § 1453.

45.    In the event that any questions should arise with regard to the propriety of the removal of this Action, Defendants respectfully request the opportunity to present a brief and oral argument in support of their positions expressed herein.

**WHEREFORE**, Defendants hereby give notice that all further proceedings in this matter shall take place in the United States District Court for the District of Massachusetts, unless and until held otherwise by that Court.

HOMETOWN AMERICA, LLC, HOMETOWN AMERICA
MANAGEMENT, LLC, HOMETOWN OAKHILL, LLC,
HOMETOWN OAK POINT I, LLC, and HOMETOWN
OAK POINT II, LLC,

By their attorneys,


/s/ Tristan P. Colangelo
Lisa C. Goodheart (BBO No. 552755)
goodheart@sugarmanrogers.com
Tristan P. Colangelo (BBO No. 682202)
colangelo@sugarmanrogers.com
SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
101 Merrimac Street, Suite 900
Boston, MA 02114-4737
(617) 227-3030

Dated:  October 15, 2018

## CERTIFICATE OF SERVICE

I, Tristan P. Colangelo, hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail and email on October 15, 2018.

Ethan Horowitz, Esq.
Northeast Justice Center
50 Island Street, Ste. 203B
Lawrence, MA 01840

/s/ Tristan P. Colangelo
Tristan P. Colangelo

4833-6101-2088, v. 2

# Exhibit 1

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **BARBARA CRAW,** | ) | |
| on behalf of herself and others | ) | |
| similarly situated, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Case No. _____ |
| **v.** | ) | |
| | ) | |
| **HOMETOWN AMERICA, LLC;** | ) | |
| **HOMETOWN AMERICA** | ) | |
| **MANAGEMENT, LLC; HOMETOWN** | ) | |
| **OAKHILL, LLC; HOMETOWN** | ) | |
| **OAKPOINT I, LLC; and HOMETOWN** | ) | |
| **OAKPOINT II, LLC** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DECLARATION OF LISA C. GOODHEART
## IN SUPPORT OF NOTICE OF REMOVAL

**I, Lisa C. Goodheart, declare:**

1. My name is Lisa C. Goodheart. I am counsel to Hometown America, LLC, Hometown America Management, LLC, Hometown Oakhill, LLC, Hometown Oak Point I, LLC and Hometown Oak Point II, LLC, Defendants in the above-styled action. I am over 21 years old and have personal knowledge of the information in this Declaration in my capacity as counsel to Defendants. If called to testify, I would and could competently testify to the facts in this Declaration.

2. Attached as Exhibit A hereto is a true and correct copy of the Civil Action Cover Sheet filed in the state court action pending in the Superior Court of the Commonwealth of Massachusetts, County of Plymouth, titled *Barbara Craw v. Hometown America, LLC, et al.*, Case No. 1883CV01017 (the "Action"). The Civil Action Cover Sheet states that the amount sought upon the contract claim presented by Plaintiff's Complaint is $11,000,000.

3.  Attached as Exhibit B hereto is a true and correct copy of the Complaint filed in the Action.

4.  On August 21, 2018, acting in my capacity as legal counsel for Defendants, I received e-mail copies of five demand letters from counsel for Plaintiff in this case, addressed to each of the five Defendants. The letters collectively demanded from Defendants a total of $11,040.000, under the Massachusetts Consumer Protection Act, General Laws c. 93A, § 9. In addition, the letters all state that if Plaintiff institutes legal action (as she has done), a court may award to her and the putative class double or triple damages, attorney's fees, and costs.  Consistent with that statement, the relief requested in Plaintiff's Complaint includes multiple damages, plus an award of attorney's fees and litigation costs, among other things.  (Exhibit B at pp 21-22.) Attached as Exhibit C hereto are true and correct copies of each of the five demand letters I received from Plaintiff's counsel on August 21, 2018.


I declare under penalty of perjury under the laws of the Commonwealth of Massachusetts and the laws of the United States of America that the foregoing is true and correct.


Dated: October 15, 2018

By: _____

Lisa C. Goodheart


4827-5847-4104, v. 3

# Exhibit A

Case 1:18-cv-12149   Document 1-1   Filed 10/15/18   Page 3 of 56

2

| CIVIL ACTION COVER SHEET | DOCKET NUMBER<br>1883CV01017 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| | | COUNTY |
|---|---|---|
| PLAINTIFF(S): Barbara Craw, on behalf of herself and others similarly situated | | Plymouth |
| ADDRESS: 1003 Oak Hill Avenue, No. 100, Attleboro MA 02703 | | |
| | DEFENDANT(S): Hometown Oak Hill I, LLC; Hometown Oak Hill II, LLC; Hometown | |
| | America, LLC; Hometown America Management, LLC & Hometown Oakhill, LLC | |
| ATTORNEY: Ethan R. Horowitz, Esq. | | |
| ADDRESS: Northeast Justice Center | ADDRESS: 200 Oak Point Drive, Middleborough MA 02346 | |
| 50 Island Street, Ste. 203B, Lawrence MA 01840 | 150 North Wacker Drive, Ste. 2800, Chicago IL 60606 | |
| | 1003 Oak Hill Avenue, No. 66, Attleboro MA 02703 | |
| BBO: 674669 | | |

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B99/A99 | Consumer Protection Act/Other Contract | F | ☒ YES    ☐ NO |

*If "Other" please describe: Consumer Protection Act class action respecting rights of manufactured housing community residents

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
### (attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses ............................................................ $ _____
    2. Total doctor expenses .............................................................. $ _____
    3. Total chiropractic expenses ...................................................... $ _____
    4. Total physical therapy expenses ............................................... $ _____
    5. Total other expenses (describe below) ...................................... $ _____
                                        Subtotal (A): $ _____

B. Documented lost wages and compensation to date ............................... $ _____
C. Documented property damages to dated ............................................... $ _____
D. Reasonably anticipated future medical and hospital expenses ................ $ _____
E. Reasonably anticipated lost wages ...................................................... $ _____
F. Other documented items of damages (describe below) ........................... $ _____

*Stamp in statement box:*
FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

SEP 25 2018

Clerk of Court

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                                    TOTAL (A-F):$

### CONTRACT CLAIMS
### (attach additional sheets as necessary)

Provide a detailed description of claims(s):
Community owners/operators charged rent corresponding to services not provided and breached tenancy contracts    TOTAL: $    11,000,000

as well as violated Consumer Protection Act

Signature of Attorney/Pro Se Plaintiff: X _____    Date: 09/25/2018

RELATED ACTIONS: Please provide the case number, case name, and county of any related action pending in the Superior Court.

*Clerk of Courts*

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _____    Date: 09/25/2018

# Exhibit B

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

| | | |
|---|---|---|
| BARBARA CRAW, on behalf of herself and other | X | |
| similarly situated individuals, | X | |
| | X | SUPERIOR COURT |
| Plaintiff, | X | CIVIL ACTION |
| | X | NO: 1883CV01017 |
| vs. | X | |
| | X | JURY TRIAL |
| HOMETOWN AMERICA, LLC, a Delaware | X | DEMANDED |
| limited liability company; HOMETOWN | X | |
| AMERICA MANAGEMENT, LLC, a Delaware | X | |
| limited liability company; HOMETOWN | X | |
| OAKHILL, LLC, a Delaware limited liability | X | |
| company; HOMETOWN OAK POINT I, LLC, | X | |
| a Delaware limited liability company; | X | |
| HOMETOWN OAK POINT II, LLC, a Delaware | X | |
| limited liability company, | X | |
| | X | |
| Defendants. | X | |
| | X | |

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

SEP 25 2018

Clerk of Court

## CLASS ACTION COMPLAINT
## FOR INJUNCTIVE RELIEF AND DAMAGES

### INTRODUCTION

1.    As one of the largest operators of manufactured housing communities in the Commonwealth, Defendant Hometown America, LLC ("Hometown") makes management decisions that impact approximately two-thousand (2,000) Massachusetts families which pay rent so that the manufactured houses they own may sit on land in each such community, also called home sites, leased to them by Hometown or one of its affiliates.

2.    Although commonly referred to as mobile homes, these families' manufactured houses are in all practical respects immobile, given that relocation of such housing is generally impracticable due to the design or age of the home, the prohibitive cost of relocating the home or the shortage of sites to which the home may be relocated – an economic reality which confers

1

tremendous leverage upon Hometown in its dealings with the residents of the manufactured housing communities it owns.

3.       Unfortunately for the hundreds of resident families who reside in Hometown's Oakhill and Oak Point manufactured home communities, located respectively in Attleboro and Middleborough, Hometown has abused this leverage in order to shirk the most basic obligation it owes to those who lease home sites in both communities – the obligation to maintain the land on which those residents' manufactured homes sit.

4.       Specifically, for at least the last six years, Hometown has implemented an unlawful policy at Oakhill and Oak Point that shifts onto those communities' residents the substantial burden of maintaining, repairing and replacing the permanent improvements built into the land on those residents' leased home sites ("Policy"), in violation of the Manufactured Housing Community Law as well as decades of jurisprudence protecting the rights of residential tenants.

5.       Through its enforcement of the Policy, Hometown has attempted to saddle its residents with the responsibility for home-site infrastructure that Hometown, as both a manufactured home community operator and landlord, is required by law to maintain, repair and replace.

6.       Such infrastructure includes the cement slab upon which many residents' homes sit, the paved walkways and driveways leading from each home to the street and the underground sprinkler systems which water the grass on rented home sites, among other permanent improvements built into the leased land of both communities.

7.       At best, the Policy has resulted in a substantial inconvenience for Oakhill and Oak Point residents, many of whom have been forced to choose between either coping with the loss

2

of important home-site infrastructure or paying out-of-pocket to maintain the same – such as cracking walkways, deteriorating driveways and aging underground sprinklers, among others.

8.    At worst, the Policy has resulted in perilous conditions for Oakhill and Oak Point residents, many of whose leased home sites are routinely inundated with water because cement slabs or paved walkways and driveways have not been graded properly or because the land on which their homes sit has not otherwise been adequately maintained so as to repel water away from residents' homes.

9.    Regardless of the specific result, Hometown – in conjunction with the other four defendants which on paper assist Hometown with setting policy and managing operations at Oakhill and Oak Point – has collected millions of dollars in home-site rent from Oakhill and Oak Point residents for maintenance services related to the maintenance of home-site infrastructure that neither Hometown nor any other related entity has provided.

10.    Plaintiff Barbara Craw has lived with her disabled son in Oakhill for more than ten years – where the manufactured home she owns sits on land leased to her by Hometown affiliates Defendant Hometown Oakhill, LLC and Defendant Hometown America Management, LLC – and has suffered under the Policy more than most.

11.    Since Ms. Craw moved into Oakhill, Ms. Craw's leased home site has routinely flooded, flooding which over the years has inundated her yard, rendered her driveway unusable and damaged both the paved walkways around her home as well as her front porch.

12.    After three years of complaining to Hometown's Oakhill management team about these conditions, management installed additional drains on Ms. Craw's home site, drains which alleviated some of the flooding in her yard but did not resolve the ongoing inundation of her driveway and paved walkways.

13.    Moreover, Oakhill management refused to repair the damage to infrastructure located on Ms. Craw's leased home site that was caused by such flooding.

14.    When the new drains failed to resolve the poor conditions on her home site and Oakhill management began to ignore her complaints anew, Ms. Craw started withholding rent and asserted to management that the inundation of her home site was the result of inherent defects with the grading and layout of the land itself – defects which would require more costly corrective action.

15.    Instead of addressing the problems raised by Ms. Craw, Hometown hired an attorney who attributed the flooding to weather anomalies and threatened Ms. Craw with eviction if she failed to pay rent.

16.    Terrified of how she and her disabled son would cope with an eviction, Ms. Craw relented, ceased withholding rent and scaled back her complaints.

17.    Nevertheless, Ms. Craw's home site has continued to flood on a routine basis and Oakhill management has continued to ignore Ms. Craw's meek requests that it repair the flood damage to her leased home site as well as that it make the necessary changes to the home site which would prevent future flooding.

18.    Oakhill management has even gone so far as to include a provision in the standard resident Lease Agreement which purports to shift onto community residents the responsibility for maintaining the permanent improvements built into residents' leased home sites – a provision which directly contravenes the Manufactured Housing Community Law and its regulations.

19.    Regrettably, Oakhill is not the only manufactured home community in the Commonwealth impacted by Hometown's unlawful Policy.

4

20.     Just as it did at Oakhill, within a few years of its purchase of Oak Point — where residents' manufactured homes sit on land leased to them by Hometown affiliates Defendants Hometown Oak Point I, LLC and Hometown Oak Point II, LLC as well as Defendant Hometown America Management, LLC – Hometown effected a similar roll-out of the Policy that shifted the burden of improperly maintained home-site infrastructure and resultant flooding onto community residents.

21.     In the early years of Hometown's tenure as operator of Oak Point, effectuation of the Policy included a campaign of obfuscation by Oak Point management, which intentionally ignored residents' complaints about flooding and assured particularly vocal residents that the excessive water on their leased home sites was not a real problem or could be fixed with minor repairs.

22.     As the complaints of flooding grew, Hometown – just as it did at Oak Hill – began disclaiming all responsibility for maintenance to home-site infrastructure and hired lawyers in an effort to silence residents.

23.     Hometown went even so far as to allow a senior Hometown manager to represent publicly to local government officials that Oak Point residents are responsible for maintaining the permanent improvements built into their leased home sites – a statement which directly contravenes the Manufactured Housing Community Law and its regulations as well as decades of jurisprudence protecting the rights of residential tenants.

24.     By this action, Ms. Craw – on behalf of herself and other similarly-situated residents of Oakhill and Oak Point – seeks an injunction ordering Defendants to implement policies and procedures maintaining, repairing and replacing as necessary all permanent elements

of the home sites in those communities so that all home sites are safe and in good repair, as required by law.

25.    By this action, Ms. Craw – on behalf of herself and other similarly-situated current and former residents of Oakhill and Oak Point – seeks damages from Defendants to compensate those residents for injuries they have suffered as a result of Defendants' improper refusal to maintain, repair or replace the permanent elements of the home sites in those communities.

## JURISDICTION & VENUE

26.    Ms. Craw invokes the jurisdiction of the Court pursuant to Sections 3 and 4 of General Laws Chapter 212 – as the amount in controversy implicated by the instant action is greater than twenty-five-thousand dollars ($25,000), pursuant to Section 1 of General Laws Chapter 214 – insofar as Ms. Craw seeks equitable redress for Defendants' misconduct and pursuant to Section 9(1) of General Laws Chapter 93A – insofar as Ms. Craw seeks to hold Defendants liable for their violations of the Consumer Protection Act.

27.    Venue before the Court is proper pursuant to Sections 1 and 8 of Chapter 223, as Defendants Hometown Oak Point I, LLC and Hometown Oak Point II, LLC maintain their usual place of business in Middleborough within the County of Plymouth.

## PARTIES

28.    Plaintiff Craw is a disabled, single-mother who has resided in Oakhill with her disabled minor son since 2006.

29.    Defendant Hometown America, LLC ("Hometown") – through its affiliates – indirectly owns, manages and sets policy at over twenty-four-thousand (24,000) home sites located at sixty (60) manufactured housing communities throughout the country, six (6) of which

are located in the Commonwealth and which include Oakhill and Oak Point – located in Attleboro, and Middleborough, Massachusetts, respectively.

30.     Defendant Hometown Oakhill, LLC ("Hometown Oakhill") is an affiliate of Hometown which owns the land on which Oakhill is located and the sole business of which is to lease such land to the approximately one-hundred seventy-five (175) resident families of Oakhill.

31.     Defendants Hometown Oak Point I, LLC and Hometown Oak Point II, LLC (collectively, "Hometown Oak Point") are affiliates of Hometown which own the land on which Oak Point is located and the sole business of which is to lease such land to the approximately nine-hundred seventy-five (975) resident families of Oak Point.

32.     Defendant Hometown America Management, LLC ("Hometown Management") is an affiliate of Hometown that has represented itself to be the managing agent at or beneficial owner of Oakhill or Oak Point.

FACTS

I.     HOMETOWN'S IMPLEMENTATION OF THE POLICY AT OAKHILL

33.     In January of 2006, Hometown Oakhill purchased the land on which the Oakhill manufactured housing community sits from the community's former owner for $6.99 million.

34.     At the time of Hometown Oakhill's purchase of the Oakhill community, Hometown Oakhill had existed for less than four months.

35.     At the time Hometown Oakhill completed the purchase of the Oakhill community, Hometown was the sole Controlling Person and Guarantor of Hometown Oakhill – pursuant to the mortgage securing the land on which Oakhill sits in the amount of the loan that financed Hometown Oakhill's purchase of that community.

7

36.   At or around the time of Hometown Oakhill's purchase of the Oakhill community, Hometown Oakhill entered into a Management Agreement obligating Hometown Management to operate Oakhill.

37.   Shortly after Hometown Oakhill's purchase of the Oakhill community, Ms. Craw purchased a manufactured home at Oakhill and was instructed to begin paying monthly rent to "Hometown America" so that her home could sit on and her family could occupy a leased home site ("Site No. 100").

38.   Ms. Craw decided to purchase a manufactured home at and lease Site No. 100 because the transaction provided her with an affordable method of becoming a first-time homeowner while she managed her career and raised her then-infant son.

39.   At or around the time Ms. Craw moved into her manufactured home located on Site No. 100, Oakhill Community Manager Tammy Feeney provided Ms. Craw with various documents to sign, which formalized the terms of Ms. Craw's tenancy at Oakhill and which Ms. Feeney countersigned on behalf of Hometown Oakhill and Hometown Management.

40.   During her first year residing at Oakhill, Site No. 100 routinely flooded during and after rainstorms – flooding which regularly covered the driveway and cement walkways built into Site No. 100, flooding which often inundated the side-yard of Site No. 100 and flooding which sometimes even reached the crawl space under Ms. Craw's home.

41.   Ms. Craw – who was particularly concerned about how the regular dampness might create mold that would aggravate her son's asthma – promptly complained about the flood problem to Community Manager Feeney who suggested the water issues were the result of anomalous weather conditions.

8

42.    However, the flooding on Site No. 100 did not vary from year to year as Ms. Feeney had suggested, but remained consistent.

43.    Moreover, the flooding often created dangerous conditions on Site No. 100 as the flood waters routinely covered the driveway and front walkways on Site No. 100 – a condition which prevented Ms. Craw from parking her car in the driveway and required her to cross ankle-deep water so that she and her young son could reach her home's front door.

44.    The first step of Ms. Craw's front porch, which was often submerged in water, even rotted out.

45.    And so, Ms. Craw continued to complain to Ms. Feeney about the conditions on Site No. 100, complaints which Ms. Feeney finally addressed in or around November of 2009 by causing a channel drain and catch basin to be installed on or near Site No. 100 – in an attempt to divert accumulated water away from Ms. Craw's home.

46.    Although these improvements reduced the flooding in Site No. 100's side-yard, they did not resolve the underlying problem with the home site and water continued to inundate the driveway and cement walkways on Site No. 100 – such that the cement walkways on the Site began to crack and crumble.

47.    Frustrated by Oakhill's slow and ineffective response to the problem conditions on her leased home site, in or around May of 2010, Ms. Craw suggested to Ms. Feeney that Site No. 100's permanent elements – such as the cement around her home or the driveway – might need to be re-graded or otherwise improved in order to prevent the regular flooding.

48.    During this conversation, Ms. Craw also requested that Ms. Feeney arrange for the repair of damage to Site No. 100's cement walkways caused by the continual flooding.

9

49.    In response to Ms. Craw's suggestion, Ms. Feeney stated that Oakhill was not responsible for such improvements or repairs – an assertion which surprised Ms. Craw, who responded in turn by formally withholding her home-site rent until Oakhill resolved the ongoing perilous conditions at Site No. 100.

50.    Shortly thereafter, Ms. Craw received a letter from the Law Offices of Russo & Scolnick – drafted by Attorney Mark R. Laverty – who wrote on behalf of Hometown.

51.    In this letter, Attorney Laverty attributed Ms. Craw's concerns to anomalous weather, asserted that Oakhill management had resolved her concerns, suggested that any remaining concerns were Ms. Craw's responsibility to remedy and threatened to evict Ms. Craw and her son if she did not pay rent.

52.    Terrified by Attorney Laverty's letter, Ms. Craw promptly paid her rent and tried to make due with the difficult situation.

53.    Yet, despite Attorney Laverty's assertions to the contrary, the flooding problem on Site No. 100 had not been resolved and water continued to inundate the home site's driveway and cement walkways just as before.

54.    While Ms. Craw continued to complain about the flooding on her home site to Ms. Feeney, Ms. Craw's fear of retaliation greatly tempered her complaints and Ms. Feeney's responses oscillated between disclaiming responsibility and blaming anomalous weather conditions.

55.    In or around 2013, Ms. Craw received a cancer diagnosis, a condition which forced her to leave her job so that she could focus her energies on her health and which restricted her ability to complain to Oakhill management about the problematic conditions on Site No. 100.

56.     Nevertheless, in the intervening years, Ms. Craw has continued to raise concerns about the condition of Site No. 100 with the new Oakhill Community Manager – Josephine Santa Fe (née Pizzimenti) who replaced Ms. Feeney – as well as with Hometown Regional Manager Kyle Howieson, the former of whom has consistently responded to Ms. Craw's concerns with non-committal platitudes and the latter of whom usually fails to respond at all.

57.     Ironically, although Oakhill has remained steadfast in its refusal to provide critical infrastructure maintenance services to Ms. Craw's leased home site, her monthly rent payments have continued to increase, from four-hundred dollars ($400) per month when she first moved into the community in 2006 to six-hundred ten dollars ($610) per month at present – an increase of more than fifty-percent (50%)

58.     In August of this year, in an effort to control her annual rent increases, Ms. Craw requested that Community Manager Santa Fe provide Ms. Craw with a copy of the community's standard five-year Lease Agreement.

59.     Upon review of the Lease Agreement, Ms. Craw was surprised to learn that Hometown's informal policy of evading responsibility for maintaining, repairing and replacing the permanent improvements on her leased home site was in fact a formal written policy.

60.     Specifically, Section 6 of the proposed Lease Agreement provides in relevant part:

> *6. HOMESITE AND HOMESITE MAINTENANCE*
> *The physical improvements provided for the exclusive use of RESIDENT are the homesite referenced above and utility connections located on the homesite.  Other improvements located on the homesite at the initiation of this Agreement such as concrete surfaces, if any, trees and other fixtures are to be maintained by RESIDENT during the period of RESIDENT's tenancy. ...*

11

II.     HOMETOWN'S IMPLEMENTATION OF THE POLICY AT OAK POINT

61.     In November of 2011, Hometown Oak Point purchased the land on which the Oak Point community sits from the community's former owners for more than $55 million.

62.     At the time Hometown Oak Point completed the purchase of the Oak Point community, the Hometown Oak Point entities had existed for less than one month.

63.     At the time of Hometown Oak Point's purchase of the Oak Point community, Hometown assumed liability for, and was listed as the Key Principal in, the mortgage securing the land on which Oak Point sits.

64.     Following Hometown Oak Point's purchase of the Oak Point community, Hometown Oak Point entered into an arrangement through which Hometown Management became the property manager of Oak Point.

65.     Accordingly, the standard Oak Point Home Site Agreement lists Hometown Oak Point as the lessors and Hometown Management as the "beneficial owner."

66.     By no later than 2012, Oak Point General Manager Fred Taylor and Oak Point Community Manager Peter Conant were aware of water drainage problems that were impacting home sites leased to various Oak Point residents and that were caused by improperly maintained permanent improvements to those home sites.

67.     Yet, in response to inquiries from Oak Point residents respecting water accumulation on their leased home sites, Mr. Conant routinely suggested that the reported standing water on each home site's cement slab or in each home site's yard was a normal occurrence that should not concern residents or otherwise acted as if the reported problems were not serious.

68.    If pushed by residents, General Manager Taylor or his interim successor – Oak Point Office Manager Debbera Silva – would agree to make minor repairs to address those residents' concerns – such as installing an extra drain on a home site.

69.    However, at no time did Oak Point management acknowledge that the ongoing water accumulation problems at Oak Point were community-wide problems and caused by permanent home-site improvements that were improperly graded or otherwise inadequately maintained to repel water from residents' homes.

70.    By 2015, the growing number of water accumulation complaints from Oak Point residents became so great that Oak Point management – specifically Oak Point's new General Manager Doreen Lang – began advising residents that the reported flooding as well as the property damage it caused, though serious and substantial, were the responsibility of the residents.

71.    Moreover, Oak Point management's explicit direction to residents that they assume responsibility for the maintenance of the infrastructure on their leased home sites extended well beyond issues related to flooding and included representations to residents that residents were also responsible for repairing basic wear-and-tear to home-site infrastructure, such as paved walkways, paved driveways or underground sprinkler systems.

72.    In or around November of 2017, Oak Point residents began to organize and through these efforts eventually submitted complaints about the worsening conditions at over one-hundred home sites to the U.S. Department of Housing and Urban Development ("HUD"), which responded by opening an official inquiry into conditions at Oak Point.

73.     Moreover, numerous residents also began complaining about conditions at Oak Point to officials at the Town of Middleborough, which began raising residents' concerns at meetings of the Town Board of Selectmen.

74.     At one of these meetings, held on April 30th of this year, Mr. Conant – speaking on behalf of Hometown and under mounting pressure to reverse the Policy – told the Board of Selectmen that Hometown would take responsibility for fully remediating the water accumulation that was impacting Oak Point home sites.

75.     Nevertheless, following HUD's announcement that it had limited the scope of its inquiry to the approximately eleven-percent of Oak Point's home sites that had been constructed after 2011, Hometown retracted Mr. Conant's statement and explained that Hometown was not responsible for the eighty-nine-percent of Oak Point's home-site infrastructure that fell outside of the scope of HUD's inquiry because such infrastructure had been installed by the entity from which Hometown had purchased the community in 2011.

76.     This assertion was reiterated publicly by Regional Manager Kyle Howieson while speaking on behalf of Hometown at a Board of Selectmen meeting on July 23rd of this year.

77.     When asked at the July 23rd meeting how he could reconcile Hometown's refusal to maintain Oak Point home-site infrastructure, such as the cement slab (or pad), with the contrary requirements of the Manufactured Housing Community Law, Mr. Howieson responded that he "read the statute" and "[i]t doesn't say that the owners are responsible for the pad."

78.     When asked at the July 23rd meeting how he could reconcile his interpretation of the Law with the contrary interpretation of the Office of the Attorney General in the Guide to Manufactured Housing Community Law, a Law which the Attorney General is charged by

statute to implement, Mr. Howieson responded that "the guide to manufactured housing document ... isn't the law" but rather is just "someone's interpretation of the law."

79.     Only after intervention by Hometown's litigation counsel, in a letter sent approximately three weeks after Mr. Howieson's July 23rd statements, did Hometown's Policy purportedly "evolve" such that it agreed to "abide by the Attorney General's interpretation of the applicable regulations governing manufactured home communities."

80.     However, into what exactly the Policy has evolved remains unclear.

81.     Moreover, Defendant Hometown Oak Point has not modified the language of the standard Home Site Agreement which purports to obligate Oak Point residents to maintain all aspects of their leased home sites:

> *11. Maintenance. Alterations. Inspection.*
>
> *The Home Owner covenants and agrees to maintain the Home Site, the Home and any appurtenances to the Home (such as garage, front stoop or deck) in first class condition. ...*

## III.    CLASS ALLEGATIONS

82.     After learning of the breadth and brazenness with which the Defendants had employed the Policy to violate not only her rights but the rights of numerous other Oakhill and Oak Point residents, Ms. Craw retained counsel and caused a thirty-day demand letter to be sent to all Defendants, pursuant to the Consumer Protection Act, on August 21st of this year.

83.     Through this letter, Ms. Craw – on behalf of herself and all similarly-situated current and former residents of Oakhill and Oak Point – demanded that Defendants: (A) immediately discontinue the Policy; (B) immediately maintain, repair or replace the home-site infrastructure in Oakhill and Oak Point so that all home sites therein are safe and in good repair; and (C) compensate Oakhill and Oak Point residents for the injuries they have suffered as a result of the Policy.

84.    On September 24th, Defendants timely responded with an unreasonable settlement offer and Ms. Craw subsequently commenced the instant class action lawsuit.

A.    GENERAL LAWS CHAPTER 93A, SECTION 9(2)

85.    Ms. Craw brings her Consumer Protection Act claim on behalf of herself and a putative class of more than one-thousand (1,000) current and former resident-households of the Oakhill and Oak Point manufactured housing communities ("Putative Class") which have resided in either community at any time since September of 2012 ("Putative Class").

86.    Ms. Craw is similarly situated to all members of the Putative Class insofar as both Ms. Craw and all such members have resided in a manufactured housing community at which one or more of the Defendants have consistently enforced the Policy as well as deprived both Ms. Craw and the Putative Class members of critical home-site infrastructure maintenance, repair or replacement services that Defendants were required by law to provide.

87.    Ms. Craw has suffered an injury similar to the injury suffered by all members of the Putative Class insofar as both Ms. Craw and all such class members have paid substantial sums of rent to one or more Defendants corresponding to critical home-site infrastructure maintenance, repair or replacement services that Defendants neither provided nor caused to be provided.

88.    Ms. Craw and undersigned counsel have demonstrated that they can and will both fairly and adequately protect the interests of the Putative Class members in pursuing this action.

89.    Specifically, Ms. Craw has a demonstrated track-record of public service, is committed to obtaining a just resolution of this dispute to the benefit of all Putative Class members and lacks any reason because of which she may fail to vigorously seek the same.

90.    Specifically, the undersigned counsel is the director of a civil legal aid organization, holds both consumer law as well as class action experience, is also committed to obtaining a just resolution of this dispute to the benefit of all Putative Class members and similarly lacks any reason because of which he may fail to vigorously seek the same.

B.    CIVIL PROCEDURE RULE 23

91.    Ms. Craw brings her breach of contract claim on behalf of herself and a putative class of more than one-thousand (1,000) current and former resident-households of the Oakhill and Oak Point manufactured housing communities, which have lived in either community at any time since September of 2012 ("Putative Class"), a group which is numerous and which would be impracticable to join individually to the instant action.

92.    Ms. Craw's contract claim presents for judicial determination factual and legal questions that are common to all members of the Putative Class and which predominate over any questions affecting only individual members, namely:

(a) determination of the scope and duration of the Policy;

(b) determination of whether the Policy violated the Manufactured Housing Community Law and corresponding regulations;

(c) determination of whether the leasehold contracts entered into between one or more Defendants and the Putative Class members all expressly or impliedly incorporated the Policy into such leasehold contracts;

(d) determination of whether such express or implied provisions are void as a matter of public policy and should be or should have been reformed to incorporate the applicable requirements of the Manufactured Housing Community Law and corresponding regulations; and

17

(e) determination of whether Defendants' implementation of the Policy breached the Putative Class members' leasehold contracts.

93.    Ms. Craw's contract claim is typical of the claims of Putative Class members, as such claims are all based on the same Policy which was incorporated expressly or impliedly into all members' leasehold contracts and which was implemented uniformly as to all members such that the members' claims are all rooted in identical legal as well as remedial theories.

94.    Ms. Craw and undersigned counsel have demonstrated that they can and will both fairly and adequately protect the interests of all Putative Class members in pursuing this action.

95.    Ms. Craws' proposed class action is superior to other available methods for the fair and efficient adjudication of this controversy in that the relatively modest losses suffered by individual Putative Class members would be economically infeasible to litigate on an individual basis and that such piecemeal litigation would risk inconsistent application of the critical protections of the Manufactured Housing Community Law at-issue before the Court.

FIRST CAUSE OF ACTION
BY BARBARA CRAW ON BEHALF OF HERSELF AND THE PUTATIVE CLASS
CONSUMER PROTECTION ACT – GENERAL LAWS C. 93A § 9
AS TO ALL DEFENDANTS

96.    Paragraphs 1 through 95 are incorporated herein, as if fully restated below.

97.    Ms. Craw and each Putative Class member is a person, as that term is used in Section 9(1) of Chapter 93A.

98.    Defendants are each a person engaged in the conduct of a trade or commerce, as those terms are used in Sections 2(a) and 9(1) of Chapter 93A – specifically as either an operator or licensee, as those terms are used in Section 10.01 of Code of Massachusetts Regulations Title 940.

18

99.    Defendants' implementation of the Policy is an unfair or deceptive act or practice, pursuant to Section 2 of Chapter 93A and Section 10.00 *et seq.* of Code of Massachusetts Regulations Title 940, specifically Regulation 10.04(5)(f).

100.    Defendants knew or should have known that the Policy violated the Manufactured Housing Community Law, as well as corresponding regulations, and their implementation of such Policy has been willful.

101.    Defendants knew or should have known that their conduct has violated the Manufactured Housing Community Law and their failure to offer a reasonable settlement offer was in bad faith.

102.    Defendants' implementation of the Policy has injured Ms. Craw and each member of the Putative Class.

103.    Defendants' ongoing implementation of the Policy will irreparably harm Ms. Craw and each member of the Putative Class by forcing them to endure unsafe conditions on their home sites and requiring them to pursue repeated legal action to enforce their right, under the Manufactured Housing Community Law, to properly maintained home-site infrastructure.

104.    Equitable relief requiring Defendants to comply with their obligations under the Manufactured Housing Community Law simply requires Defendants to follow the law and will substantially benefit Ms. Craw and each member of the Putative Class.

## SECOND CAUSE OF ACTION
### BY BARBARA CRAW ON BEHALF OF HERSELF AND THE PUTATIVE CLASS
### BREACH OF CONTRACT
### AS TO DEFENDANTS HOMETOWN OAKHILL AND HOMETOWN OAK POINT

105.    Paragraphs 1 through 104 are incorporated herein, as if fully restated below.

106.    Ms. Craw and each member of the Putative Class has entered into a valid and binding lease contract – either for a specific term or at-will – with Defendants Hometown

19

Oakhill or Hometown Oak Point so that each member may occupy a home site at either Oakhill or Oak Point.

107.    Defendants Hometown Oakhill or Hometown Oak Point breached each such contract by implementing the Policy and withholding critical home-site infrastructure maintenance services required as a matter of law by the contracts.

108.    Ms. Craw and each member of the Putative Class complied sufficiently with their obligations under each such contract as a matter of law so as not to excuse the breaching conduct of Defendants Hometown Oakhill or Hometown Oak Point.

109.    The breaching conduct by Defendants Hometown Oakhill or Hometown Oak Point deprived Ms. Craw and each member of the Putative Class of their expectancy under the contracts and accordingly caused damage to Ms. Craw and each member of the Putative Class.

110.    The continued breaching conduct by Defendants Hometown Oakhill and Hometown Oak Point will irreparably harm Ms. Craw and each member of the Putative Class by forcing Ms. Craw and the Putative Class to endure unsafe conditions on their unique home sites – for which there is no adequate remedy at law.

111.    Equitable relief requiring Defendants Hometown Oakhill and Hometown Oak Point to comply with their obligations under the contracts simply requires the two defendants to follow the law and will substantially benefit Ms. Craw and each member of the Putative Class.

### THIRD CAUSE OF ACTION
### BY BARBARA CRAW ON BEHALF OF HERSELF
### QUIET ENJOYMENT STATUTE – GENERAL LAWS C. 186 § 14
### AS TO DEFENDANTS HOMETOWN OAKHILL AND HOMETOWN MANAGEMENT

112.    Paragraphs 1 through 111 are incorporated herein, as if fully restated below.

113.    Ms. Craw is a tenant or lessee, as contemplated in Section 14 of Chapter 186.

114.    Defendants Oakhill and Hometown Management are each a landlord or lessor, as those terms are used in Section 14 of Chapter 186.

115.    Implementation of the Policy by Defendants Hometown Oakhill and Hometown Management substantially impaired the character and value of Ms. Craw's leasehold or home site.

116.    Defendants Hometown Oakhill and Hometown Management knew or should have known that the Policy would substantially impair the character and value of Ms. Craw's leasehold or home site.

117.    Implementation of the Policy by Defendants Hometown Oakhill and Hometown Management reduced the value of Ms. Craw's leasehold or otherwise caused her damage.

118.    Defendant Hometown Oakhill's and Defendant Hometown Management's ongoing implementation of the Policy will irreparably harm Ms. Craw by forcing her to endure unsafe conditions on her leased home site and requiring her to pursue repeated legal action to enforce her right to properly maintained home-site infrastructure.

119.    Equitable relief requiring Defendants Hometown Oakhill and Hometown Management to comply with their obligations under the law simply requires the defendants to follow the law and will substantially benefit Ms. Craw and other residents of communities operated by the two defendants.

<u>REQUESTED RELIEF</u>

WHEREFORE, Ms. Craw requests that the Court:

A.    Enter an order against all Defendants, jointly and severally, awarding to Ms. Craw and the members of the Putative Class the actual, incidental, consequential and multiple damages

21

suffered by them or the maximum amount of statutory or nominal damages provided or permitted by law;

B.    Issue an injunction ordering Defendants to immediately perform all maintenance, repair and replacement work to home-site infrastructure located at Oakhill and Oak Point so that Oakhill and Oak Point home sites are all in good repair, as required by law;

C.    Issue an injunction ordering Defendants within sixty days to submit for the Court's approval written policies and procedures whereby Defendants will assume responsibility for the maintenance, repair and replacement of the home-site infrastructure located at Oakhill as well as Oak Point and, upon Court approval, issue an injunction ordering all Defendants to implement said policies and procedures;

D.    Enter an order against all Defendants, jointly and severally, awarding to Ms. Craw and the members of the Putative Class the litigation costs and reasonable attorney's fees associated with the prosecution of this action;

E.    Enter an order against all Defendants, jointly and severally, awarding to Ms. Craw and the members of the Putative Class pre- and post-judgment interest on all applicable amounts awarded by the Court;

F.    Enter any further order the Court deems necessary for the just and proper resolution of this matter.

Respectfully submitted,                          This 25th day of September, 2018
BARBARA CRAW,
By her attorneys,

Ethan R. Horowitz
BBO # 674669
Northeast Justice Center

22

50 Island Street, Suite 203B
Lawrence, MA 01840
(978) 888-0624
ehorowitz@njc-ma.org

# EXHIBIT C



ETHAN HOROWITZ
MANAGING DIRECTOR
EHOROWITZ@NJC-MA.ORG

UNION CROSSING
50 ISLAND STREET, SUITE 203B
LAWRENCE, MA 01840
DIRECT DIAL: 978-888-0624
FAX: 978-325-0124

OFFICES:
LYNN
LAWRENCE
LOWELL

August 21, 2018

**VIA FIRST CLASS & CERTIFIED MAIL**
Hometown America, LLC
Attn: Legal Department
150 North Wacker Drive, Ste. 2800
Chicago IL 60606

RE:    CONSUMER PROTECTION ACT DEMAND LETTER

UNFAIR AND DECEPTIVE BUSINESS PRACTICES AT THE OAK POINT AND
OAKHILL MANUFACTURED HOUSING COMMUNITIES

Sir or Madam:

This office represents Ms. Barbara Craw, a resident of the Oakhill manufactured housing
community located in Attleboro, Massachusetts, a community which is indirectly owned and
operated by Hometown America, LLC ("Hometown").  As such, Ms. Craw owns her
manufactured home but rents from Oakhill the land on which her home sits, a leased premises
that is commonly called a home site.  As described more fully below, for at least the last four
years Hometown has implemented an unlawful policy at Oakhill – as well as at the Oak Point
manufactured housing community located in Middleborough, Massachusetts which is also
indirectly owned and operated by Hometown – that improperly burdens the communities' tenant-
residents with maintaining, repairing and replacing the permanent elements at each resident's
rented home site ("Policy").  By this letter, Ms. Craw – on behalf of herself and all other
similarly situated current and former residents of Oakhill and Oak Point (together, the "Impacted
Communities") – demands pursuant to Section 9 of General Laws Chapter 93A that Hometown:
(1) immediately cease enforcement of the Policy; (2) immediately maintain, repair or replace all
permanent elements located on the home sites at the Impacted Communities that are in need of
such maintenance, repair or replacement; and (3) compensate the current and former residents of
the Impacted Communities in the amount of eleven-million forty-thousand dollars
($11,040,000), an amount which represents a retroactive abatement of rent corresponding to
critical leasehold services that were improperly withheld during the last four years.  Ms. Craw
supports this demand with the following summary of law and fact.

Hometown – through its officers and employees, such as Stephen Braun and Kyle Howieson –
has made and continues to make critical policy decisions for the operation of the Impacted
Communities and is thus an operator contemplated by the Manufactured Housing Community
Regulations.  *See* 940 Code of Mass. Regs. 10.01.  As a manufactured housing community
operator, Hometown is responsible for ensuring that business practices at the Impacted

MAIN NUMBERS
888-657-2889
781-599-7730

Massachusetts
Legal
Assistance
Corporation

WWW.NORTHEASTJUSTICECENTER.ORG

August 21, 2018
Page 2

Communities conform to the Manufactured Housing Community Law and its corresponding Regulations. *See* 940 Code of Mass. Regs. 10.02(2) ("It shall be an unfair or deceptive act or practice, in violation of M.G.L. c. 93A, § 2, for an operator ... to impose any rule, or term or condition of occupancy, or to otherwise take action, that conflicts with any applicable provision of 940 CMR 10.00 ..."). One such Regulation, Regulation 10.04(5)(f), expressly prohibits operators from requiring "any resident to make permanent improvements to the manufactured home site," 940 Code of Mass. Regs. 10.04(5)(f), improvements which the Office of the Attorney General – as the agency charged with administering the Regulations – has interpreted to include cement slabs, driveways and walkways, among other improvements. *See The Att'y Gen.'s Guide to Manuf. Hous. Cmty. Law*, p. 14, (Nov. 2017). The Office of the Attorney General has further interpreted this prohibition as conversely requiring operators to "maintain, repair, and replace" all such permanent improvements. *Id.* This interpretation is consistent with the consumer-protection purpose of the Manufactured Housing Community Law as well as decades of jurisprudence obligating landlords – including those who rent home sites for manufactured homes – to maintain leaseholds in a safe and functional condition. *See, generally, Danusis v. Longo*, 48 Mass. App. Ct. 254, 262 (1999); Mass. Gen. Laws c. 186 § 14; *Simon v. Solomon*, 385 Mass. 91, 100-04 (1982).

While its legal obligations concerning home site maintenance are undisputed, Hometown inexplicably and for at least the last four years has refused to comply with Regulation 10.04(5)(f), but rather has routinely saddled Ms. Craw as well as other residents of the Impacted Communities with the costs of maintaining, repairing and replacing the permanent improvements of their leased home sites.

Since moving into Oakhill in 2006, Ms. Craw has consistently complained to the community managers of Oakhill – Tommy Feeney and Josephine Santa Fe – that the driveway and cement improvements on her leased home site routinely flood, flooding which has resulted from the improper grading of those improvements, which has eroded some of the home site's cement improvements and which generally creates hazardous conditions on Ms. Craw's home site. In response to Ms. Craw's complaints, Oakhill management caused additional drains to be installed on the home site, a solution which neither addressed the underlying problem with the permanent improvements nor resolved the flooding. Additionally, Oakhill management has refused to repair the damaged cement. Further complaints by Ms. Craw, including to Hometown Regional Manager Kyle Howieson, have been met with noncommittal responses or silence.

While Ms. Craw did not understand why Hometown was refusing to comply with its obligation to maintain the permanent improvements on her home site, unfolding events at Oak Point have brought Hometown's unlawful Policy into clearer focus. As you are likely aware, in recent months numerous Oak Point residents – like Ms. Craw – have now come forward with complaints concerning the inundation of their home sites that has resulted from the improper grading of cement slabs and other permanent leasehold improvements as well as Hometown's refusal to undertake the maintenance and repairs to those permanent improvements necessitated by such flooding. As you are also likely aware, many of these complaints had been raised consistently with Oak Point management but had remained unaddressed for years. At a public

August 21, 2018
Page 3

meeting of the Middleborough Board of Selectmen on July 23rd of this year, Hometown Regional Manager Kyle Howieson explained Hometown's failure to take responsibility for these permanent improvements and comply with Regulation 10.04(5)(f) by stating that "the Guide to Manufactured Housing document" – published by the Office of the Attorney General and interpreting the Manufactured Housing Community Regulations it is charged with administering – "isn't the law, that's someone's interpretation of the law." In this way and in no uncertain terms, Mr. Howieson signaled to the residents of the Impacted Communities that Hometown was not complying with Regulation 10.04(5)(f) and did not intend to comply.

While Hometown's recent acknowledgment concerning the proper interpretation of Regulation 10.04(5)(f) is commendable, this acknowledgement does nothing to compensate current and former residents of the Impacted Communities who paid substantial sums of rent for the services required by Regulation 10.04(5)(f) that they did not receive. Moreover, Hometown's inexplicable history of refusing to abide by Regulation 10.04(5)(f) calls into question whether Hometown will in fact withdraw the Policy and replace it with actual practices that robustly comply with its obligations respecting permanent home site improvements.

Accordingly, by this letter, Ms. Craw, on behalf of herself and the similarly situated current and former residents of the Impacted Communities, demands that Hometown immediately cease enforcement of the Policy and maintain, repair or replace all permanent elements located on the home sites at the Impacted Communities – including, but not limited to, cement slabs, walkways and driveways as well as the proper grading of the same – that are in need of such maintenance, repair or replacement.

Additionally, by this letter, Ms. Craw, on behalf of herself and the similarly situated current and former residents of the Impacted Communities, further demands that Hometown compensate all such residents who have lived in either community at any time during the last four years for Hometown's refusal to provide services necessary to maintain, repair or replace permanent improvements at those residents' leased home sites. Given that each resident household paid rent to Hometown for these services and such services were critically important to each resident's proper use of his or her leasehold, Ms. Craw demands that Hometown compensate these residents by retroactively abating rent in the amount of two-hundred dollars ($200) per month for each affected home site during the last forty-eight (48) months, the former figure representing an estimated one-third of the monthly lot rent at the Impacted Communities during the last four years and the latter figure representing the number of months captured within the statute of limitations for a Consumer Protection Act claim. With the total estimated number of home sites in both communities at one-thousand one-hundred fifty (1,150), Ms. Craw's collective demand is eleven-million, forty-thousand dollars ($11,040,000).

Under the provisions of General Laws Chapter 93A, Section 9, Hometown may make a written offer of settlement of this claim within thirty (30) days. If Hometown fails to make a good faith offer of settlement in response to this request, and Ms. Craw institutes legal action, a court may award to her and the putative class double or triple damages, attorney's fees and costs if the court finds in their favor.

August 21, 2018
Page 4

Thank you for your attention to this matter.

Sincerely,

Ethan Horowitz
Managing Director

CC:   Lisa C. Goodheart, Esq.
      Sugarman, Rogers, Barshak & Cohen, P.C.
      101 Merrimac Street
      Boston MA 02114



ETHAN HOROWITZ
MANAGING DIRECTOR
EHOROWITZ@NJC-MA.ORG

UNION CROSSING
50 ISLAND STREET, SUITE 203B
LAWRENCE, MA 01840
DIRECT DIAL: 978-888-0624
FAX: 978-323-0124

OFFICES:
LYNN
LAWRENCE
LOWELL

August 21, 2018

**<u>VIA FIRST CLASS & CERTIFIED MAIL</u>**
Hometown America Management, LLC
Attn: Legal Department
c/o Hometown America, LLC
150 North Wacker Drive, Ste. 2800
Chicago IL 60606

RE:    CONSUMER PROTECTION ACT DEMAND LETTER

UNFAIR AND DECEPTIVE BUSINESS PRACTICES AT THE OAK POINT AND
OAKHILL MANUFACTURED HOUSING COMMUNITIES

Sir or Madam:

This office represents Ms. Barbara Craw, a resident of the Oakhill manufactured housing community located in Attleboro, Massachusetts, a community which Hometown America Management, LLC ("Hometown") purports to manage. As such, Ms. Craw owns her manufactured home but rents from Oakhill the land on which her home sits, a leased premises that is commonly called a home site. As described more fully below, for at least the last four years Hometown has implemented an unlawful policy at Oakhill – as well as at the Oak Point manufactured housing community located in Middleborough, Massachusetts over which Hometown also purports to have managerial authority – that improperly burdens the communities' tenant-residents with maintaining, repairing and replacing the permanent elements at each resident's rented home site ("Policy"). By this letter, Ms. Craw – on behalf of herself and all other similarly situated current and former residents of Oakhill and Oak Point (together, the "Impacted Communities") – demands pursuant to Section 9 of General Laws Chapter 93A that Hometown: (1) immediately cease enforcement of the Policy; (2) immediately maintain, repair or replace all permanent elements located on the home sites at the Impacted Communities that are in need of such maintenance, repair or replacement; and (3) compensate the current and former residents of the Impacted Communities in the amount of eleven-million forty-thousand dollars ($11,040,000), an amount which represents a retroactive abatement of rent corresponding to critical leasehold services that were improperly withheld during the last four years. Ms. Craw supports this demand with the following summary of law and fact.

Hometown has represented itself to be a managing agent at the Impacted Communities and is thus an operator contemplated by the Manufactured Housing Community Regulations. *See* 940 Code of Mass. Regs. 10.01. As a manufactured housing community operator, Hometown is responsible for ensuring that business practices at the Impacted Communities conform to the

MAIN NUMBERS
888-657-2889
781-599-7730

Massachusetts
Legal
Assistance
Corporation

WWW.NORTHEASTJUSTICECENTER.ORG

August 21, 2018
Page 2

Manufactured Housing Community Law and its corresponding Regulations. *See* 940 Code of Mass. Regs. 10.02(2) ("It shall be an unfair or deceptive act or practice, in violation of M.G.L. c. 93A, § 2, for an operator … to impose any rule, or term or condition of occupancy, or to otherwise take action, that conflicts with any applicable provision of 940 CMR 10.00 …"). One such Regulation, Regulation 10.04(5)(f), expressly prohibits operators from requiring "any resident to make permanent improvements to the manufactured home site," 940 Code of Mass. Regs. 10.04(5)(f), improvements which the Office of the Attorney General – as the agency charged with administering the Regulations – has interpreted to include cement slabs, driveways and walkways, among other improvements. *See The Att'y Gen.'s Guide to Manuf. Hous. Cmty. Law*, p. 14, (Nov. 2017). The Office of the Attorney General has further interpreted this prohibition as conversely requiring operators to "maintain, repair, and replace" all such permanent improvements. *Id.* This interpretation is consistent with the consumer-protection purpose of the Manufactured Housing Community Law as well as decades of jurisprudence obligating landlords – including those who rent home sites for manufactured homes – to maintain leaseholds in a safe and functional condition. *See, generally, Danusis v. Longo*, 48 Mass. App. Ct. 254, 262 (1999); Mass. Gen. Laws c. 186 § 14; *Simon v. Solomon*, 385 Mass. 91, 100-04 (1982).

While its legal obligations concerning home site maintenance are undisputed, Hometown inexplicably and for at least the last four years has refused to comply with Regulation 10.04(5)(f), but rather has routinely saddled Ms. Craw as well as other residents of the Impacted Communities with the costs of maintaining, repairing and replacing the permanent improvements of their leased home sites.

Since moving into Oakhill in 2006, Ms. Craw has consistently complained to the community managers of Oakhill – Tammy Feeney and Josephine Santa Fe – that the driveway and cement improvements on her leased home site routinely flood, flooding which has resulted from the improper grading of those improvements, which has eroded some of the home site's cement improvements and which generally creates hazardous conditions on Ms. Craw's home site. In response to Ms. Craw's complaints, Oakhill management caused additional drains to be installed on the home site, a solution which neither addressed the underlying problem with the permanent improvements nor resolved the flooding. Additionally, Oakhill management has refused to repair the damaged cement. Further complaints by Ms. Craw have been met with noncommittal responses or silence.

While Ms. Craw did not understand why Hometown was refusing to comply with its obligation to maintain the permanent improvements on her home site, unfolding events at Oak Point have brought Hometown's unlawful Policy into clearer focus. As you are likely aware, in recent months numerous Oak Point residents – like Ms. Craw – have now come forward with complaints concerning the inundation of their home sites that resulted from the improper grading of cement slabs and other permanent leasehold improvements as well as Hometown's refusal to undertake the maintenance and repairs to those permanent improvements necessitated by such flooding. As you are also likely aware, many of these complaints had been raised consistently with Oak Point management but had remained unaddressed for years. At a public

August 21, 2018
Page 3

meeting of the Middleborough Board of Selectmen on July 23rd of this year, Hometown representative Kyle Howieson explained Hometown's failure to take responsibility for these permanent improvements and comply with Regulation 10.04(5)(f) by stating that "the Guide to Manufactured Housing document" – published by the Office of the Attorney General and interpreting the Manufactured Housing Community Regulations it is charged with administering – "isn't the law, that's someone's interpretation of the law." In this way and in no uncertain terms, Mr. Howieson signaled to the residents of the Impacted Communities that Hometown was not complying with Regulation 10.04(5)(f) and did not intend to comply.

While Hometown's recent acknowledgment concerning the proper interpretation of Regulation 10.04(5)(f) is commendable, this acknowledgement does nothing to compensate current and former residents of the Impacted Communities who paid substantial sums of rent for the services required by Regulation 10.04(5)(f) that they did not receive. Moreover, Hometown's inexplicable history of refusing to abide by Regulation 10.04(5)(f) calls into question whether Hometown will in fact withdraw the Policy and replace it with actual practices that robustly comply with its obligations respecting permanent home site improvements.

Accordingly, by this letter, Ms. Craw, on behalf of herself and the similarly situated current and former residents of the Impacted Communities, demands that Hometown immediately cease enforcement of the Policy and maintain, repair or replace all permanent elements located on the home sites at the Impacted Communities – including, but not limited to, cement slabs, walkways and driveways as well as the proper grading of the same – that are in need of such maintenance, repair or replacement.

Additionally, by this letter, Ms. Craw, on behalf of herself and the similarly situated current and former residents of the Impacted Communities, further demands that Hometown compensate all such residents who have lived in either community at any time during the last four years for Hometown's refusal to provide services necessary to maintain, repair or replace permanent improvements at those residents' leased home sites. Given that each resident household paid rent to Hometown for these services and such services were critically important to each resident's proper use of his or her leasehold, Ms. Craw demands that Hometown compensate these residents by retroactively abating rent in the amount of two-hundred dollars ($200) per month for each affected home site during the last forty-eight (48) months, the former figure representing an estimated one-third of the monthly lot rent at the Impacted Communities during the last four years and the latter figure representing the number of months captured within the statute of limitations for a Consumer Protection Act claim. With the total estimated number of home sites in both communities at one-thousand one-hundred fifty (1,150), Ms. Craw's collective demand is eleven-million, forty-thousand dollars ($11,040,000).

Under the provisions of General Laws Chapter 93A, Section 9, Hometown may make a written offer of settlement of this claim within thirty (30) days. If Hometown fails to make a good faith offer of settlement in response to this request, and Ms. Craw institutes legal action, a court may award to her and the putative class double or triple damages, attorney's fees and costs if the court finds in their favor.

August 21, 2018
Page 4


Thank you for your attention to this matter.


Sincerely,


Ethan Horowitz
Managing Director



CC:   Lisa C. Goodheart, Esq.
      Sugarman, Rogers, Barshak & Cohen, P.C.
      101 Merrimac Street
      Boston MA 02114


      Hometown America Management, LLC
      c/o CT Corporation System
      155 Federal Street, Ste. 700
      Boston MA 02110



ETHAN HOROWITZ
MANAGING DIRECTOR
EHOROWITZ@NJC-MA.ORG

UNION CROSSING
50 ISLAND STREET, SUITE 203B
LAWRENCE, MA 01840
DIRECT DIAL: 978-888-0624
FAX: 978-323-0124

OFFICES:
LYNN
LAWRENCE
LOWELL

August 21, 2018

**VIA FIRST CLASS & CERTIFIED MAIL**
Hometown Oakhill, LLC
Attn: Legal Department
c/o Hometown America, LLC
150 North Wacker Drive, Ste. 2800
Chicago IL 60606

RE:     CONSUMER PROTECTION ACT DEMAND LETTER

UNFAIR AND DECEPTIVE BUSINESS PRACTICES AT THE
OAKHILL MANUFACTURED HOUSING COMMUNITY

Sir or Madam:

This office represents Ms. Barbara Craw, a resident of the Oakhill manufactured housing community located in Attleboro, Massachusetts, a community to which Hometown Oakhill, LLC ("Hometown") holds title. As such, Ms. Craw owns her manufactured home but rents from Oakhill the land on which her home sits, a leased premises that is commonly called a home site. As described more fully below, for at least the last four years Hometown has implemented or permitted to be implemented an unlawful policy at Oakhill that improperly burdens the community's tenant-residents with maintaining, repairing and replacing the permanent elements at each resident's rented home site ("Policy"). By this letter, Ms. Craw – on behalf of herself and all other similarly situated current and former residents of Oakhill – demands pursuant to Section 9 of General Laws Chapter 93A that Hometown: (1) immediately cease enforcement of the Policy; (2) immediately maintain, repair or replace all permanent elements located on the home sites at Oakhill that are in need of such maintenance, repair or replacement; and (3) compensate the current and former residents of Oakhill in the amount of one-million six-hundred-eighty-thousand dollars ($1,680,000), an amount which represents a retroactive abatement of rent corresponding to critical leasehold services that were improperly withheld during the last four years. Ms. Craw supports this demand with the following summary of law and fact.

Hometown is the property owner of Oakhill and is thus an operator contemplated by the Manufactured Housing Community Regulations. *See* 940 Code of Mass. Regs. 10.01. As a manufactured housing community operator, Hometown is responsible for ensuring that business practices at Oakhill conform to the Manufactured Housing Community Law and its corresponding Regulations. *See* 940 Code of Mass. Regs. 10.02(2) ("It shall be an unfair or deceptive act or practice, in violation of M.G.L. c. 93A, § 2, for an operator … to impose any

MAIN NUMBERS
888-657-2889
781-599-7730

Massachusetts
Legal
Assistance
Corporation

WWW.NORTHEASTJUSTICECENTER.ORG

August 21, 2018
Page 2

rule, or term or condition of occupancy, or to otherwise take action, that conflicts with any applicable provision of 940 CMR 10.00 …"). One such Regulation, Regulation 10.04(5)(f), expressly prohibits operators from requiring "any resident to make permanent improvements to the manufactured home site," 940 Code of Mass. Regs. 10.04(5)(f), improvements which the Office of the Attorney General – as the agency charged with administering the Regulations – has interpreted to include cement slabs, driveways and walkways, among other improvements. *See The Att'y Gen.'s Guide to Manuf. Hous. Cmty. Law*, p. 14, (Nov. 2017). The Office of the Attorney General has further interpreted this prohibition as conversely requiring operators to "maintain, repair, and replace" all such permanent improvements. *Id.* This interpretation is consistent with the consumer-protection purpose of the Manufactured Housing Community Law as well as decades of jurisprudence obligating landlords – including those who rent home sites for manufactured homes – to maintain leaseholds in a safe and functional condition. *See, generally, Danusis v. Longo*, 48 Mass. App. Ct. 254, 262 (1999); Mass. Gen. Laws c. 186 § 14; *Simon v. Solomon*, 385 Mass. 91, 100-04 (1982).

While its legal obligations concerning home site maintenance are undisputed, Hometown inexplicably and for at least the last four years has refused to comply with Regulation 10.04(5)(f), but rather has routinely saddled Ms. Craw as well as other residents of Oakhill with the costs of maintaining, repairing and replacing the permanent improvements of their leased home sites.

Since moving into Oakhill in 2006, Ms. Craw has consistently complained to the community managers of Oakhill – Tammy Feeney and Josephine Santa Fe – that the driveway and cement improvements on her leased home site routinely flood, flooding which has resulted from the improper grading of those improvements, which has eroded some of the home site's cement improvements and which generally creates hazardous conditions on Ms. Craw's home site. In response to Ms. Craw's complaints, Oakhill management caused additional drains to be installed on the home site, a solution which neither addressed the underlying problem with the permanent improvements nor resolved the flooding. Additionally, Oakhill management has refused to repair the damaged cement. Further complaints by Ms. Craw have been met with noncommittal responses or silence. When Ms. Craw recently requested from Ms. Santa Fe a copy of the term lease that is made available to Oakhill residents, she found the following provision – excerpted below – which on its face violates Regulation 10.04(5)(f):

> *6. HOMESITE AND HOMESITE MAINTENANCE*
> *The physical improvements provided for the exclusive use of RESIDENT are the homesite referenced above and utility connections located on the homesite. Other improvements located on the homesite at the initiation of this Agreement such as concrete surfaces, if any, trees and other fixtures are to be maintained by RESIDENT during the period of RESIDENT's tenancy. …*

August 21, 2018
Page 3

While Hometown's recent acknowledgment concerning the proper interpretation of Regulation 10.04(5)(f) is commendable, this acknowledgement does nothing to compensate current and former residents of Oakhill who paid substantial sums of rent for the services required by Regulation 10.04(5)(f) that they did not receive. Moreover, Hometown's inexplicable history of refusing to abide by Regulation 10.04(5)(f) calls into question whether Hometown will in fact withdraw the Policy and replace it with actual practices that robustly comply with its obligations respecting permanent home site improvements.

Accordingly, by this letter, Ms. Craw, on behalf of herself and the similarly situated current and former residents of Oakhill, demands that Hometown immediately cease enforcement of the Policy and maintain, repair or replace all permanent elements located on the home sites at Oakhill – including, but not limited to, cement slabs, walkways and driveways as well as the proper grading of the same – that are in need of such maintenance, repair or replacement.

Additionally, by this letter, Ms. Craw, on behalf of herself and the similarly situated current and former residents of Oakhill, further demands that Hometown compensate all such residents who have lived in the community at any time during the last four years for Hometown's refusal to provide services necessary to maintain, repair or replace permanent improvements at those residents' leased home sites. Given that each resident household paid rent to Hometown for these services and such services were critically important to each resident's proper use of his or her leasehold, Ms. Craw demands that Hometown compensate these residents by retroactively abating rent in the amount of two-hundred dollars ($200) per month for each affected home site during the last forty-eight (48) months, the former figure representing an estimated one-third of the monthly lot rent at Oakhill during the last four years and the latter figure representing the number of months captured within the statute of limitations for a Consumer Protection Act claim. With the total estimated number of one-hundred seventy-five (175) home sites at Oakhill, Ms. Craw's collective demand is one-million six-hundred-eighty-thousand dollars ($1,680,000).

Under the provisions of General Laws Chapter 93A, Section 9, Hometown may make a written offer of settlement of this claim within thirty (30) days. If Hometown fails to make a good faith offer of settlement in response to this request, and Ms. Craw institutes legal action, a court may award to her and the putative class double or triple damages, attorney's fees and costs if the court finds in their favor.

Thank you for your attention to this matter.

Sincerely,

Ethan Horowitz

August 21, 2018
Page 4


Managing Director



CC:    Lisa C. Goodheart, Esq.
       Sugarman, Rogers, Barshak & Cohen, P.C.
       101 Merrimac Street
       Boston MA 02114


       Hometown Oakhill, LLC
       c/o CT Corporation System
       155 Federal Street, Ste. 700
       Boston MA 02110



ETHAN HOROWITZ
MANAGING DIRECTOR
EHOROWITZ@NJC-MA.ORG

UNION CROSSING
50 ISLAND STREET, SUITE 203B
LAWRENCE, MA 01840
DIRECT DIAL: 978-888-0624
FAX: 978-323-0124

OFFICES:
LYNN
LAWRENCE
LOWELL

August 21, 2018

**VIA FIRST CLASS & CERTIFIED MAIL**
Hometown Oak Point I, LLC
Attn: Legal Department
c/o Hometown America
150 North Wacker Drive, Ste. 2800
Chicago IL 60606

RE:    CONSUMER PROTECTION ACT DEMAND LETTER

UNFAIR AND DECEPTIVE BUSINESS PRACTICES AT THE
OAK POINT MANUFACTURED HOUSING COMMUNITY

Sir or Madam:

This office represents Ms. Barbara Craw, a resident of the Oakhill manufactured housing community located in Attleboro, Massachusetts, a community which is indirectly owned and operated by Hometown America, LLC. As such, Ms. Craw owns her manufactured home but rents from Oakhill the land on which her home sits, a leased premises that is commonly called a home site. As described more fully below, for at least the last four years Hometown America, LLC has implemented an unlawful policy at Oakhill – as well as at the Oak Point manufactured housing community located in Middleborough, Massachusetts which is also indirectly owned and operated by Hometown America, LLC – that improperly burdens the communities' tenant-residents with maintaining, repairing and replacing the permanent elements at each resident's rented home site ("Policy"). As a title-holder and lessor of Oak Point, Hometown Oak Point I, LLC ("Hometown") has permitted the Policy to be implemented at Oak Point or has otherwise assisted Hometown America, LLC with the Policy's implementation.

By this letter, Ms. Craw – on behalf of herself and all other similarly situated current and former residents of Oak Point – demands pursuant to Section 9 of General Laws Chapter 93A that Hometown: (1) immediately cease enforcement of the Policy; (2) immediately maintain, repair or replace all permanent elements located on the home sites at Oak Point that are in need of such maintenance, repair or replacement; and (3) compensate the current and former residents of Oak Point in the amount of nine-million three-hundred-sixty-thousand dollars ($9,360,000), an amount which represents a retroactive abatement of rent corresponding to critical leasehold services that were improperly withheld during the last four years. Ms. Craw supports this demand with the following summary of law and fact.

---

MAIN NUMBERS
888-657-2889
781-599-7730

Massachusetts
Legal
Assistance
Corporation

WWW.NORTHEASTJUSTICECENTER.ORG

August 21, 2018
Page 2

As a property owner and lessor of Oak Point, Hometown is an operator contemplated by the Manufactured Housing Community Regulations. *See* 940 Code of Mass. Regs. 10.01. As a manufactured housing community operator, Hometown is responsible for ensuring that business practices at Oak Point conform to the Manufactured Housing Community Law and its corresponding Regulations. *See* 940 Code of Mass. Regs. 10.02(2) ("It shall be an unfair or deceptive act or practice, in violation of M.G.L. c. 93A, § 2, for an operator … to impose any rule, or term or condition of occupancy, or to otherwise take action, that conflicts with any applicable provision of 940 CMR 10.00 …"). One such Regulation, Regulation 10.04(5)(f), expressly prohibits operators from requiring "any resident to make permanent improvements to the manufactured home site," 940 Code of Mass. Regs. 10.04(5)(f), improvements which the Office of the Attorney General – as the agency charged with administering the Regulations – has interpreted to include cement slabs, driveways and walkways, among other improvements. *See The Att'y Gen.'s Guide to Manuf. Hous. Cmty. Law*, p. 14, (Nov. 2017). The Office of the Attorney General has further interpreted this prohibition as conversely requiring operators to "maintain, repair, and replace" all such permanent improvements. *Id.* This interpretation is consistent with the consumer-protection purpose of the Manufactured Housing Community Law as well as decades of jurisprudence obligating landlords – including those who rent home sites for manufactured homes – to maintain leaseholds in a safe and functional condition. *See, generally, Danusis v. Longo*, 48 Mass. App. Ct. 254, 262 (1999); Mass. Gen. Laws c. 186 § 14; *Simon v. Solomon*, 385 Mass. 91, 100-04 (1982).

While its legal obligations concerning home site maintenance are undisputed, Hometown inexplicably and for at least the last four years has refused to comply with Regulation 10.04(5)(f), but rather – pursuant to the Policy – has routinely saddled the residents of Oak Point with the costs of maintaining, repairing and replacing the permanent improvements of their leased home sites, the same Policy that has subjected Ms. Craw to the same burden.

With respect to Ms. Craw, since moving into Oakhill in 2006, she has consistently complained to the community managers of Oakhill – Tammy Feeney and Josephine Santa Fe – that the driveway and cement improvements on her leased home site routinely flood, flooding which has resulted from the improper grading of those improvements, which has eroded some of the home site's cement improvements and which generally creates hazardous conditions on Ms. Craw's home site. In response to Ms. Craw's complaints, Oakhill management caused additional drains to be installed on the home site, a solution which neither addressed the underlying problem with the permanent improvements nor resolved the flooding. Additionally, Oakhill management has refused to repair the damaged cement. Further complaints by Ms. Craw have been met with noncommittal responses or silence.

While Ms. Craw did not understand why Oakhill was refusing to comply with its obligation to maintain the permanent improvements on her home site, unfolding events at Oak Point have brought the unlawful Policy into clearer focus. As you are likely aware, in recent months numerous Oak Point residents – like Ms. Craw – have now come forward with complaints concerning the inundation of their home sites that has resulted from the improper grading of cement slabs and other permanent leasehold improvements as well as Hometown's refusal to

August 21, 2018
Page 3

undertake the maintenance and repairs to those permanent improvements necessitated by such flooding. As you are also likely aware, many of these complaints had been raised consistently with Oak Point management but had remained unaddressed for years. At a public meeting of the Middleborough Board of Selectmen on July 23rd of this year, Hometown representative Kyle Howieson explained Hometown's failure to take responsibility for these permanent improvements and comply with Regulation 10.04(5)(f) by stating that "the Guide to Manufactured Housing document" – published by the Office of the Attorney General and interpreting the Manufactured Housing Community Regulations it is charged with administering – "isn't the law, that's someone's interpretation of the law." In this way and in no uncertain terms, Mr. Howieson signaled to the residents of Oak Point that Hometown was not complying with Regulation 10.04(5)(f) and did not intend to comply.

While Hometown's recent acknowledgment concerning the proper interpretation of Regulation 10.04(5)(f) is commendable, this acknowledgement does nothing to compensate current and former residents of Oak Point who paid substantial sums of rent for the services required by Regulation 10.04(5)(f) that they did not receive. Moreover, Hometown's inexplicable history of refusing to abide by Regulation 10.04(5)(f) calls into question whether Hometown will in fact withdraw the Policy and replace it with actual practices that robustly comply with its obligations respecting permanent home site improvements.

Accordingly, by this letter, Ms. Craw, on behalf of herself and the similarly situated current and former residents of Oak Point, demands that Hometown immediately cease enforcement of the Policy and maintain, repair or replace all permanent elements located on the home sites at Oak Point – including, but not limited to, cement slabs, walkways and driveways as well as the proper grading of the same – that are in need of such maintenance, repair or replacement.

Additionally, by this letter, Ms. Craw, on behalf of herself and the similarly situated current and former residents of Oak Point, further demands that Hometown compensate all such residents who have lived in the community at any time during the last four years for Hometown's refusal to provide services necessary to maintain, repair or replace permanent improvements at those residents' leased home sites. Given that each resident household paid rent to Hometown for these services and such services were critically important to each resident's proper use of his or her leasehold, Ms. Craw demands that Hometown compensate these residents by retroactively abating rent in the amount of two-hundred dollars ($200) per month for each affected home site during the last forty-eight (48) months, the former figure representing an estimated one-third of the monthly lot rent at Oak Point during the last four years and the latter figure representing the number of months captured within the statute of limitations for a Consumer Protection Act claim. With the total estimated number of home sites in the community at nine-hundred seventy-five (975), Ms. Craw's collective demand is nine-million three-hundred-sixty-thousand dollars ($9,360,000).

Under the provisions of General Laws Chapter 93A, Section 9, Hometown may make a written offer of settlement of this claim within thirty (30) days. If Hometown fails to make a good faith offer of settlement in response to this request, and Ms. Craw institutes legal action, a court may

August 21, 2018
Page 4

award to her and the putative class double or triple damages, attorney's fees and costs if the court finds in their favor.

Thank you for your attention to this matter.

Sincerely,

Ethan Horowitz
Managing Director

CC:    Lisa C. Goodheart, Esq.
       Sugarman, Rogers, Barshak & Cohen, P.C.
       101 Merrimac Street
       Boston MA 02114

       Hometown Oak Point I, LLC
       c/o CT Corporation System
       155 Federal Street, Ste. 700
       Boston MA 02110



ETHAN HOROWITZ
MANAGING DIRECTOR
EHOROWITZ@NJC-MA.ORG

UNION CROSSING
50 ISLAND STREET, SUITE 203B
LAWRENCE, MA 01840
DIRECT DIAL: 978-888-0624
FAX: 978-323-0124

OFFICES:
LYNN
LAWRENCE
LOWELL

August 21, 2018

**VIA FIRST CLASS & CERTIFIED MAIL**
Hometown Oak Point II, LLC
Attn: Legal Department
150 North Wacker Drive, Ste. 2800
Chicago IL 60606

RE:    CONSUMER PROTECTION ACT DEMAND LETTER

UNFAIR AND DECEPTIVE BUSINESS PRACTICES AT THE
OAK POINT MANUFACTURED HOUSING COMMUNITY

Sir or Madam:

This office represents Ms. Barbara Craw, a resident of the Oakhill manufactured housing community located in Attleboro, Massachusetts, a community which is indirectly owned and operated by Hometown America, LLC.  As such, Ms. Craw owns her manufactured home but rents from Oakhill the land on which her home sits, a leased premises that is commonly called a home site.  As described more fully below, for at least the last four years Hometown America, LLC has implemented an unlawful policy at Oakhill – as well as at the Oak Point manufactured housing community located in Middleborough, Massachusetts which is also indirectly owned and operated by Hometown America, LLC – that improperly burdens the communities' tenant-residents with maintaining, repairing and replacing the permanent elements at each resident's rented home site ("Policy").  As a title-holder and lessor of Oak Point, Hometown Oak Point II, LLC ("Hometown") has permitted the Policy to be implemented at Oak Point or has otherwise assisted Hometown America, LLC with the Policy's implementation.

By this letter, Ms. Craw – on behalf of herself and all other similarly situated current and former residents of Oak Point – demands pursuant to Section 9 of General Laws Chapter 93A that Hometown: (1) immediately cease enforcement of the Policy; (2) immediately maintain, repair or replace all permanent elements located on the home sites at Oak Point that are in need of such maintenance, repair or replacement; and (3) compensate the current and former residents of Oak Point in the amount of nine-million three-hundred-sixty-thousand dollars ($9,360,000), an amount which represents a retroactive abatement of rent corresponding to critical leasehold services that were improperly withheld during the last four years.  Ms. Craw supports this demand with the following summary of law and fact.

As a property owner and lessor of Oak Point, Hometown is an operator contemplated by the Manufactured Housing Community Regulations.  *See* 940 Code of Mass. Regs. 10.01.  As a

MAIN NUMBERS
888-657-2889
781-599-7730

Massachusetts
Legal
Assistance
Corporation

WWW.NORTHEASTJUSTICECENTER.ORG

August 21, 2018
Page 2

manufactured housing community operator, Hometown is responsible for ensuring that business practices at Oak Point conform to the Manufactured Housing Community Law and its corresponding Regulations. *See* 940 Code of Mass. Regs. 10.02(2) ("It shall be an unfair or deceptive act or practice, in violation of M.G.L. c. 93A, § 2, for an operator … to impose any rule, or term or condition of occupancy, or to otherwise take action, that conflicts with any applicable provision of 940 CMR 10.00 …"). One such Regulation, Regulation 10.04(5)(f), expressly prohibits operators from requiring "any resident to make permanent improvements to the manufactured home site," 940 Code of Mass. Regs. 10.04(5)(f), improvements which the Office of the Attorney General – as the agency charged with administering the Regulations – has interpreted to include cement slabs, driveways and walkways, among other improvements. *See The Att'y Gen.'s Guide to Manuf. Hous. Cmty. Law*, p. 14, (Nov. 2017). The Office of the Attorney General has further interpreted this prohibition as conversely requiring operators to "maintain, repair, and replace" all such permanent improvements. *Id.* This interpretation is consistent with the consumer-protection purpose of the Manufactured Housing Community Law as well as decades of jurisprudence obligating landlords – including those who rent home sites for manufactured homes – to maintain leaseholds in a safe and functional condition. *See, generally, Damusis v. Longo*, 48 Mass. App. Ct. 254, 262 (1999); Mass. Gen. Laws c. 186 § 14; *Simon v. Solomon*, 385 Mass. 91, 100-04 (1982).

While its legal obligations concerning home site maintenance are undisputed, Hometown inexplicably and for at least the last four years has refused to comply with Regulation 10.04(5)(f), but rather – pursuant to the Policy – has routinely saddled the residents of Oak Point with the costs of maintaining, repairing and replacing the permanent improvements of their leased home sites, the same Policy that has subjected Ms. Craw to the same burden.

With respect to Ms. Craw, since moving into Oakhill in 2006, she has consistently complained to the community managers of Oakhill – Tammy Feeney and Josephine Santa Fe – that the driveway and cement improvements on her leased home site routinely flood, flooding which has resulted from the improper grading of those improvements, which has eroded some of the home site's cement improvements and which generally creates hazardous conditions on Ms. Craw's home site. In response to Ms. Craw's complaints, Oakhill management caused additional drains to be installed on the home site, a solution which neither addressed the underlying problem with the permanent improvements nor resolved the flooding. Additionally, Oakhill management has refused to repair the damaged cement. Further complaints by Ms. Craw have been met with noncommittal responses or silence.

While Ms. Craw did not understand why Oakhill was refusing to comply with its obligation to maintain the permanent improvements on her home site, unfolding events at Oak Point have brought the unlawful Policy into clearer focus. As you are likely aware, in recent months numerous Oak Point residents – like Ms. Craw – have now come forward with complaints concerning the inundation of their home sites that has resulted from the improper grading of cement slabs and other permanent leasehold improvements as well as Hometown's refusal to undertake the maintenance and repairs to those permanent improvements necessitated by such flooding. As you are also likely aware, many of these complaints had been raised consistently

August 21, 2018
Page 3

with Oak Point management but had remained unaddressed for years. At a public meeting of the Middleborough Board of Selectmen on July 23rd of this year, Hometown representative Kyle Howieson explained Hometown's failure to take responsibility for these permanent improvements and comply with Regulation 10.04(5)(f) by stating that "the Guide to Manufactured Housing document" – published by the Office of the Attorney General and interpreting the Manufactured Housing Community Regulations it is charged with administering – "isn't the law, that's someone's interpretation of the law." In this way and in no uncertain terms, Mr. Howieson signaled to the residents of Oak Point that Hometown was not complying with Regulation 10.04(5)(f) and did not intend to comply.

While Hometown's recent acknowledgment concerning the proper interpretation of Regulation 10.04(5)(f) is commendable, this acknowledgement does nothing to compensate current and former residents of Oak Point who paid substantial sums of rent for the services required by Regulation 10.04(5)(f) that they did not receive. Moreover, Hometown's inexplicable history of refusing to abide by Regulation 10.04(5)(f) calls into question whether Hometown will in fact withdraw the Policy and replace it with actual practices that robustly comply with its obligations respecting permanent home site improvements.

Accordingly, by this letter, Ms. Craw, on behalf of herself and the similarly situated current and former residents of Oak Point, demands that Hometown immediately cease enforcement of the Policy and maintain, repair or replace all permanent elements located on the home sites at Oak Point – including, but not limited to, cement slabs, walkways and driveways as well as the proper grading of the same – that are in need of such maintenance, repair or replacement.

Additionally, by this letter, Ms. Craw, on behalf of herself and the similarly situated current and former residents of Oak Point, further demands that Hometown compensate all such residents who have lived in the community at any time during the last four years for Hometown's refusal to provide services necessary to maintain, repair or replace permanent improvements at those residents' leased home sites. Given that each resident household paid rent to Hometown for these services and such services were critically important to each resident's proper use of his or her leasehold, Ms. Craw demands that Hometown compensate these residents by retroactively abating rent in the amount of two-hundred dollars ($200) per month for each affected home site during the last forty-eight (48) months, the former figure representing an estimated one-third of the monthly lot rent at Oak Point during the last four years and the latter figure representing the number of months captured within the statute of limitations for a Consumer Protection Act claim. With the total estimated number of home sites in the community at nine-hundred seventy-five (975), Ms. Craw's collective demand is nine-million three-hundred-sixty-thousand dollars ($9,360,000).

Under the provisions of General Laws Chapter 93A, Section 9, Hometown may make a written offer of settlement of this claim within thirty (30) days. If Hometown fails to make a good faith offer of settlement in response to this request, and Ms. Craw institutes legal action, a court may award to her and the putative class double or triple damages, attorney's fees and costs if the court finds in their favor.

August 21, 2018
Page 4


Thank you for your attention to this matter.


Sincerely,

Ethan Horowitz
Managing Director



CC:   Lisa C. Goodheart, Esq.
      Sugarman, Rogers, Barshak & Cohen, P.C.
      101 Merrimac Street
      Boston MA 02114


      Hometown Oak Point II, LLC
      c/o CT Corporation System
      155 Federal Street, Ste. 700
      Boston MA 02110

# Exhibit 2

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **BARBARA CRAW,**<br>**on behalf of herself and others**<br>**similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | Case No. _____ |
| **v.** | ) ) | |
| **HOMETOWN AMERICA, LLC;**<br>**HOMETOWN AMERICA**<br>**MANAGEMENT, LLC; HOMETOWN**<br>**OAKHILL, LLC; HOMETOWN**<br>**OAKPOINT I, LLC; and HOMETOWN**<br>**OAKPOINT II, LLC** | ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## DECLARATION OF STEPHEN BRAUN IN SUPPORT OF NOTICE OF REMOVAL

**I, Stephen Braun, declare:**

1. My name is Stephen Braun. I am the Chief Operating Officer for Hometown America Management Corporation. I am over 21 years old and have personal knowledge of the information in this Declaration in my capacity as Chief Operating Officer for Hometown America Management Corporation, based on my review of company records, and my investigation into the matters addressed herein. If called to testify, I would and could competently testify to the facts in this Declaration.

2. Hometown America, LLC is a limited liability company organized under the laws of the State of Delaware. Hometown America, LLC directs, controls, and coordinates its activities from its office in Chicago, Illinois.

3. Hometown America Management, LLC is a limited liability company organized under the laws of the State of Delaware. Hometown America Management, LLC directs, controls, and coordinates its activities from its office in Chicago, Illinois.

4.   Hometown Oakhill, LLC is a limited liability company organized under the laws of the State of Delaware. Hometown Oakhill, LLC directs, controls, and coordinates its activities from its office in Chicago, Illinois.

5.   Hometown Oak Point I, LLC is a limited liability company organized under the laws of the State of Delaware. Hometown Oak Point I, LLC directs, controls, and coordinates its activities from its office in Chicago, Illinois.

6.   Hometown Oak Point II, LLC is a limited liability company organized under the laws of the State of Delaware. Hometown Oak Point II, LLC directs, controls, and coordinates its activities from its office in Chicago, Illinois.


I declare under penalty of perjury under the laws of the Commonwealth of Massachusetts and the laws of the United States of America that the foregoing is true and correct

Dated: October 15, 2018

By: _____
        Stephen Braun

JS 44  (Rev. 08/18)

Case 1:18-cv-12149  Document 1-3  Filed 10/15/18  Page 1 of 2

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Barbara Craw | Hometown America, LLC, et al. |

**(b)** County of Residence of First Listed Plaintiff   Plymouth
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ethan R. Horowitz, Northeast Justice Center, Union Crossing, 50 Island Street, Suite 203B, Lawrence, MA 01840 (978) 888-0624

Attorneys *(If Known)*
Lisa C. Goodheart / Tristan P. Colangelo
Sugarman, Rogers, Barshak & Cohen, P.C., 101 Merrimac Street, Suite 900, Boston, MA 02114 (617) 227-3030

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                     Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☒ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☐ 1  Original Proceeding
- ☒ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:  Plaintiff's state court Complaint, a purported class action, alleges consumer protection violations related to leased real estate.

**VII. REQUESTED IN COMPLAINT:**
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ 11,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
10/15/2018

SIGNATURE OF ATTORNEY OF RECORD
/s/ Tristan P. Colangelo

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

JS 44 Reverse (Rev. 08/18)       Case 1:18-cv-12149   Document 1-3   Filed 10/15/18   Page 2 of 2

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a)  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b)  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c)  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. **(See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

III.  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V.  **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI.  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII.  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only) Barbara Craw v. Hometown America, LLC, et al.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local rule 40.1(a)(1)).

   [ ]   I.   410, 441, 470, 535, 830*, 835*, 891, 893, 895, R.23, REGARDLESS OF NATURE OF SUIT.

   [✓]   II.   110, 130, 140, 160, 190, 196, 230, 240, 290,320,362, 370, 371, 380, 430, 440, 442, 443, 445, 446, 448, 710, 720, 740, 790, 820*, 840*, 850, 870, 871.

   [ ]   III.   120, 150, 151, 152, 153, 195, 210, 220, 245, 310, 315, 330, 340, 345, 350, 355, 360, 365, 367, 368, 375, 376, 385, 400, 422, 423, 450, 460, 462, 463, 465, 485, 490, 510, 530, 540, 550, 555, 625, 690, 751, 791, 861-865, 890, 896, 899, 950.

   *Also complete AO 120 or AO 121. for patent, trademark or copyright cases.

3. Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   N/A

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES [ ]   NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

   YES [ ]   NO [✓]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES [ ]   NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES [ ]   NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the United States and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES [✓]   NO [ ]

   A.   If yes, in which division do all of the non-governmental parties reside?

   Eastern Division [✓]      Central Division [ ]      Western Division [ ]

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

   Eastern Division [ ]      Central Division [ ]      Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)

   YES [✓]   NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  /s/ Tristan P. Colangelo

ADDRESS  Sugarman, Rogers, Barshak & Cohen, P.C., 101 Merrimac Street, Suite 900, Boston, MA 02114

TELEPHONE NO.  (617) 227-3030

(CategoryForm9-2018.wpd )

<u>Barbara Craw v. Hometown America, LLC, et al.</u>

<u>Category Form – Page 2</u>

8.    Motion pending in the state court:    Plaintiff's Motion for Class Certification





COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

OCT 17 2018

Clerk of Court

TRISTAN P. COLANGELO
COLANGELO@SUGARMANROGERS.COM

**Sugarman Rogers**

Sugarman, Rogers, Barshak & Cohen, P.C.

October 15, 2018

Civil Clerk's Office
Plymouth County Superior Court
52 Obery Street
Plymouth, MA 02360

Re:  *Barbara Craw, et al. v. Hometown America, LLC, et al.*
     Civil Action No.: 1883CV01017

Dear Sir/Madam:

Enclosed for docketing and filing in the above-entitled matter, please find a Notice of Filing of Notice of Removal.

Very truly yours,

Tristan P. Colangelo

TPC/rmo
Enclosure

cc:    w/ copy of enclosure

       Ethan Horowitz, Esquire
       Lisa C. Goodheart, Esquire

4818-6942-1176, v. 1