UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| BARBARA CRAW, on behalf of herself and others similarly situated, | : | |
| | : | Civil Action No. 1:18-cv-12149-LTS |
| Plaintiff, | : | |
| v. | : | |
| Hometown America, LLC, et al., | : | |
| Defendants. | | |

- - - - - - - - - - - - - - - - - - - - x

BEFORE THE HONORABLE LEO T. SOROKIN, DISTRICT JUDGE

CASE MANAGEMENT CONFERENCE

Friday, April 19, 2019
11:03 a.m.

John J. Moakley United States Courthouse
Courtroom No. 13
One Courthouse Way
Boston, Massachusetts

Rachel M. Lopez, CRR
Official Court Reporter
raeufp@gmail.com

**A P P E A R A N C E S**

On behalf of the Plaintiffs:

**ETHAN R. HOROWITZ**
NORTHEAST JUSTICE CENTER
50 Island Street
Ste. 203B
Lawrence, MA 01840
781-599-7730
Email: Ehorowitz@njc-ma.org

On behalf of the Defendant:

**LISA C. GOODHEART AND TRISTAN P. COLANGELO**
SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
101 Merrimac Street
Boston, MA 02114-4737
617-227-3030
Fax: 617-523-4001
Email: goodheart@srbc.com
Email: colangelo@srbc.com

**W. SCOTT SIMPSON (appearing telephonically)**
SIMPSON, MCMAHAN, GLICK & BUFORD, PLLC
2700 Highway 280, Suite 203W
Birmingham, AL 35203
205-876-1600
Email: wssimpson@smgblawyers.com

**JAMES C. LESTER (appearing telephonically)**
MAYNARD COOPER & GALE
1901 Sixth Avenue North, Suite 2400
Birmingham, AL 35203
205-254-1225
Email: jlester@maynardcooper.com

**P R O C E E D I N G S**

(In open court.)

THE DEPUTY CLERK: The United States District Court for the District of Massachusetts is now in session, the Honorable Leo T. Sorokin presiding.

Today is April 19th, the case of Craw vs. Hometown America, Civil Action 18-12149 will now appear before this Court.

Counsel, please identify themselves for the record.

THE COURT: You may be seated.

MR. HOROWITZ: Good morning, Your Honor, Ethan Horowitz on behalf of the plaintiffs.

THE COURT: Good morning.

MS. GOODHEART: Good morning, Your Honor. It's Lisa Goodheart. And with me is Tristan Colangelo for the defendants. And we also have our co-counsel by telephone from Alabama.

THE COURT: On the phone, who do we have?

Good morning, by the way.

Who's on the phone?

MR. SIMPSON: Good morning. This is Scott Simpson, one of the counsel for the defendants.

THE COURT: Okay. Morning, Mr. Simpson.

MR. SIMPSON: Good morning, sir.

THE COURT: All right. Anyone else on the phone,

or at the moment is that it?

MR. LESTER: And Jay Lester, also counsel for defendants.

THE COURT: All right. Good morning, Mr. Lester.

MR. LESTER: Good morning, Your Honor.

THE COURT: So I read the different submissions. You both suggested that this might be useful, so that's why I scheduled it. So I'm happy to hear you on anything that you want to say at first.

MR. HOROWITZ: Of course, Your Honor, if I may. I guess I would start with debunking this idea that somehow the parties have already reached agreement regarding discovery. I know that was mentioned in the defendant's response papers.

Plaintiff's position all along has been that little to no discovery is needed with respect to the key class certification and liability issues at the heart of this litigation. We understand that defendants don't share that position, but that's been our position. And, you know, anything that we've offered, apart from that, has been compromised, but there certainly has been no agreement regarding discovery, such that when the Court saw fit to issue a discovery order going out into much of the rest of 2019, plaintiffs wanted to take the opportunity to provide a more thoughtful and deliberate approach to discovery. And so that's really what we've done here in our most recent

submission.

And the distinctions between what plaintiffs have offered and what defendants have offered are really twofold. The first regarding class certification discovery and the second regarding damages discovery. Plaintiffs are submitting that class certification discovery is necessary to conduct right away and that damage discovery is not. And if it pleases the Court, I'd like to go into the reasons why.

THE COURT: So one difference between the two of you is they say do the individual claims first, summary judgment in the individual claims and then later do class certification, and you're saying do class certification discovery now, and then at the end of that, do summary judgment and class certification together. So one difference is class now or later discovery.

MR. HOROWITZ: Correct.

THE COURT: And the second is, with damage discovery, you say what?

MR. HOROWITZ: So the way that I've always envisioned this case, Your Honor, is to deal with liability first, class certification second, because class certification is naturally attendant upon liability. Right? If you have a theory of liability that applies to the entire class, then you certify the class, and if you don't, then you don't. And then once liability and class certification are

established, only then do you reach the question of damages, because for the reasons that I'll describe in a minute.

Damages are really secondary issues that will be important, but only if the first two issues are decided in plaintiff's favor. So I'm happy to address class certification, I'm happy to address damages, whichever the Court would like to hear first.

THE COURT: Why don't you just briefly address both?

MR. HOROWITZ: Okay. So with respect to class certification, Your Honor, what plaintiffs have proposed here is effectively a compromised position. Plaintiffs do not believe that any class certification discovery is necessary to be had by defendants. Typically defendants, it's plaintiffs and not defendants who are asking for class certification discovery. We believe that everything that defendants need to oppose our class certification motion is in their possession.

However, in an attempt to reach a compromise, plaintiffs have proposed approximately five months of class certification discovery. This is roughly half of what defendants themselves have proposed in November, in their joint status report, docket 31. They wanted 300 days, about ten months. I'm offering about five months. But this is really an attempt to compromise, insofar as defendants

believe they need 300 days, plaintiffs believe they need zero days, and this is an attempt to really just put class certification back on the map.

The alternative that the defendants propose, Your Honor, is simply to allow class certification to go off into oblivion. That isn't what plaintiffs had intended. I don't think that's what the Court had envisioned in it's April 5th order when it invited plaintiffs to reactivate their class certification motion at any time. So instead of simply reactivating our class certification motion, we're trying to come up with a deliberate and thoughtful way to proceed with class certification in a compromised manner. Five months seems an adequate compromise to plaintiffs. If defendants really need more, that's fine. But this notion that we're simply going to allow class certification to be postponed indefinitely really runs afoul of Rule 23, which counsels the Court to resolve class certification motions as soon as practicable.

As soon as practicable could be a year after filing, but it certainly isn't never. And the reason for that is simple. The parties need to figure out whose claims they're adjudicating. And so plaintiffs, following Rule 23, filed an early and comprehensive class certification motion. The defendants asked for time and -- to respond and time for discovery and we're simply trying to put class certification

back on the map and see no real impediment to doing that.

Again, as a compromise, we start with plaintiff's early motion --

THE COURT: Your thought is you're going to move for class certification on May -- I'm sorry, strike that.

Is your thought that you're going to move for summary judgment and liability on May 6th?

MR. HOROWITZ: That's right, Your Honor.

THE COURT: All right. So then that's the step one and your view is you make the motion for summary judgment. You anticipate -- I assume you anticipate prevailing on that, or you wouldn't be filing it. And then five months later, or what have you, after the class discovery, then you move for class certification and theory on what you've already won on the issues you want to --

MR. HOROWITZ: Right. And candidly, Your Honor, we don't expect taking much in the way of class certification discovery. We believe on the motion we filed in November, it was fulsome, but this is simply to respond to defendants' concerns that they need class certification discovery, which plaintiffs assert still is not well founded. But, again, we're just trying to be reasonable and compromise here.

And then once class certification is determined, then we can figure out damages, discovery. But before we even get to damages, the one thing I would like to raise is

with respect to briefing. Defendants raised in their latest paper this idea that we need additional briefing regarding some unresolved class certification issues, particularly the Rules Enabling Act issue, with respect to Chapter 93A, Section 9, sub 2, and whether that applies in federal court. And my response to that, Your Honor, is I would welcome the opportunity to brief that issue. It's an important issue. Whether the Court would put the brakes on class certification discovery to brief that issue, I'm not sure that makes a whole lot of sense, but it's an important issue, it should be resolved by the Court. I agree with defense counsel there. The notion that --

THE COURT: What happens to class certification if they win that issue?

MR. HOROWITZ: Nothing, Your Honor. We simply have to prove 23(b)(3), and 23(b)(2) to meet the criteria for those two rules. And candidly, Your Honor, our position is that Rule 23(b)(3) and 93A share four out of the six requirements of Rule 23(b)(3). So we're not talking about a widely disparate net of discovery. I mean, I know defense will likely argue that, but I don't think that the standards are that different. Otherwise, I wouldn't be arguing that 93A applies. And again, we can get into that in more detail at the briefing for the Rules Enabling Act.

But, again, I don't think it's a reason to put the

brakes on class certification discovery, as long as we resolve it in a relatively prompt manner. And I would suggest if plaintiffs -- excuse me -- defendants wish to --

THE COURT: You think it needs to be -- if I adopt your schedule, do you think it needs to be resolved before the motions for class certification are filed?

MR. HOROWITZ: I mean, I think they possibly could be resolved in tandem with the class certification motions. I think possibly defendants could oppose class certification. You know, they have 20 pages and they would address 23(b)(3), 23(b)(2), and Chapter 93A. So that's one way to do it.

Another way to do it would be to invite the defendants to file a motion to strike and we could just brief the 93A Section 9, sub 2 issue. It really doesn't matter to plaintiffs, Your Honor, how we address it. We just don't want this briefing to be a reason to hold up the show and --

I'm sorry, Your Honor.

THE COURT: No, go ahead.

MR. HOROWITZ: And so with respect to the second issue defendants wish to brief prior to engaging in class certification discovery, this notion that somehow a hybrid Rule 23(b)(3)/23(b)(2) class is controversial, I don't see it. I think they had their crack at that in their motion to dismiss. I think all the treatises support this notion that you can have a hybrid class as long as you provide procedural

protections to the class members that are adequate, and we've proposed that, but we're happy to brief that issue, too. Again, we just don't want those issues to hold up the show.

If defendants want to brief it now, I think they should be required to file a prompt motion to strike, perhaps, and we could get that all briefed out ASAP.

THE COURT: Is your motion for summary judgment on liability just with respect to the two plaintiffs?

MR. HOROWITZ: It would have to be, Your Honor, until the certification motion is decided. I don't think we have a choice in that.

THE COURT: All right.

MR. HOROWITZ: So then -- again, Your Honor, the class certification we submit should move forward promptly, give the defendants the discovery that they need, so hopefully we can resolve class certification, at the latest, by the end of the year. The reason that -- and if we're done with class certification, Your Honor, I'm happy to move on to damages. The reason that plaintiffs have envisioned moving damages to the end of this case is -- really the reasons are twofold.

First, I think if you actually look at the causes of action pleaded by the plaintiffs, damages are really extraneous. All three causes of action pleaded by plaintiffs presume damages, if the other elements are met. I think

there's a lot of confusion on defense counsel side --

THE COURT: What do you mean?

MR. HOROWITZ: -- conflating injury with damages. Injury is the harm, we need to prove the harm. Damages are a quantification of the harm, right? So for example, if we prove all the elements of breach of contract, the plaintiffs are entitled to nominal damages, that's the law of the Commonwealth. That's one dollar. That's been the law for many decades. If we prove the elements of Consumer Protection Act Claim, and prove the injury, the damages are presumed at $25.

And you know, obviously, we can prove more, but it's not essential to proving the elements of our claim. Similarly, Chapter 186, Section 14, if we prove the elements of the claim, damages are presumed --

THE COURT: So what are the injuries and damages, though, that you're going to be proving with the individual people and with the class?

MR. HOROWITZ: I think the injury is quite simple. The plaintiffs paid a rent for services they were supposed to receive. They didn't receive the services and so some of that rent money ought to go back. And so at the very least, they're entitled to nominal or statutory damages. And then at some point in the future of the case, we would like the opportunity to prove rent abatement damages, which leads to

my second point is rent abatement damages, that will require a very complex probably expert analysis of the finances of the park, the money going in, the money coming out, the money being spent on services by the park and so an expert would be needed to determine how much of a resident's rent check should have been applied to the services that weren't provided so that that portion can be returned back to the resident.

It's a very common analysis done by rent control boards. I'm afraid we would need to hire an economics expert to do that. And candidly, Your Honor, I don't see it as feasible to hire an expensive expert to resolve damages questions with respect to two individual plaintiffs. I think I would need to talk long and hard with my clients about that and I don't think that would happen.

I think, really, in order to be true to the policy behind a Rule 23(b)(3) class action, which is to allow individual claimants with relatively small claims to aggregate their claims so their rights can be vindicated, I think we would need to allow the class to be certified, if it is to be certified, and then proceed to damages. So that the power of the class, if a class action is warranted, which we believe it is, can command an expert and prove a class-wide damages, in terms of rent abatement for the entire class.

So if plaintiffs are required to prove damages now,

you know, candidly, I think we'd be stuck with statutory damages or some small amount of damage that could be proven and forego rent abatement, simply because I think it would be too expensive of an endeavor to handle it individually.

THE COURT: And how much of this turns on differences between what happened on the individual plots of land?

MR. HOROWITZ: Nothing. Your Honor, our theory of class-wide liability and class-wide damages turns on the simple fact that residents paid a rent check each month, $600, $700, the amount might be different. But a portion of that rent check, the same proportion, according to the analysis we'd like to undertake, should have been allocated to the provision of these services that weren't provided. Right? And so it's going to be simple math at that point. You have a resident's rent check over a four- or six-year period.

THE COURT: Say the duty -- no, I understand that math part. But suppose the duty is, for example, to maintain certain things in a -- compliance with the sanitary code, which sets a certain standard, right? So it's the duty and the responsibility of the landlord to do that. But the injury -- would the injury arise not only from the failure -- the injury arises when there's a -- when it falls out of compliance -- when the property falls out of compliance with

the sanitary code, not when the landlord fails to spend any money to keep it in compliance.

MR. HOROWITZ: So, I think Your Honor misapprehends the nature of our claims, the nature of our class claims isn't that any particular condition on a home site ran -- was poor. It was more in the line of a contract claim that plaintiffs -- plaintiff class members are tenants. They had agreements with the landlord to pay a rent, in exchange for services. They were deprived the benefit of their bargain and so some of that money needs to come back. If there were actual flooding or damages or injury --

THE COURT: They had a contract to provide maintenance services.

MR. HOROWITZ: Yes. That 93A, sounding in contract, or the actual contract itself, the actual oral or written lease agreement, had the required term that these services must be provided. That's what they were paying rent for, same as if the landlord had agreed to cut the grass and five -- they had a value of five dollars a month.

THE COURT: But if the grass didn't grow, then what happens? That's like my backyard.

MR. HOROWITZ: If the grass doesn't --

THE COURT: If I were renting my house, the grass doesn't grow, and part of my -- the landlord undertook the duty to mow the backyard and -- but the grass -- no grass

grows in my backyard. They never came to mow it, they never even came to look.

MR. HOROWITZ: So, Your Honor, I would say if they never came to look, I would say that's an unfair and deceptive business practice. They took your money without even trying to provide the services and so I think they would have to give that money back, regardless of whether the service needed to have been provided or not, and that's really the crux of this claim here.

THE COURT: What if they looked and it turned out that it didn't need to be mowed.

MR. HOROWITZ: That's a different story. I think that would be a potential detriment to class certification, if no services -- if defendants are able to prove that the service just need not have been provided, I think that could be a problem for plaintiff's claims. But I think what's going to be established here, Your Honor, is that defendant's policy was to refuse to provide these services, right? And that in and of itself is unfair and deceptive practice that deprived each resident tenant of the benefit of their bargain, whether that service should have been provided or not --

At the very at least, Your Honor, let's put it this way. Part of what you paid for, this fella to mow your grass, was for him to inspect your grass, and he certainly

didn't do that. If he didn't inspect that grass and I assert that the defendant didn't inspect any of these home sites the way that they should have, that's a service that was withheld. And so again, that will all turn on damages.

The Court, hopefully, will find defendants liable for an unfair and deceptive business practice for not providing these services as a matter of policy across the entire park. And if that happens, the question is what should they have done and what's the value of that service, how much rent should go back to the residents, and whether that ends up being the Court determining that the defendant should have at least inspected the properties or should have cleaned the foundation slabs, or what have you, that's all going to be a damages calculation.

Because the inherent 93A violation is the fact that they adopted and implemented the policy. Not just adopted, but implemented a policy whereby they eschewed responsibility for something they were supposed to have done. And in the process, convinced all these resident tenants that the resident tenants were responsible.

So that's our theory of the case and really is why we think the question of damages should come -- should come later, because once we figure out the precise scope of the defendant's duty -- and I believe what we're most of the way there, thanks to the Court's Rule 12 order, and if we figure

out how and if that applies to the entire class. And then we figure out from there how to calculate the damages, what is the service that should have been provided that wasn't, class-wide, and what is the value of that service, with respect to each resident's rent check as a proportion. I don't think an individual analysis will be required but, again we can deal with all of that at class certification, after the class certification discovery defendants have asked for.

THE COURT: Okay.

MS. GOODHEART: Thank you --

MR. HOROWITZ: Thank you, Your Honor. I think that's it.

MS. GOODHEART: Thank you, Your Honor, and if I may just ask at the outset, since I have co-counsel on the phone and they can't pass me a note or signal to me.

THE COURT: Sure, if they have something they want to say, that's totally fine.

MS. GOODHEART: Thank you. Let me start by confirming what the defendants are looking for and then tell me why you think it makes sense, and then I'll respond to the points that Mr. Horowitz made.

The defendants want an efficient opportunity to conduct discovery of all aspects of the two named individuals' claims. The claims that are currently at issue

pertain to two home sites. And we need to explore not only the very truncated, somewhat abstract and hypothetical concept of liability, as the plaintiffs want to frame it, but we also need to, to respond to that kind of summary judgment, have a fair opportunity to do discovery and get at injury in fact, causation, and damages.

And if we take your lawn, the example of your lawn, if there was a duty to mow the grass, but the grass didn't grow, and there was a duty to inspect the lawn to see if the grass was growing and the inspection wasn't done, but if the inspection had been done, it would have seen no grass growing and no need for any action, we do not believe there can be liability. And so what -- part of what we want to explore is what has actually happened at these two home sites. What is the condition of the site, what has been the condition, what communications have there been? What things have the plaintiffs themselves done, or not done, that may bear on the defendant's alleged liability. For example, there are --

THE COURT: Right. But he's not, today, arguing that you don't have an opportunity to do that. Because he's -- all he's done is really say, heads up, Judge. In case it wasn't perfectly obvious to all of us in this case, I not only move for summary judgment right when I -- right at the outset, but I'm going to -- I'm pressing that and I'm going to file it again, as to those individual people. And

your argument that you -- you know, essentially what you're telling me now is, look, I'm going to need -- I'm going to file a 56D, or whatever it is, if it's not D anymore, I can't remember -- but a 56D affidavit and I'm going to need all these things that you're describing. The things that I would need before I respond to his motion. And that may well be true, but we -- but under both his -- the proposal that I've adopted, the proposal -- whatever way all this comes out, you're going to have that opportunity in response to his motion to say, look, we need these five months that are presently there to delve into all of that.

MS. GOODHEART: If I may, Your Honor, I think it's more practical and more efficient for us to proceed as we have already begun to do, under the schedule that we proposed and you adopted as follows. We've already gotten out our document requests. We are -- we've had our Rule 26.

THE COURT: No, but his point is that -- not about the individual people. In other words, I anticipate -- I hate to be predictive, but I anticipate that he's going to file on May 6th a motion for summary judgment and I anticipate that 14 days later, or whatever it is, you're going to file a response that says to me, Judge, we need to have the rest of this time period that's laid out in the schedules that presently exist to do what you just described to me and then respond to his motion for summary judgment.

I'm betting that's pretty likely. And then I'm going to --

And then he's going to tell me, I'm betting, he's going to tell me that's not necessary, Judge. They should respond to the motion for summary judgment now. And then I'm going to have to decide that question of -- the question of whether -- of when you decide -- when you respond to the motion for summary judgment was going to be litigated and briefed by 20-page briefs, but the separate question seems to me, the question -- reason why I think we're here, and that is struggling, is not that. There will be plenty of time in a few weeks to fight over that. But is -- fundamentally, I think the biggest difference between the two of you is whether class certification discovery should happen now or later.

MS. GOODHEART: Yes.

THE COURT: And so that's really, I think, the difference between you both.

MS. GOODHEART: And if I may, Your Honor, we were surprised by the position that's been articulated, because on April 1st, when the parties filed our joint status report, we said to the Court on the first page that the parties agree that class certification issues should be deferred until after this Court rules on the parties cross motions for summary judgment. So we thought that, with that agreement, and Your Honor adopting our schedule, the case --

THE COURT: Did I really adopt exactly the schedule that all of you proposed? If my memory -- I haven't gone back and parsed it over, but this is the way I look at it. My memory is you all came to the proposal and there were certain things I didn't like about it. Like I didn't like the idea that a party could go forward in litigation and not answer. I've never had a case in all my years as a lawyer or not, where a party got to get to summary judgment, but they were allowed to escape an answer.

MS. GOODHEART: Yes.

THE COURT: And no one explained to me why, for example, they shouldn't have to answer the complaint and I can't see any reason why you shouldn't have to answer unless the complaint is dismissed, or unless someone comes up with some good reason. So I said you have to answer -- and he agreed. But that -- so be it, but I'm not bound by your agreements and so I shifted the schedule. So to some degree, I adopted things you proposed and --

So I guess to the extent your point is that he's bound, okay, and you want to enforce an agreement, then file a motion on that to that effect if you really want that, but I don't really think that's where you're going, because I -- the predicate for the agreement was that I would adopt all that you proposed and I didn't. So whatever agreement you have, to the extent you're surprised, I understand that maybe

you were surprised, and maybe he shifted course and maybe he didn't, but I don't know what the --

MS. GOODHEART: And that's fine, Your Honor. I don't mean to rest on the surprise aspect.

THE COURT: Right.

MS. GOODHEART: I did understand that you had adopted a schedule for initial disclosures and discovery on the plaintiff's individuals' claims.

THE COURT: I did. To be perfectly clear, the way I understand things, and you can correct me, you all are more familiar with all this in your case than I am, but I adopted a schedule that said individual -- he can file an early summary judgment motion and then we'll see whether it should be resolved early or not. And in the meantime, you'll go forward and do the individual claims and we'll figure out class certification later. That's essentially what I think I did.

And then he then said, wait, Judge, I think I want to do class certification -- or in -- my schedule was in various ways different. So I gave you both the chance, if I remember right, to respond to it, because I didn't just adopt what -- I usually do -- more likely to adopt what people agree upon, but you might not have been fully agreed, and in any event, I had done something different. So you both came back with these proposals and so I said, you know what, you

both said I should talk to you, that seems like a good idea, I'm in favor of that and so I'll talk to you and see.

And when I looked it over this morning, it seems like the biggest difference is class certification now or later. Without a doubt, I said in the -- in what I adopted, class certification later.

MS. GOODHEART: Yes.

THE COURT: No question about it. I'll be perfectly candid with you, sorry to reveal the secret behind the *Wizard of Oz*, but it wasn't that I spent a lot of time carefully thinking and poring over the question of when to do class certification. So that's -- and I will tell you one of the things that I'm wondering about in this case is it does seem right that he doesn't have a whole lot about class certification. Your real discovery of class certification is your own internal investigation of what you know about the parks and what you want to get from third parties like all the other homeowners. I wouldn't imagine these people, these two individuals have a lot of information about the other people. They have some and I could see you'd ask questions about it, but I would imagine that's the class discovery, whenever you take it. And --

But there's a quality to these claims that is different than Mr. Horowitz, the -- potentially different than Mr. Horowitz says, in the sense that I see how he's

defining injury and he's moving things that -- these things that are potentially much more individualized into sort of a damage category and he has a thought about how to address it in a uniform way that doesn't delve into individualized questions and bogs down. It might be right, it might be wrong. It's interesting. And there -- he certainly -- certainly, from my perspective, there's a quality of this case, where there's a lot of commonality. Okay.

Your client owns both parks, the legal duties that I identified or found or whatever, what I said whatever I said in the decision, those apply -- I can't really imagine how those duties, to the extent that they're imposed upon your clients as to these two plaintiffs, those legal duties are imposed upon your clients as to everybody else who's in his potential class, whether, in much the same way that if your client is Walmart and somebody walks in, and the question is does Walmart owe a duty to the people in the store, and your -- his client slipped on something in the store and the duty is a duty of reasonable care to maintain the store in a reasonable condition. That's not a class action, in that scenario, usually, but Walmart faces that duty for everybody who walks in the door.

Now, the thing that's not necessarily -- and I haven't resolved and I don't necessarily know -- I don't really know the answer to right now, is there are

individualized facts as to, in the Walmart example, each person who walks in the door, the circumstances in the store are different. One person walked in one minute after a five-year-old spilled the Drano on the floor and the next person walked in two hours later after nine Walmart staff walked by and they're not necessarily similarly situated, even though the legal duty that Walmart owes to both people is precisely identical.

So I think my view is -- you can dissuade me of it, but my view at the moment is the legal duty that your client owes to every single person who owns a mobile home is precisely identical, at least in the way I've described it with Walmart.

The difference -- there is, though, this question of, like, what are the facts about each person? And the application of that duty to each person's circumstance might be individualized in a way that precludes class certification and it might not be. I don't know the answer to that and I'm not resolving, obviously, class certification now, but the thing I'm struggling with in thinking about is whether class certification should be now or later. And in a way --

I'd be frank with both of you, that I'm not generally persuaded of the view that this is really automatically like Walmart. Okay? My Walmart example, where if Mr. Horowitz came in with the first person and said, well,

class certification of everyone who fell in that Walmart store or any Walmart store, or whatever, it would be like, no, there's too many -- I understand the variables and there are too many for that. But here the variables are less than the Walmart scenario.

They may not be so less that there's not class certification, but it puts it more in the -- at least the gray zone, where I wonder about whether we shouldn't do discovery together, simultaneous or not. I don't know that we should, but that's the thing that I'm wondering about. But you -- and then I guess I'll be quiet for a little bit. But you all know way more than I do about the facts on the ground. And what this ultimately turns on, in terms of management of the case and efficiency is, in part, I'm not -- and I know to some extent, you all want to resolve a little bit -- not class certification resolved now, but you want a perspective, you know, thinking appropriately about your -- each of your client's interests and what you're trying to advantage, but I'm -- so I understand that colors your approach.

But I'm just thinking about, there's this way in which this case has certain commonalities and certain differences. And I'm not -- so I'm not -- and that's the thing I'm wondering about, how that expresses itself in terms of the management of the case.

MS. GOODHEART: Yes. So, Your Honor, I think that question, class certification now or later, is directly tied to the need for discovery before we get to cross motions for summary judgment. And I'll pause to say, before we get into any notion of potential class certification discovery, of course we'd need to know what the standard is, federal or 93A. And that -- so we would need a --

THE COURT: So two parts. So to the extent that you say on liability, well, there isn't going to be any summary judgment on class liability unless and until there's a class. And even he's not -- he's not seeking that. So the question of whether -- the question I'm wrestling with, whether you get to take all the individual -- all the discovery on the two plaintiffs you want, before you have to -- merits response of summary judgment, that we're going to deal with in May. You're going to have a chance to explain all of that to me. I have no -- I don't know the answer to that and I'm not going to know until I see what you all give me and probably hear from you and then we'll see.

As to whether, while assuming you prevail on that -- it doesn't really matter whether you prevail on that, or not. Either way, what he says is he wants to file class certification and at the end of that six-month or five-month period of time. And he wants to do that whether I defer ruling on his motion for summary judgment as to the two

plaintiffs, or whether I rule on it right away.

And so the question I'm thinking about is not -- that you're -- is the -- whether the -- during that period of time, you should be doing class certification discovery, why not? And so I guess I would start with the perspective of, in the first instance, why not do everything all at the same time, all at once, as fast as we reasonably can, unless there's a good reason not to. So the question is, why can't we do class certification at the same time?

The 93A, 23(b), you know, that intersection, you know, my first reaction to that is it's kind of like pleading in the alternative, that there's like potentially seven factors that are relevant, if both are in play. If you win on the argument that -- about -- that you make, then only some of the -- then there's only some factors in play. And so why shouldn't -- and I just have you take discovery on all of it and then figure it out at the end.

MS. GOODHEART: Okay. I want to back up, Your Honor.

THE COURT: Yeah.

MS. GOODHEART: We don't even get to considerations of class issues, unless these two plaintiffs have all of the elements of viable claims. We don't think they do. Okay. So if they can't prove not only liability, but causation of an injury in fact that results in damages, they don't have a

claim. And I would commend to you the SJC's 2016 decision in the *Belleville* case, which basically stands for the proposition that this kind of claim, where the argument is basically you agree to provide certain services and I didn't get them, it's not going to be actionable unless that resulted in specific particularized injury to the plaintiffs. So we've got to get to that to see if there's even anything to talk about with respect to --

THE COURT: But apropos of my backyard --

MS. GOODHEART: Yes.

THE COURT: If you -- if I do nothing to my foundation for year after year after year, it's a reasonable inference, given that my foundation exists in the outside world, subject to weather and conditions and all of that that -- and do nothing for year after year after year, that it will degrade and that the degradation will, at some point, reach a point where it requires maintenance.

So whether or not I'm persuaded by the theory that Mr. Horowitz articulated, which I'm not sure is exactly the -- certainly not -- I don't think I expressed, in denying the motion to dismiss, I don't think I expressed duties quite in those words. I'm thinking about this, as I do as a case management question, that it seems like there's potentially a reasonable inference -- certainly a reasonable inference that whatever the slab is degraded over time, okay? And whether

that degradation leaded to a violation of any of the standards or duties that are -- that exist, that apply to your client, presents questions of causation and injury, but I guess the question is, when I'm thinking about it now, I'm not thinking about whether they're going to win or not, but I'm basically thinking about it, hmm, do they seem like there's a reasonable chance that they'll be able to show that? Because if they can show that, at the end of the process, they will then have a claim. And if they do have a claim, then we would be at least moving to class certification. So the question is why not just do it all at once, if I thought that -- so --

MS. GOODHEART: Because the assumptions that are leading you to think that's an efficient and appropriate way to proceed, respectfully, are not correct in the following sense.

We've spent a lot of time on the plaintiff's amended complaint on the motion to dismiss, so you understand his theory of commonality and the overall concept that there are two communities with leased home sites, so there seems to be commonality to that degree.

What is important to understand is these homes and these sites are incredibly different. Some have slabs, some don't. And different things have been done at different home sites and it is not the case that it is reasonable to

assume --

THE COURT: But that won't defeat his -- Mr. Lester, very eloquently -- it was Mr. Lester, right, who argued?

MS. GOODHEART: It was.

MR. LESTER: Yes, Your Honor.

THE COURT: Who did a great job at the hearing and very -- explained that to me very well. I understood that, I understand that. And I anticipate that, in the course of this case, if we get beyond the individual plaintiffs, I'll hear a lot of evidence. But if you come to me, if he moves for summary judgment on his two plaintiffs for liability on their two individual claims and you say to me, Judge, the other 398 people who live in these two parks have different slabs than they have, you know what I would say to you? What relevance is that to the motion for summary judgment as to these two people?

MS. GOODHEART: If I may, Your Honor, what I was wanting to get across to you -- not very well, apparently.

THE COURT: Well --

MS. GOODHEART: -- is that the assumptions that are not correct are, number one, that nothing was done. And number two, that something should have been done, that the slab needs to be maintained in some fashion. For example, we need fact discovery about that and we probably need expert

discovery about that. So it's not as simple as saying, gee, you have a concrete slab, if you do nothing for a period of years, you must have breached the duty. We believe the facts are going to show otherwise and the expert opinions will show otherwise. And so I think it's too quick to jump to, well, if we have this kind of basic scenario with common ownership and operation.

THE COURT: So you're saying fundamentally, from a case management perspective, the reason not to do class certification discovery at the same time is because he's likely to lose his individual claims?

MS. GOODHEART: Yes.

THE COURT: And the reason he's likely to lose his individual claims is because, (a), contrary to the allegations in the complaint, in fact, they -- the defendants did do things with respect to maintaining and preserving the slabs or blocks or whatever it is that the houses -- well, as to -- at least as to these two people, what their two homes sit upon. And there's not going to be -- and to the extent that they didn't do anything, nothing needed to be done, at least to the extent that what wasn't done didn't cause these things, whatever these things are, that -- upon which the homes sit, to fall outside -- to fall into violation of those duties that are referred to in the decision on the motion to dismiss.

MS. GOODHEART: That's correct. And if I may add, it's important that we tackle that, because the plaintiffs have taken positions, in some of their papers, that the alleged dereliction of duty has not yet made any discernible physical impact as some of the home sites, but at the same time they assert that the alleged derogation of duty has resulted in serious inconvenience, and full-blown disaster, and uninhabitability. So the scope, even by their presentation, ranges from no impact at all, to full-blown disaster, and that is very relevant to whether these two named plaintiffs have viable claims if they don't wish to go no further.

THE COURT: Well, that's only relevant to these two people, if those allegations are specific to them.

MS. GOODHEART: That's all the discovery that we want to do for now and then we want to have cross motions for summary judgment on those claims.

THE COURT: Right. But so what will, I guess issuing -- I guess what I come back to, since this is a case management, from my perspective, question, is -- because the basic difference between the two of you, at the moment -- I understand it's already ripe in your minds, the dispute about whether -- in both of your minds, whether summary judgment should be decided -- should be fully briefed in May, or whether it should be deferred, the opposition, until the end.

But that's going to come, he'll file his motion, and then you'll file your response, and then I'll decide that. And -- but the only thing that really separates you at the moment, in terms of the schedule, is whether to do class discovery now or later.

MS. GOODHEART: And we have --

THE COURT: I think, am I right about that?

MS. GOODHEART: Well, it's one of the major differences. We have over 1,000 potential class members. So the difference between doing discovery on the class issues now would be -- I mean, that's vast. That's huge, if you're going to open that up now. We don't even know which standard we're applying, but we would definitely want to explore issues of commonality or difference, and there are thousands, literally. So it's really not an efficient way, we think, to advance the ultimate resolution of this case.

We want to move right along and have Your Honor ruling on cross motions for summary judgment by the end of this year. And at that point, if there's anything left, we're prepared to move forward and we'll see how we go on the class issues. But to open that up now is going to require a huge amount of time and, in fairness to us, if that's an issue now and on the table to be decided, it's going to take a very long time. And it's just not --

We think it doesn't make sense because if the

plaintiffs themselves don't have viable claims we ought never be put to that tremendous expense and burden and there's experts on both sides, we ought not to do that.

THE COURT: So that's an argument, though, more generally, for why I should never have class discovery until after I've ruled on summary judgment on the individual claims. That is that, in every case, class discovery is more burdensome than discovery on individual claims and that it certainly is legally true that you should -- no defendant, you know, if there's no individual claims, there will be no class. And so the -- I guess one of the things I'm struggling with is what about this case -- I understand the two points. The assumption is incorrect about nothing is done and that it caused injury.

And you would say, Mr. Horowitz, you don't want to show that the failure to do anything actually caused the degradation -- let's call them all slabs to make them simple for the moment. That you disagree that they did nothing. You disagree with the assertion they did something. You say they did nothing. And second, you would say you don't have to show that the actual slab was degraded enough to cause a violation of one of those duties. It's enough at least as to some of their theories that they didn't do what they were bound and required to do.

MR. HOROWITZ: And if I may add, your Honor, I

would also respond that this notion that defendants need discovery to figure out what work was done, what work they did on residents' home sites, that they need discovery to figure out an expert justification as to why they had adopted the policy that they had adopted seems specious to me. This notion that all this information that they claim that they need --

THE COURT: Well, she seems to be saying, first, that she's disputing that, at least for the entire relevant time period, that they had a policy of not doing any of this. Second, even if they did do some of this, whether it was -- whether they had a policy and they did it contrary to the policy, or whether they didn't have such a policy and it was -- they sometimes did or sometimes didn't or what have you, it is not -- it's --

One could imagine that it could take a little bit of time, even if it's solely within their control, to actually go back through their files and see what did they do for each property and what kinds of things and the properties may have been built at different times, or the slabs, and they might have done something with one and not another. So there's some amount of going through all their -- they have files and they have to go through those files and some of them might be in storage and if there's -- how many sites are there, in total?

MR. HOROWITZ: Approximately 1,100 sites.

THE COURT: 1,100. So there's 1,100 sites. They might, in theory, have 1,100 files.

MR. HOROWITZ: But respectfully, Your Honor, I mean, this case has been pending since December. That's not discovery, what you've described. That's called internal corporate investigation. If I were running a corporation, would have started the minute I received a 93a demand letter in August. So again, this idea that there needs to be this expansive --

THE COURT: Something about your life course tells me that you wouldn't be running the corporation.

MR. HOROWITZ: That there's this need for expansive class discovery that is somehow different from individual discovery, I don't know. I mean, their defenses are, we performed these services and who would know better whether Hometown performed these services than Hometown. And second, these service weren't necessary. And if Hometown undertook this policy, which we believe to be unlawful, without even considering whether the services were necessary or not, I would suggest that that is --

THE COURT: But how is the theory that it's just, you know, they agreed to mow the lawn, they agreed to -- implicit in their contract -- well, I'm not sure I -- first of all, I'm not sure this was really joined in the motion to

dismiss, but I'm not sure I found that they had a duty in contract to inspect, as much as I found that these different law -- they moved to dismiss on certain targeted grounds. And so the only way for me to -- they asked for something. They asked for me to throw the case out and they asked me to throw it out for certain reasons and the reasons were, essentially, that they had no duties. And I said, well, no, there are duties here. And so that doesn't get thrown out.

And so I suppose it didn't resolve this question of whether you have these other theories. You didn't -- they didn't move to dismiss on the grounds that those theories were no good. The briefing focused on something different, but how does that meld with the duties?

MR. HOROWITZ: Sure. Your Honor, I guess this disconnect that the Court is describing in terms of how the Court is conceptualizing this case. What I heard from defense counsel, and I would agree, is at the heart of this dispute. How do you conceptualize the duty, how do you breach, how do you conceptualize the injury. And the Court's determination of those questions will determine the course of this litigation, right? And all plaintiffs have been trying to do since they filed this litigation is to force that question, the class certification motion, the motion for partial summary judgment.

We don't think any discovery is necessary and

that's been our position since day one. What defendants have done, what their policy was, what their justification for doing it was is all in their control and either the Court rules that, well, Horowitz, you know, your theory just doesn't add up, I don't agree with it, there's not causation injury, whatever. Then that would resolve core issues in this case. Or you might say, Horowitz, you know, that's a novel idea you have there and we're going to move forward with it. However the Court resolves that question, I think that's the question that needs to be resolved and we've been trying like mad --

THE COURT: So you know, in other words, if the case is defined as you -- your clients are suing and the breach is what you have described. That they, the defendants, had a duty to undertake maintenance and inspection of these things, then there's really -- and that there is legal injury if they didn't inspect.

MR. HOROWITZ: Because they accepted rent. They accepted rent money for --

THE COURT: Yes. By virtue of the relationship and whether it's contractual and written, or contractual in the sense of just an oral agreement, that that relationship gave rise to those duties and they just didn't do that. And then if that's that, and if they didn't -- then the discovery, if any needed is about whether they had that policy or not. And

you have some -- what I'm hearing you say is you think you have enough facts to show that they did have it, that you're willing to move for summary judgment. They might have contrary facts. Maybe there's a trial about that, but that's still a pretty focused trial.

And so are you saying, though, that if it's conceptualized in the way I defined it, in the motion to dismiss, which is they're these legal dues. And if the properties fell -- if this is how I characterize it, the decision speaks for itself, not how it's described now, but if it had -- they had these duties and if the properties -- and it's their burden to keep the property at or above the level and if they fell below, there's legal injury and liability, then that might be -- it's a different framework.

MR. HOROWITZ: That would be a much smaller class, Your Honor. Because I think that the class that we've proposed is a class of all current and former residents. If you notice in our amended complaint, we didn't have class allegations on the quiet enjoyment claim for that very reason.

There's this notion that, if we actually had to prove for each home site that the implied warranty of habitability was violated, that's a very individualized question. We would acknowledge that. But our theory of the case, our class theory of this case isn't that conditions on

a particular home site fell below a certain standard, it was certainly that residents paid rent for X, Y, and Z services, Hometown had a policy of not providing X, Y, Z services. Some of the rent money that the residents paid for -- the benefit of their bargain was to receive X, Y, Z services, some of that rent money must go back and from there, everything else, with respect to --

THE COURT: I thought the case was somewhat about, though, like -- I can't remember which of the plaintiffs has a lot of mold and water damage on her property and part of the dispute between the parties was over whether, even if you have this duty, whether they're responsible for the sort of consequential damages like --

MR. HOROWITZ: No, that's true, Your Honor, and the way we conceptualized those special damages in our class certification motion was that, after a class liability, after class-wide damages, that individual homeowners would have an opportunity, if they believed they were injured more, to piggyback -- individual class members would have an opportunity to piggyback on the class decision and say, hey, wait a second. I got all this rent money back, but like, my home is useless.

THE COURT: But they would have to advance a claim.

MR. HOROWITZ: They would have to be individualized, yes.

THE COURT: So your conception of the case is that, as to the named plaintiffs, they have an individualized claim that showed -- for which you have to show -- quiet enjoyment. You have to show individual damage and that's just for them.

MR. HOROWITZ: Yes.

THE COURT: And then the other claims. And as for the other claims, the conception is really that they have, by virtue of the landlord/tenant relationship, they had this generalized duty to inspect and maintain. And that they did neither and the absence of doing those things is sufficient to show some legal injury, because there was a contractual relationship that obligated them to do it and they were paying for it. That was within the -- that was a component of their rent, or their monetary payment, whatever you want to call it.

And so that, if you -- that is a generalized question, the fact questions related to that would only be did different people have individual relationship -- contractual relationships, or did they actually do it or not do it, generally, or did they do it for some and not for others.

MR. HOROWITZ: Which no discovery would be needed because all of that information is in their control and hopefully since August they would have figured out what they would have done and what their policy was. And that's really

why --

THE COURT: That seems sort of different, though, than I thought about the case at the motion to dismiss stage.

MR. HOROWITZ: Perhaps, Your Honor. But that's -- you know, if the Court envisions this as an implied warranty of habitability case, then I don't see how we could bring it on behalf of the class as large as we have, because --

THE COURT: If the claims are defined just as described in my decision, neither more nor less.

MR. HOROWITZ: Well, I think as described in your decision, I think you did both. I think you talked about the benefit of the tenant bargain with the 93a claim. I think you've talked about the warrant of habitability with respect to the quiet enjoyment claims. I mean, I actually noted -- I read the opinion again last night, Your Honor, and I noted in two separate instances, you noted that the claims sound in contract and the tenants were deprived the benefits of the bargain. I'm happy to point that out for the Court.

But I think -- I think there's both. I think there's both elements here and one is a class claim, right? And that's what we're trying to make sure doesn't fall off the map here and one are individual claims, which defendants are so eagerly trying to litigate, because those are tort claims effectively. Where you need to, you know -- where each individual class member is a unique snowflake and we --

THE COURT: That's the quiet enjoyment claim.

MR. HOROWITZ: And that's effectively the quiet enjoyment claim. And so, again, the bottom line here, Your Honor, is that this question that we're struggling with here, I think, is seminal. And my hope has been that the Court will adjudicate it most of the way there, if not all the way there, on a partial summary judgment, but if we don't get there, we certainly should deal with it on class certification motion and we shouldn't have to wait until 2020 to get that answer. Otherwise, we'll be stuck with this case forever and while that may or may not be defendant's goal, plaintiffs certainly want to move this case forward.

THE COURT: So -- I'll hear from you in one second.

So essentially, this theory of liability that you've been describing here today is the premise of your upcoming motion for summary judgment.

MR. HOROWITZ: Your Honor, we have nine facts. There are literally nine facts in our partial motion for summary judgment. We might amend it given what's in the defendant's answer, but it's not a complicated motion. It simply lays out that the --

THE COURT: I got it. Okay.

Go ahead.

MS. GOODHEART: I want to begin, Your Honor, by strenuously denying the notion that all of the relevant

information is within Hometown's control. And this isn't just a tort issue, it's also a contract issue, both as a matter of contract and under common law, the tenants themselves have certain maintenance responsibilities. The tenants own their own homes. And to give you a very specific example, the tenants are responsible for how the gutters and downspouts that are part of their home are directed. And if they direct water -- if they have a downspout that they choose to aim so that the water flows under the home, that is not -- that is very important for the Court to consider when the Court considers what are Hometown's duties.

There is a symbiotic relationship here, where some of the property is owned by the landlord and some is owned by the tenant. And it's a very complicated relationship, and we've got to start by figuring out, literally in some cases. Who owns what components of the structure.

So it's not just a question of did we have a policy, which we deny we had, as he presents it, and what did we do. I agree, we can -- we have a lot of information about that, but it's also a question of what did the individual tenants do or not do and how did that impact what we are supposed to do? And we need to know what was done, when it was done, where it was done, how it was done, why it was done, and why it was not done. These homeowners, they --

We want to explore do their homeowners insurance

reflect the fact that they actually owned the property that they're now saying we have to maintain. They have customer consumer manuals for the homes they purchase that have instructions for what they, the homeowner, should do to maintain their homes. Did they follow those instructions, and if not, with what consequences. And if I may, Your Honor, I would like to give Mr. Simpson an opportunity to address this piece of the puzzle, because I think he's in a good position to share more detail of what we need to show.

THE COURT: Sure.

MR. SIMPSON: Yes, Your Honor, hi, this is Scott Simpson. So just picking up on what Lisa said, we think there's really just a gross oversimplification of the duty. I heard Mr. Horowitz say, you know, X, Y, or Z, whatever the duty is, and you know, a wondering public wants to know what X and Y and Z are. And that's the one thing we're not being told. We're being told there's this, you know, presumptive duty to inspect, something, not really sure what, at what interval, what you're supposed to do when you're there. And that's what this case is about from our standpoint.

He wants to just jump to this remark or this idea about whether a policy or the absence of a policy creates a case, but it's just a whole lot more complicated than that. And to what Lisa said just a moment ago, every one of these homeowners has a homeowner manual mandated by HUD with HUD

duties in it for the owner, which includes inspection of their own home in these areas. That has not even been brought to fore yet and we want to see these manuals and we want to find out what was done, or what was not done.

Also, we think the facts are going to show that when these homes were purchased and, you know, most of them were purchased during a time when our clients didn't own these parks, okay, because I think of the 11, 1,200 homes, I think we may have sold, or some related company sold 100 of them. So, you know, we need to understand what they bought, what they told the bank they own, and what the bank has a security interest in, and what's insured.

But let me give you an example of a really bad consequence if we don't get this right. And we just had a case out in California with some mobile homes with the fires.

If Mr. Horowitz maintains that nothing under the home belongs to his client, then his client doesn't have an insurable interest in any of it. And if a home burns, these people are going to get incomplete outcomes from an insurance company and that's not normal. This idea that a park owner owns everything under a house is quite unique and quite novel and I've never seen it, and I've been doing manufactured housing litigation for 27 years.

So there's really some unintended consequences by this short-circuited idea that you either have a policy or

you don't, and I either win or I don't. It's a lot more nuanced and complicated than that. And frankly, you know, I think we got some good ways to get through the discovery on the individual cases pretty quickly. I mean, we've already put out our document request, we're going to have interrogatories. There's going to be subpoenas to others. You know, this idea of what was done, or what was not done, a lot of this has to do with the city and how the development worked and, you know, we're going to show engineering plans, some of which we have and some of which we don't. We're going to have to get these from other sources, because our client didn't do a lot of this stuff, right?

These subdivisions have been there since the '60s or '70s and we bought these projects like ten or 15 years ago, so there is a lot we have to do. And we've got a plan and it's going to be orderly. And I think at the end of the day the question of duty -- I think your order, Your Honor, said there is a duty. There is a body of law. What's left unanswered is the contours of that duty.

And I think Mr. Horowitz wants to say it's either a policy or it's not, and I either win or I don't. And we look at the case very differently. We think it's much more nuanced and you have to tell us what you were supposed to do. And I think it's an expert question and someone is going to have to say, well, gee, does concrete require maintenance, I

don't know. We think we have an idea about it, I haven't heard his. But there's a lot of stuff under these houses. And so those are the kinds of things that we need to get into and we've got a good plan for it. But to Lisa's point -- this whole case probably falls apart when you pull the expert information and you look at the way we've -- these homes were maintained and who does what and that's why we would urge some caution -- and we'll move quickly on the individual cases, but certification is really premature and frankly going to open up a Pandora's box of expense that everyone can probably benefit from not doing right now.

THE COURT: Okay. That's helpful. Thank you.

So I'm going to -- I want to think about this a little bit more. I'm not touching the schedule at the moment. As I understand it, the real question is whether class certification should be where it is, which right now is later, or whether I should make it happen now and I'm going to think about it. I may want to think about it. I may wait until I see the motion and -- for summary judgment. I think that probably would be helpful, because essentially what I understand Mr. Horowitz to be saying is, look, Judge, if you follow my theory, then it makes sense. If you don't follow my theory, then it might -- it's less compelling. And that would be one way to put it.

So anyway, I'm going to think about it. This has

been really helpful. I really appreciate you all taking the time and doing it on such short notice and all of your comments were very helpful. And I understand the issues much better now that we're dividing you, in terms of the -- these issues, than I did before and I appreciate that.

And I will say, picking up on one thing, one of -- Ms. Goodheart, "intertwined," is that the word you used?

MS. GOODHEART: Symbiotic, Your Honor.

THE COURT: Symbiotic, yes. So I just remind all of you about one aspect of this case that we haven't talked about, which is that your clients are in a symbiotic relationship and they will remain in a symbiotic relationship whether the plaintiff wins this case entirely, or loses this case entirely. And in that sense, they're like a family. And stuck together -- at least they have ways out, they can -- the defendants can sell these parks, the plaintiffs can -- individual plaintiffs can sell their homes or move, or what have you, but those are all -- involve lots of other considerations unrelated to this case. So essentially, in one form or another, what this case is doing, has done to some degree already, but will do along the way, in the course of the rulings and outcomes, if it goes all the way to the end of a jury trial, is to find with whatever people's roles and responsibilities are.

And that -- you know, that's great for you, if you

win what you want, but less good for you if you don't win what you want. So -- and leaves, wherever this case -- whatever the outcome is, all of you depart, to some degree, depending on your relationship with these clients and they're all there, on an ongoing way, with issues of these nature arising inevitably in one form or another.

So that leads me to sort of a general comment that applies here, which is that, you know, you're all entrusting in the Court and in me to resolve the nature of the relationship between the parties, which I appreciate that you have the faith to do that and I will do it as we go forward, as best I can. But often, people prefer to control their own fate. And so you all can think about that. That's true in this case, that's true in every case, right? Like your choice is always work it out among yourselves, or leave it to the Court.

I'm not signalling anything by what I'm telling you now, I'm just reminding you, this is a complicated case, with a lot of people who have this symbiotic relationship that existed prior to this litigation and will exist after this litigation. And you can think about whether you want to do that. I'm not -- you know, you all are skilled and experienced lawyers and you can do that on your own. You know how to ask if you want to go to the Court's mediation program, you can go to that. I'm not sending anyone off to

that. I'm not imposing some, like, mediation hurdle or settlement hurdle.

I mean, I think you should be all thinking about that, because I think that every day, that you all have two choices every day in this case. Choice number one is to proceed. See what works out, in terms of the issues before the Court, evaluating what -- how you think it will go and what you think it will resolve and how it will be, and choice number two is get the best you can from the other side.

That was the choice before you brought the case. I'm sure you probably all had discussions before the case in some form, in some way, and maybe not. You may or may not have had discussions since, but you all -- if you're not thinking about that, in this and every other case, then I don't know what you're doing, but you ought to be thinking about that in this case and in every case. That's always your choice.

So, you know, I think it's worth -- I just remind you about it, because the word that you brought up made me think about it and because your clients do have -- they're not like two people who came into contact and then are never going to have contact with each other again and that's it. They are in an ongoing relationship and so -- and they're fighting over the nature of that relationship, which is fine. And I'm happy to resolve it, and it's not -- unlike a family,

it's not like a divorce, where -- they don't have to like each other to be in the relationship they're in, but it's just a comment and food for thought for all of you to think about.

All right.

MS. GOODHEART: Might I address that, Your Honor?

THE COURT: If you want.

MS. GOODHEART: And I think Mr. Horowitz would not mind me saying, the landlord/tenant relationship is in place while this litigation proceeds. And I just would like the Court to know that, of course, ordinary, routine landlord/tenant maintenance questions may come up and I think we've established a very good dialogue for having those issues resolved in the ordinary course and not land on your desk.

THE COURT: Right.

MS. GOODHEART: So I don't want you to think that --

THE COURT: I'm not -- I didn't say all that -- I wasn't trying to excoriate you. I wasn't saying like I didn't think you all -- I just was reminding people. I think, first of all, that's great that you're doing that. I commend both of you for doing that. I think that makes perfect sense. You don't want to be in here litigating over whether -- what a particular thing happens or a particular

person's house and figuring -- and you don't also want to complicate this case with, wait, could the maintenance guy talk to the homeowner, or is that the company talking, going behind the back of the lawyer, and all those kinds of questions. And I commend you for having worked that out.

I have other cases where they are coming to me with, like, all sorts of issues like that and -- which makes no sense and so I really appreciate that. I'm glad you did that. I think your clients are better served for that. The Court is certainly better served, too, and you'll get a better resolutions of the issues you do have, because you're focusing on the ones that are important, so that's great and I appreciate that.

And I'm not delling you the sort of conversation about settlement, I'm just reminding you about it, because I think it's easy to, as a lawyer, to put your head down and do your case and sometimes forget to stand up and still have to look and think about that. And I encourage you to think about that. You don't have to settle it, you don't have to report back to me whether you had a discussion that didn't work out or it did and -- but I do think it's something to think about, given the symbiotic nature.

MS. GOODHEART: Thank you, Your Honor.

MR. HOROWITZ: Thank you.

THE COURT: Sure. Have a good day. Good weekend.

We're adjourned.

THE DEPUTY CLERK: All rise, this matter is adjourned.

(Court in recess at 12:14 p.m.)

**CERTIFICATE OF OFFICIAL REPORTER**

I, Rachel M. Lopez, Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing pages are a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 25th day of April, 2019.

/s/ RACHEL M. LOPEZ

______________________________________

Rachel M. Lopez, CRR
Official Court Reporter