**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| BARBARA CRAW, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-12149-LTS |
| | ) | |
| HOMETOWN AMERICA, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION**
**SETTLEMENT OF THE OAKHILL CLASS**
**AND PLAN OF ALLOCATION**

*INTRODUCTION*

Plaintiff, Barbara Craw ("Ms. Craw," "Craw," or "Plaintiff") and the Oakhill Defendants[1]

(collectively, the "Settling Oakhill Parties") have reached a Settlement Agreement ("Settlement"

or "Settlement Agreement" or "Stipulation of Settlement") that will fully resolve Craw's

individual claims and the claims of the Oakhill Class in this putative class action litigation

related to the Oakhill Manufactured Home Community ("Oakhill").[2]  Craw seeks preliminary

approval of that proposed Settlement with the Oakhill Defendants, who are owners and/or

operators of Oakhill.  The Settling Oakhill Parties submitted the Settlement Agreement as

**Exhibit 1** to the Joint Motion for Preliminary Approval of Proposed Class Action Settlement of

---

[1] Hometown America, LLC, Hometown American Management, LLC, and Hometown Oakhill, LLC.

[2] Joan Shurtleff, individually and on behalf of a putative class of current and former residents of the Oak Point Manufactured Housing Community ("Oak Point"), continues to pursue claims related to Oak Point against Hometown America, LLC, Hometown America Management, LLC, Hometown Oak Point I, LLC, and Hometown Oak Point II, LLC.

the Oakhill Class and Plan of Allocation ("Motion for Preliminary Approval").[3] (Doc. 171-1.) The exhibits to that Settlement Agreement were also submitted as **Sub-Exhibits A–G** to **Exhibit 1**. (Doc. 171-1.)  Because the proposed Settlement offers a fair, reasonable, and adequate settlement for the Oakhill Class, as required by FED. R. CIV. P. 23(e), preliminary approval of the Settlement is warranted.

Plaintiff Barbara Craw also seeks—for settlement purposes only—preliminary certification, pursuant to FED. R. CIV. P. 23(e)(1)(B)(ii), of an Injunctive Relief Class under Fed. R. Civ. P. 23(b)(2) ("Rule 23(b)(2)"), and a Damages Class under FED. R. CIV. P. 23(b)(3) ("Rule 23(b)(3)").  Both the Injunctive Relief Class and the Damages Class are defined the same way—all current and former residents of Oakhill who resided there at any time between September 25, 2012 and March 23, 2021 (collectively, the Injunctive Relief Class and the Damages Class are the "Class" or "Oakhill Class").  Certification of a Rule 23(b)(2) Injunctive Relief Class and a Rule 23(b)(3) Damages Class effectuates the terms of the proposed Settlement which encompasses both equitable and monetary relief for the Settlement Class.[4]  The Injunctive Relief Class—for settlement purposes only—meets the requirements of Rule 23(a), 23(b)(2), and 23(e)(1)(B)(ii) for preliminary approval.  The Damages Class—for settlement purposes only— meets the requirements of Rule 23(a), 23(b)(3), and 23(e)(1)(B)(ii) for preliminary approval.

Based on the foregoing, as well as the argument below, the Settling Oakhill Parties respectfully request that the Court grant the relief sought in the Motion for Preliminary Approval

---

[3] **Exhibits 2–11** referenced herein were also submitted with the Motion for Preliminary Approval. (Docs. 171-2–11.)

[4] The "Settlement Class" is the "Class" or the "Oakhill Class," less Damages Class Members who file a timely and valid Request for Exclusion from the Damages Class.  **Exhibit 1**, Settlement, §§ II.G, II.BBB (Doc. 171-1).

submitted herewith.[5]  Capitalized terms not defined herein have the same definition as that used in the Settlement Agreement.

*FACTS*

I.        OAKHILL MANUFACTURED HOUSING COMMUNITY

Oakhill is home to approximately 175 households at any given time, households which pay monthly rent so that their manufactured houses may occupy a home site in the community. *See* **Exhibit 2**, 1st Am. Cmplt., Doc. 10, at ¶¶ 1, 31 (Doc. 171-2); **Exhibit 3**, Answ., Doc. 69, at ¶¶ 1, 31 (Doc. 171-3).  The Oakhill Defendants have owned or operated Oakhill since 2006. *See* **Exhibit 2**, 1st Am. Cmplt., Doc. 10, at ¶¶ 30–31, 33, 46–49 (Doc. 171-2); **Exhibit 3**, Answ., Doc. 69, at ¶¶ 30–31, 33, 46–49 (Doc. 171-3).  Ms. Craw is a long-time resident of Oakhill who has paid rent to one or more of the Oakhill Defendants so that her home may occupy a home site in the community.  *See* **Exhibit 2**, 1st Am. Cmplt., Doc. 10, at ¶¶ 1–2, 14, 28, 140 (Doc. 171-2); **Exhibit 3**, Answ., Doc. 69, at ¶¶ 1–2, 14, 28, 140 (Doc. 171-3).  Ms. Craw claims that the Oakhill property contains infrastructure on or around each leased home site which are necessary for the site's use as a manufactured home residence and which must be periodically maintained to ensure their functionality.  *See* **Sub-Exhibit G to Exhibit 1**, Settlement, 8 (Doc. 171-1); **Exhibit 2**, 1st Am. Cmplt., Doc. 10, at ¶ 4 (Doc. 171-2).  Ms. Craw has alleged that, since at least September of 2012, the Oakhill Defendants have insufficiently maintained such infrastructure at Oakhill—particularly infrastructure related to the management of stormwater.

---

[5] The Settling Oakhill Parties submit the Motion for Preliminary Approval and this memorandum of law in support thereof for settlement approval purposes only.  In entering the Settlement Agreement, the Oakhill Defendants have denied, and continue to deny, any liability or wrongdoing in connection with the claims made in the Action.  The Oakhill Defendants retain the right to oppose class certification in the event that the Court or an appellate court with jurisdiction over any appeal from the Settlement or Final Order and Judgment rejects, modifies or denies preliminary or final approval of any material portion of the Settlement. **Exhibit 1**, Settlement, § XVI.A (Doc. 171-1).  Nothing in the Motion for Preliminary Approval, nor in this memorandum of law in support thereof, should be construed otherwise.

05863291.25                                          3

*See, e.g.*, **Exhibit 2**, 1st Am. Cmplt., Doc. 10, at ¶¶ 8–10, 12 (Doc. 171-2). Ms. Craw has further alleged that Oakhill residents have suffered actual injury (including but not limited to property damage, personal injury, loss of use, and economic damages) due to the Oakhill Defendants' failure to perform, or inadequate performance of, services for Oakhill residents. *See, e.g.*, **Exhibit 2**, 1st Am. Cmplt., Doc. 10, at ¶¶ 8, 10–12, 15–16, 53–61, 118–19 (Doc. 171-2); *see also* **Exhibit 4**, Declaration of Barbara Craw, Doc. 11-2 at ¶¶ 4–20 (Doc. 171-4); **Exhibit 5**, Declaration of Debbie S. Kulbok, Doc. 11-2 at ¶ 6 (Doc. 171-5); **Exhibit 6**, Declaration of Marie Payne, Doc. 11-2 at ¶ 2–10 (Doc. 171-6); **Exhibit 7**, Declaration of Briana Auclair, Doc. 11-3 at ¶ 3–14 (Doc. 171-7); **Exhibit 8**, Deposition of Barbara Craw (Sept. 18, 2019), at 41:24–44:10, 61:4–63:4, 64:19–66:14, 67:8–68:14, 71:17–72:21, 109:3–18 (Doc. 171-8).

## II.       PROCEDURAL HISTORY

On September 25, 2018, Ms. Craw initiated the instant litigation in the Plymouth County Superior Court for the Commonwealth of Massachusetts (No. 1883cv01017) by filing a class action complaint for injunctive relief and damages (the "Complaint"). *See* Doc. 1-1 at 5, 27–28; **Exhibit 9**, Declaration of Ethan R. Horowitz ("Horowitz Decl."), at ¶ 5 (Doc. 171-9). Ms. Craw was at that time, and still is, a resident of Oakhill. *See* **Exhibit 9**, Horowitz Decl., at ¶ 5 (Doc. 171-9). In the Complaint, Ms. Craw named the Oakhill Defendants as defendants and also named as defendants Hometown Oak Point I, LLC, and Hometown Oak Point II, LLC (collectively, "Hometown Oak Point"). *See* Doc. 1-1 at 7. On October 15, 2018, the instant action was timely removed to this Court, *see* Doc. 1, and on October 31, 2018, Ms. Craw filed an amended complaint so as to conform her claims to the federal forum as well as to add the claims of her co-Plaintiff Joan Shurtleff who at that time was, and still is, a resident of Oak Point. *See* Doc. 10; **Exhibit 9**, Horowitz Decl., at ¶ 7 (Doc. 171-9).

On November 21, 2018, Defendants filed a motion to dismiss for failure to state a claim.[6] *See* Doc. 29.  On December 14, 2018, Plaintiffs filed a motion for partial summary judgment as to liability on Counts I and II of the First Amended Complaint.  *See* Doc. 42.  On March 21, 2019, the Court denied the Defendants' motion to dismiss in its entirety.  *See* Doc. 59.  And on April 5, 2019, the Court denied Plaintiffs' motion for partial summary judgment without prejudice to renew, prior to the close of discovery, on or before May 6, 2019.  *See* Doc. 63 at 3.  Accordingly, Plaintiffs filed a second motion for partial summary judgment on May 3, 2019, Doc. 74, and Defendants filed a FED. R. CIV. P. 56(d) declaration in response to that motion on May 17, 2019, Doc. 76.  After receipt of full briefing, the Court on August 8, 2019, denied that motion for partial summary judgment without prejudice, allowing its renewal at the close of discovery.  *See* Docs. 75, 77–83; Doc. 90 at 6.

During this motion practice, the parties commenced discovery on Plaintiffs' individual claims—discovery which spanned approximately 11 months and which included Plaintiffs' production of approximately 8,000 pages of documents, Defendants' production of approximately 70,000 pages of documents, nine depositions—three noticed by Defendants and six by Plaintiffs—and more than one-dozen business record subpoenas or public record requests to third parties.[7]  *See* **Exhibit 9**, Horowitz Decl., at ¶ 9 (Doc. 171-9).  In March 2020, following the conclusion of discovery, as well as additional discovery-related motion practice, the parties successfully sought a stay of the pending litigation and began settlement negotiations with the help of a third-party, neutral mediator.  *See id.* at ¶ 10.

---

[6] After the parties fully briefed the motion to dismiss, the Court heard oral argument for that motion on February 28, 2019 and the parties thereafter filed supplemental memoranda.  *See* Docs. 30, 43–44, 51, 53–54.

[7] "Defendants" in this context also refers to Defendants Hometown Oak Point.

III.       PROPOSED SETTLEMENT

After approximately one year of negotiations, which included the Oakhill Defendants' disclosure of informal discovery and the aid of a mediator experienced in class action mediation, Ms. Craw and the Oakhill Defendants reached a proposed Settlement designed to resolve Craw's individual claims, and claims brought on behalf of the putative Oakhill Class, in the above-captioned litigation.  *See* **Exhibit 9**, Horowitz Decl., at ¶ 11 (Doc. 171-9); *see also generally* **Exhibit 1**, Settlement (Doc. 171-1); **Exhibit 10**, Declaration of Thomas W. Thagard, III, at ¶¶ 7–16, 18 (Doc. 171-10).

As Injunctive Relief, the Settlement requires further implementation by the Oakhill Defendants of the Oakhill Stormwater Management System Operation & Maintenance Program (the "Oakhill Stormwater Program"), and provides for routine inspection, operation, and maintenance of all components of the Oakhill stormwater management system for a period of at least five years as set forth in **Sub-Exhibit G to Exhibit 1**.  (Doc. 171-1)  *See also* **Exhibit 1**, Settlement, § III.C.1 (Doc. 171-1).  As additional Injunctive Relief, the Settlement also provides for stormwater management system improvement projects which will improve certain components of the comprehensive Oakhill stormwater management system that serves and benefits all Class Members.  *See id.*, §§ III.C, XVII.Q.

The proposed Settlement creates a $10,000 Settlement Cost Contribution, earmarked for the payment of Settlement Costs.  *Id.*, § III.B.1.[8]   The proposed Settlement also creates a Settlement Fund of $500,000.  *Id.*  After payment of any remaining Settlement Costs after the

---

[8] The "Settlement Cost Contribution" in the Settlement Agreement, **Exhibit 1**, §II.CCC (Doc. 171-1), refers to the one-time $10,000 payment by the Oakhill Defendants to the Settlement Administrator to pay for the first $10,000 of Settlement Costs.  The Oakhill Defendants have agreed to increase the Settlement Cost Contribution from $10,000 to $12,758.62.  The Settling Oakhill Parties agree that the Oakhill Defendants have no responsibility whatsoever for Settlement Costs under the Settlement beyond this $12,758.62.

05863291.25                                    6

Settlement Cost Contribution is depleted, the remaining Settlement Fund (the "Class Benefit Fund") will be distributed to Entitled Damages Class Members[9] on a claims-made basis, as monetary compensation for their injuries. *See id.*, §§ III.B.1, H, VI.C.  The Plan of Allocation will apportion the entire $500,000—after the deduction of any Settlement Costs that exceed $10,000 Settlement Cost Contribution—among Entitled Damages Class Members (or their claimants) using a three-tiered structure based on the number of years the Entitled Damages Class Member has resided at Oakhill between September 2012 and March 23, 2021.  *See id.*, §§ III.B; **Sub-Exhibit B to Exhibit 1**, Settlement (Doc. 171-1).

To ensure that as many Class Members as possible are notified of the Settlement and submit claims, the Settlement requires the retention of a professional Settlement Administrator. Ms. Craw proposes First Class, Inc., as the Settlement Administrator.  This proposed Settlement Administrator has significant class action and class notice experience.  *See* **Exhibit 11**, Declaration of Lonna B. Schulz, at ¶¶ 3–5, 10–11, 13 (Doc. 171-11).[10]  The Settlement Administrator will be charged with identifying current contact information for Class Members and with providing notice to Class Members by U.S. mail, by electronic mail, and/or by

---

[9] The Settlement Agreement defines "Entitled Damages Class Member" to mean "Damages Class Members who have not filed a timely and valid Request for Exclusion from the Damages Class, but who have filed a timely and valid Claim Form."  **Exhibit 1**, Settlement, § II.U (Doc. 171-1).

[10] Federal courts throughout the country have preliminarily approved, and given final approval to class action settlements where First Class, Inc. was the notice, settlement, and/or claims administrator. *See, e.g.*, *Brockman v. Mankin Law Grp., P.A.*, No. 8:20-cv-893-T-35JSS, 2020 WL 6106890, at *2 (M.D. Fla. Oct. 14, 2020) (approving First Class, Inc., as the "class administrator" in class action settlement) (citing *Veness v. Heywood, Cari & Anderson, S.C.*, No. 17-338, 2017 WL 6759382, at *5 (W.D. Wis. Dec. 29, 2017) and *Green v. Dressman Benzinger Lavelle, PSC*, No. 14-142, 2014 WL 4816698, at *2 (W.D. Ohio Sept. 18, 2014) as "appointing First Class, Inc. as class administrator"); *Reeves v. Patenaude & Felix, A.P.C.*, No. 5:20-cv-11034, 2021 WL 1186145, at *3 (E.D. Mich. Mar. 26, 2021) (giving final approval to settlement and directing First Class, Inc., to complete its administration); *La Carla v. Northstar Location Servs., LLC*, No. 2:18-cv-00317, 2021 WL 94477, at *6 (D. Nev. Jan. 11, 2021) (granting settlement preliminary approval and directing First Class, Inc., to send the class notice).

05863291.25

publication in three regional newspapers. *See* **Exhibit 1**, Settlement, §§ V.A–B (Doc. 171-1). The Settlement Administrator will also maintain a dedicated telephone number and website to provide information to Oakhill Class Members, and it will include both a Claim Form and a postage pre-paid envelope with the mailed Settlement Notice to encourage the submission of claims. *See id.*, §§ V.B.1, VI.B.1.

The Settlement will compensate Ms. Craw's undersigned counsel, as putative Class Counsel, in an amount up to $162,500 for Attorney's Fees and Expenses associated with prosecuting this litigation, and will compensate Ms. Craw, in an amount up to $17,500, for her service to the class. *See id.* at §§ III.D–E, X.A.

In exchange for the Class Relief, Settlement Class Members will broadly release claims for all claims and damages (including but not limited to property damages, personal injury, loss of use, economic, exemplary, multiple, treble, and punitive damages, penalties, attorney's fees and legal expense) as set forth in the Settlement Agreement, Section IX.[11]

## *ARGUMENT*

### I.    GOVERNING LAW

#### A.    Class Certification Standard

All class action claims advanced pursuant to Rule 23 must satisfy the initial four requirements of Rule 23(a): "(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003). Class action claims seeking injunctive relief must further demonstrate that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final

---

[11] The Settlement includes a carve out in the release which preserves "past, current or future claims . . . that relate to non-uniform rents under Mass. General Laws c. 140, § 32L(2)," raised by an overlapping set of class members in another class action presently pending before the Southeast Housing Court. *See* **Exhibit 1**, Settlement, § IX.A.4 (Doc. 171-1).

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). Class action claims seeking monetary damages must also demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). If a class action seeks both monetary and injunctive relief, a court "may adopt a 'hybrid' approach, certifying a (b)(2) class as to the claims for declaratory or injunctive relief, and a (b)(3) class as to claims for monetary relief, effectively granting (b)(3) protections including the right to opt out to class members at the monetary relief stage." *Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997).[12] At this preliminary approval stage, this Court need only be satisfied that it will "likely be able to . . . certify the [C]lass[es] for purposes of judgment on the [Settlement] proposal." FED. R. CIV. P. 23(e)(1)(B)(ii).

B.      Class-Action Settlement Approval

Before approving a class-action settlement, a reviewing court must find that the proposed settlement "is fair, reasonable, and adequate"—a determination which is highly discretionary but which should generally presume a proposed settlement is reasonable. *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 82 (1st Cir. 2015) ("If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32–33 (1st Cir. 2009))); *cf.* FED. R. CIV. P. 23(e)(2)(B). Factors which a reviewing court should consider include: (1) "whether the [C]lass [R]epresentative and [C]lass [C]ounsel have adequately represented the [C]lass" in the

---

[12] *See also, e.g.*, W. RUBINSTEIN, 2 NEWBERG ON CLASS ACTIONS, § 4.38 (5th ed.) (Dec. 2020 update) ("[C]ourts use the phrase 'hybrid class action' to refer to a single case in which plaintiffs seek both injunctive relief and monetary damages through certification under more than one section of Rule 23.").

litigation to-date; (2) whether the Settlement negotiations were conducted "at arm's length"; (3) whether the proposed class relief is "adequate" when viewed in light of:  (a) "the costs, risks, and delay of trial and appeal"; (b) the "effectiveness" of the proposed "method of distributing relief to the class, including the method of processing class-member claims"; (c) the "terms" of the proposed attorney's fee award and the timing of its payment; and (d) "any agreement" made "in connection with the [Settlement] proposal"; and (4) whether "the proposal treats [C]lass [M]embers equitably" relative to one another.  FED. R. CIV. P. 23(e)(2)(A)–(D).[13]

Incentive awards and awards of attorney's fees or litigation costs are permissible elements of a class settlement, provided that the awards comply with applicable law and are reasonable with respect to the class representative's and class counsel's respective contributions to the class.  *See* FED. R. CIV. P. 23(h) (determination of proper fee award governed by applicable substantive law); FED. R. CIV. P. 23(e)(2)(C) & (D), Committee notes on 2018 Amendment ("the relief actually delivered to the class can be a significant factor is determining the appropriate fee award"); *see also, e.g.*, *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (Young, C.J.) ("[B]ecause a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit." (citation omitted)).

---

[13] *See also* FED. R. CIV. P. 23(e)(2), 2018 cmt. ("Courts have generated lists of factors . . . .  The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."); *Bezdek*, 809 F.3d at 82 ("The case law offers 'laundry lists of factors' pertaining to reasonableness, but 'the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.'" (citation omitted)).

05863291.25

II.       MS. CRAW'S CONSUMER PROTECTION ACT CLAIMS WARRANT CERTIFICATION FOR SETTLEMENT PURPOSES ONLY OF AN INJUNCTIVE RELIEF CLASS UNDER RULE 23(B)(2) AND A DAMAGES CLASS UNDER 23(B)(3)

The crux of Ms. Craw's Consumer Protection Act claims is that the Oakhill Defendants, by allegedly implementing a uniform policy of refusing to provide, or inadequately providing, services for Oakhill residents respecting Oakhill's infrastructure that were required by law, engaged in a pattern of unfair practices that injured all Oakhill Class Members. The proposed Oakhill Class consists of Injunctive Relief Class Members and Damages Class Members. **Exhibit 1**, Settlement, § II.G (Doc. 171-1). Both the Injunctive Relief Class and the Damages Class are defined the same way: "all current and former residents of the Oakhill Manufactured Housing Community, who resided there at any point between September 25, 2012 and the Effective Date of this Settlement [March 23, 2021]." *Id.*, §§ II.Q & EE. The final Settlement Class consists of all Injunctive Relief Class Members and all Damages Class Members who do not opt-out. *Id.*, § II.BBB.

As outlined in detail below, only for the purpose of preliminary approval of the proposed Settlement, these claims satisfy the requirements of Rule 23(a), Rule 23(b)(2), Rule 23(b)(3), and Rule 23(e)(2)(B)(ii), and thus warrant the requested certification of the Injunctive Relief Class under Rule 23(b)(2) and the Damages Class under Rule 23(b)(3).

A. Rule 23(a)

*Numerosity.* The number of Oakhill Class Members—estimated to be over 500 residents and former residents—satisfies Rule 23(a)(1)'s numerosity requirement for settlement purposes only. *See García-Rubiera v. Calderón*, 570 F.3d 443, 460 (1st Cir. 2009) ("low threshold for numerosity" generally met by at least 40 putative class members (citing *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001))); **Exhibit 9**, Horowitz Decl., at ¶ 12 (Doc. 171-9).

*Commonality.* Given Ms. Craw's assertion that she and the Oakhill Class were all subjected to the same policy, the common factual question concerning the specific contours of the Oakhill Defendants' alleged policy and the common legal question concerning the legality of that alleged policy satisfy FED. R. CIV. P. 23(a)(2) for settlement purposes only. *See, e.g.*, *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003) (Gertner, J.) ("A *single* common legal or factual issue can suffice.").

*Typicality.* The injury which Ms. Craw asserts that she has sustained is typical of the injury allegedly suffered by all Oakhill Class households, insofar as the Oakhill Defendants' alleged implementation of the policy caused each such Oakhill Class Member damages arising from the Oakhill Defendants' failing to provide or inadequately providing services for the Oakhill residents—similarities which satisfy Rule 23(a)(3)'s typicality requirement for settlement purposes only. *See García-Rubiera*, 570 F.3d at 460 (typicality satisfied when "Plaintiffs' claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and are based on the same legal theory." (alterations adopted) (citation omitted)).

*Adequacy.* With respect to the Rule 23(a)(4) adequacy requirement, Ms. Craw's and Class Counsel's two-year record of vigorously litigating this matter demonstrate that each will responsibly pursue the best interests of the Oakhill Class, and satisfy Rule 23(a)(4) for settlement purposes only. *See, e.g.*, *Lannan v. Levy & White*, 186 F. Supp. 3d 77, 89 (D. Mass. 2016) (Talwani, J.) ("To meet the adequacy requirement, the moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." (citation and internal quotation

05863291.25                                                         12

omitted)); *see also* pp. 4–5, *supra*, & pp. 15–16, *infra*.  Moreover, there are no known conflicts between Ms. Craw and any Oakhill Class Members.  Rule 23(a)(4)'s adequacy requirement is thus satisfied for settlement purposes only.

Accordingly, Ms. Craw's claims satisfy all of the requirements of Rule 23(a) for settlement purposes only.

B.      Rule 23(b)(2) and Rule 23(b)(3)

*Injunctive Relief Class and Rule 23(b)(2).*  Ms. Craw asserts that the Oakhill Defendants had a Policy which injured all Class Members the same way.  The Injunctive Relief provided by the proposed Settlement addresses this alleged injury by effecting a broad injunction which requires further implementation by the Oakhill Defendants of the Oakhill Stormwater Program, and certain stormwater management system improvement projects that will benefit the Class. **Exhibit 1**, Settlement, § III.C (Doc. 171-1); **Sub-Exhibit G to Exhibit 1**, Settlement (Doc. 171-1).  Thus, under a preliminary approval analysis, the Injunctive Relief Class is likely to be found appropriate under Rule 23(b)(2) for settlement purposes only.  *See García-Rubiera*, 570 F.3d at 461 (Rule 23(b)(2) satisfied by asserting injunctive relief  that "'is appropriate respecting the class a whole.'" (quoting FED. R. CIV. P. 23(b)(2))).

*Damages Class and Rule 23(b)(3).*  Ms. Craw alleges class-wide injury resulting from the Oakhill Defendants' alleged "Policy." *See* **Exhibit 2**, 1st Am. Cmplt., Doc. 10, at ¶ 8 (Doc. 171-2) (alleging a "policy" of "shift[ing] onto . . . residents the substantial burden of maintaining, repairing and replacing the permanent improvements built into the land on those residents' leased home sites."); *see also*, *infra*, n.15.  A preliminary approval analysis indicates that with this common alleged Policy, the Damages Class is likely to be found appropriate under Rule 23(b)(3) for settlement purposes only.  *See Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (predominance satisfied by "sufficient constellation of common issues

[which] bind[] class members together"); *Smilow*, 323 F.3d at 40 ("The individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3).").

Moreover, Ms. Craw's proposed class action likely satisfies Rule 23(b)(3)'s superiority requirement for settlement purposes only by offering an efficient and consistent resolution of the claims of the Oakhill Class Members, while also permitting those Class Members with more substantial individualized damages to opt out. *See also* FED. R. CIV. P. 23(b)(3)(A)–(C). No actions concerning the same controversy have been brought by other Class Members. This forum is desirable for resolving the controversy because the known Class Members all live in Massachusetts and the subject matter of the controversy—Oakhill—is located in Massachusetts. This Court need not consider whether trial "would present intractable management problems" because "the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citing FED. R. CIV. P. 23(b)(3)(D)).

For settlement purposes only, Ms. Craw has satisfied her burden under Rule 23 of establishing that her Consumer Protection Act claims merit certification of the Injunctive Relief Class pursuant to Rule 23(b)(2) and the Damages Class under Rule 23(b)(3). *See, e.g.*, *Eubanks*, 110 F.3d at 96; W. RUBINSTEIN, 2 NEWBERG ON CLASS ACTIONS, § 4.38 (5th ed.) (Dec. 2020 update).

III.     THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILIY APPROVED AND THE PROPOSED NOTICE OF THE SETTLEMENT SHOULD BE SENT TO THE OAKHILL CLASS

In the First Circuit, "[w]hen sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). The Settling Oakhill Parties engaged in more than sufficient discovery here, having completed substantial discovery regarding Oakhill, *see* p. 5, *supra*, with summary judgment briefing deadlines pending, before

05863291.25                                                   14

reaching the proposed Settlement.  The Settling Oakhill Parties further bargained at arms-length, using a neutral third-party mediator, for one year before reaching the proposed Settlement.  The presumption in favor of this proposed Settlement applies.

Rule 23(e) provides that certain procedures apply at the preliminary approval stage to a proposed settlement.  "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal," that rule provides, "if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  FED. R. CIV. P. 23(e)(1)(B).  The Settling Oakhill Parties have already demonstrated that this Court will likely be able to certify an Injunctive Relief Class under Rule 23(b)(2) and a Damages Class under Rule 23(b)(3) for purposes of judgment on the Settlement proposal, and thus should preliminarily order such certification for settlement purposes only.  Based on the following, the Settling Oakhill Parties have met the required showing that the Court will likely be able to give final approval to the Settlement proposal under FED. R. CIV. P. 23(e)(2) ("Rule 23(e)(2)") and its enumerated factors.

A.  The proposed Settlement is fair, reasonable, and adequate.

The following analysis of the Rule 23(e)(2) factors provide the basis for this Court preliminarily approving the proposed Settlement and ordering that the proposed Class Notice be given to the Class.

1.  Ms. Craw and Class Counsel have adequately represented the Class.

When evaluating adequate counsel representation under Rule 23(e)(2)(A), "the focus at this point is on the actual performance of counsel acting on behalf of the class."  FED. R. CIV. P. 23(e)(2)(A) & (B), 2018 cmt.  Class Counsel obtained and analyzed over 70,000 pages of documents from Defendants, took or defended nine depositions, analyzed thirteen different

expert reports generated by Defendants, finished all discovery on Ms. Craw's individual claims, and obtained the Court's denial of the Defendants' motion to dismiss, prior to engaging in the negotiations that resulted in this proposed Settlement. *See* **Exhibit 9**, Horowitz Decl., at ¶ 9 (Doc. 171-9); *see also* p. 5, *supra*. Ms. Craw's efforts in this Action on behalf of the Oakhill and Oak Point proposed classes have included responding to Defendants' written discovery requests and producing hundreds of pages of documents, sitting for a day-long deposition at defense counsel's Boston office, consenting to an inspection of her home by the Oakhill Defendants' expert panel and even assisting with the organization of a resident meeting so that Class Counsel could update Oakhill residents about the status of the instant litigation, among other matters. *See id.* at ¶¶ 13–16. In this way, Class Counsel and Ms. Craw have adequately represented the proposed Class for Rule 23(e)(2) purposes only.

2. The Settlement was negotiated at arm's length.

Counsel for Ms. Craw and the Oakhill Defendants finished discovery on Ms. Craw's individual claims and actively and vigorously negotiated for twelve long months, before reaching the proposed Settlement.[14] They also sought and obtained the services of a respected mediator with extensive class action experience, John W. Perry, to help them. *See* **Exhibit 10**, Thagard Decl., at ¶¶ 7–8, 10 (Doc. 171-10). The "involvement of a neutral . . . mediator" in settlement negotiations can "bear on whether [negotiations] were conducted in a manner that would protect and further the class interests." FED. R. CIV. P. 23(e)(2)(A) & (B), 2018 cmt.; *see also* 4 NEWBERG ON CLASS ACTIONS, §13.50 ("there appears to be no better evidence of such a [truly adversarial bargaining] process than the presence of a neutral third party mediator"). That the

---

[14] *See* 4 NEWBERG ON CLASS ACTIONS, § 13:14 ("Where the proposed settlement [is] preceded by a lengthy period of adversarial litigation involving substantial discovery," courts have been "likely to conclude that settlement negotiations occurred at arms-length.").

Settling Oakhill Parties finished discovery on Ms. Craw's individual claims, engaged in twelve months of settlement negotiations, and used a neutral third-party mediator in that settlement process demonstrates that this Settlement was negotiated at arm's length.

3.    The Class Relief is adequate.

The Settlement negotiated by Ms. Craw on behalf of the Class will secure a $500,000 Settlement Fund.   The $500,000 figure was the result of extended, arm's-length negotiations between the parties and is supported by a substantial amount of discovery obtained both formally and informally from the Oakhill Defendants.   The $500,000 figure consists of a number that is well within the range of recoveries estimated by Ms. Craw's economic damages expert of $110,000 to $565,000,[15] plus damages for property damage and personal injury for residents of Oakhill that are reasonably estimated to be $250,000. Settlement Class Members who properly submit claims will receive a monetary benefit.   *See* **Exhibit 1**, Settlement, §§ III.B.1, VI.C (Doc. 171-1).   Class Members who feel that any aspect of their damages (including but limited to property damage, personal injury, loss of use, and economic damages) are highly individualized and/or exceed the monetary benefit they would recover as part of the Settlement may opt out of the Damages Class.   To ensure that Members of the Class learn of the $500,000 Settlement Fund, the Settlement requires that the Settling Oakhill Parties retain—regardless of whether or not this Settlement is finally approved—the services of an administrator who will be tasked with locating and contacting Class Members through a variety of methods—including mail, electronic mail and publication.   *See id.*, §§ III.H, V.B.   Additionally, to ensure that as many Class Members as possible submit Claim Forms, the Settlement requires the inclusion of Claim Forms with postage

---

[15] Ms. Craw is separately filing the Declaration of Brent Lutes & Report ("Lutes Decl.") as her support for the Motion for Preliminary Approval.  The Oakhill Defendants have no objection, for settlement purposes only, to the Lutes Decl.'s opined range of recovery for the claims in this Action relating to Oakhill.  Lutes Decl., ¶ 14.

paid envelopes in the mailed Settlement Notice and the establishment of a dedicated website as well as a phone line available to answer Class Member questions. *See id.*, §§ V.B.1.b, VI.B.1.

The Settlement also provides meaningful Injunctive Relief. It provides for the routine inspection, operation, and maintenance of all components of the Oakhill stormwater management system. *See* **Exhibit 1**, Settlement, § III.C.1–2 (Doc. 171-1); **Sub-Exhibit G to Exhibit 1**, Settlement (Doc. 171-1). While the enforceability of the Oakhill Stormwater Program under the Settlement will expire after five years, Ms. Craw or any other member of the Class may petition for the extension of these requirements for good cause. *See* **Exhibit 1**, Settlement, §§ III.C.1 (Doc. 171-1). The Injunctive Relief also provides a specific Stormwater Management Complaint Resolution Procedure for Oakhill residents. *See id.*, § III.C.4. The Injunctive Relief further provides that the Oakhill Defendants complete certain Stormwater Management System Improvement Projects which will improve certain components of the comprehensive Oakhill stormwater management system that serves and benefits all Class Members. *See id.*, §§ III.C.3, XVII.Q.

Taking into account all of these the Rule 23(e)(2)(C) factors, the proposed Settlement's Class Relief is more than adequate.

(i)  The costs, risks, and delay of trial and appeal

This litigation has already been pending for two-and-one-half years. The proposed Class would like relief now. There is no doubt that complex class action litigation is time-consuming and expensive for the class. *See Tardiff v. Knox Cnty.*, 365 F.3d 1, 4 (1st Cir. 2004) ("class action machinery is expensive"). Ms. Craw and the Oakhill Class also face a risk of losing class certification, given the manageability and other issues that the Oakhill Defendants would raise in a litigated class certification setting regarding the contested issues below. Even if Ms. Craw succeeded in her litigated class certification motion, she would face a risk of reversal on appeal.

Even if Ms. Craw ultimately prevailed on class certification, Ms. Craw and Class Members would have to prove their claims at trial. This trial would involve multiple contested issues, including whether the Oakhill Defendants have the duty to perform the services that Ms. Craw alleges, exactly what any such duties would be and whether the Oakhill Defendants complied with those duties, whether there is a Massachusetts Consumer Protection Act violation, whether Ms. Craw and the Class Members suffered injuries and if so, whether such injuries arose from the Consumer Protection Act violation, or whether they were caused by problems or issues unrelated to the Oakhill Defendants. *See Tyler v. Michaels Stores, Inc.*, 984 N.E.2d 737, 745 (Mass. 2013) (93A violation "must cause the consumer some kind of separate, identifiable harm arising from the violation itself"). Trial and appeal likely will take years. Trial poses the risk of an affirmed defense verdict. These risks support the appropriateness of a decision to settle and provide substantial relief now to the Oakhill Class.

> (ii)     The effectiveness of the proposed method of class relief distribution, including the proposed claims process.

The Settlement's Plan of Allocation is an equitable one, insofar as it is tied directly to the amount of time each Class Member resided at an Oakhill home site. *See* **Exhibit 1**, Settlement, §§ III.B.1 (Doc. 171-1); **Sub-Exhibit B to Exhibit 1**, Settlement (Doc. 171-1). Monetary relief will be provided to Class Members who submit timely and valid Claim Forms. *See, e.g.*, *Bezdek v. Vibram USA, Inc.*, 79 F. Supp. 3d 324, 333, 352 (D. Mass. 2015) (approving class settlement giving relief to class members who submit timely and valid claim forms). The claims process is simple, with a Claim Form that is easy to fill out. *See* **Sub-Exhibit A to Exhibit 1**, Settlement (Doc. 171-1). The first-class mail notice will include a postage pre-paid envelope for an easy Claim Form return. Ms. Craw has proposed a Settlement Administrator with substantial class

action claims handling experience. *See* **Exhibit 11**, Schulz Decl. (Doc. 171-11). This factor supports preliminary approval of the Settlement.

     (iii)  The terms and timing of any proposed attorney fee award.

  The agreement as to Attorney's Fees and Expenses in the proposed Settlement also demonstrates that it is fair, adequate, and reasonable. Class Counsel is requesting $162,500, which is to be paid in addition to the Settlement Fund. The Attorney's Fees and Expenses award will not be paid until 30 days after the Final Settlement Date, after exhaustion of any appeals regarding the Settlement. *See* **Exhibit 1**, Settlement, §§ X.A, II.X (Doc. 171-1).

     (iv)  Any agreement made in connection with the Settlement.

  No agreement has been made in connection with the Settlement Agreement other than the Settlement Agreement itself (with exhibits), *see generally* **Exhibit 1**, Settlement (Doc. 171-1), and a further agreement that the Oakhill Defendants increase the Settlement Cost Contribution from $10,000 to $12,758.62. *See* n.8, *supra*.

  Considering the Class Relief provided, as well as all of the Rule 23(e)(2)(C) factors, the relief provided for the Class is adequate.

    4. The Settlement treats Class Members equitably relative to each other.

  This factor can include an analysis of "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." FED. R. CIV. P. 23(e)(2)(C) & (D), 2018 cmt. All Oakhill Class Members have an opportunity to file a claim for monetary relief. Ms. Craw's claims focus on professional services not provided or inadequately provided. Class Members who feel that any aspect of their damages (including, but not limited to, property damage, personal injury, loss of use, and economic damages) are highly individualized and/or exceed the monetary benefit they would recover as part of the

Settlement may opt out of the Damages Class.  The Plan of Allocation's three-tiered distribution, giving more money to Class Members who have lived at Oakhill for a longer time and who have been subject to the alleged Policy for a longer time, is fair, adequate, and reasonable.  *See* **Exhibit 1**, Settlement, §§ III.B.1 (Doc. 171-1); **Sub-Exhibit B to Exhibit 1**, Settlement (Doc. 171-1); *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." (citation omitted)).  Everyone in each tier of length of residency is treated equally and will receive the same monetary amount.   Further, every Class Member is subject to the same release.  *See* **Exhibit 1**, Settlement, § IX (Doc. 171-1).  The only exception is that Oakhill Class Members who opt out of the Damages Class will only release claims for equitable and injunctive relief.  *See id.*, § IX.A.6.  This distinction is appropriate, given that those opting out Damages Class Members will be giving up their right to any portion of the Settlement Fund.

For all of the foregoing reasons, the Rule 23(e)(2) factors are likely to be met and the Settlement should be preliminarily approved.

> B.      Notice of the proposed Settlement is adequate, meets due process requirements, and should be given to the Class.

Class Members are entitled to notice of a proposed class action settlement.  Under Rule 23(e)(1)(B), when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Here, the proposed Class Notice is fair, adequate, and reasonable.   Class Notice is clear and straightforward, providing Class Members with enough information to evaluate whether to participate in the Damages Class or opt out and whether to object to the Settlement.  *See* **Sub-Exhibits A, C & D to Exhibit 1**, Settlement (Doc. 171-1).   It gives the address for the Settlement website and provides the toll-free number for the Settlement Administrator.  It gives

the Claim Form Deadline, the Objection Deadline, and the Opt-Out Deadline.  It explains that Settlement Class Members give a broad release in exchange for the Class Relief.  The mailed Settlement Notice (or long form notice) will include a Claim Form and a postage prepaid envelope for returning the Claim Form.  *See* **Exhibit 1**, Settlement, § V.B.1.b (Doc. 171-1).

The proposed method of disseminating the Class Notice is also fair, adequate and reasonable.  The Settlement Administrator, within 30 days after the Court's entry of the Preliminary Approval Order, shall send via U.S. mail the Claim Form and Settlement Notice to all Class Members who are on the Oakhill Known Residents Lists.  *See id.*  The Oakhill Known Residents List includes the Oakhill address for the known current residents based on the Oakhill Defendants' reasonably available lease records.  *See id.*, § II.II.  The Settlement Administrator will also send via U.S. mail the Claim Form and Settlement Notice to all former residents for whom the Settlement Administrator is able to locate an updated address pursuant to the Settlement Agreement.  *See id.*, §§ V.B.1.a–c.  The Settlement Administrator, within 30 days after the Court's entry of the Preliminary Approval Order, shall also send the Claim Form and Settlement Notice via e-mail to all Class Members identified on the Oakhill Known Former Residents E-mail List.  *See id.*, § V.B.1.d.  The Settlement Administrator, within 30 days after the Court's entry of the Preliminary Approval Order, shall further begin Publication Notice, to appear in the Sun Chronicle, the Boston Globe, and the Providence Journal.  *See id.*, § V.B.1.e; **Sub-Exhibit D to Exhibit 1**, Settlement (Doc. 171-1).  Publication Notice will appear once a week, for two consecutive weeks in each publication.  **Exhibit 1**, Settlement, § V.B.1.e (Doc. 171-1).  Class Members will have adequate time to object to the Settlement if they choose, opt-out from the Damages Class or file a Claim Form.  *See id.*, §§ II.F, LL, MM.

The First Circuit recognizes that in a class action settlement, notice requirements "can be met in appropriate cases by methods of notification other than actual personal notice." *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004) (citations omitted).  While "it is the court's duty to ensure that the notice ordered is reasonably calculated to reach the absent class Members," *id.* (citation omitted), the First Circuit has concluded that such reasonably calculated notice was satisfied in a settled class action where complaining class members claimed they did not receive actual notice, but notice included publication in the Boston Globe, and the class members were Massachusetts residents, *see id.* at 54, 57.  Here, the proposed method of providing notice—a combination of first-class mail to Oakhill Class Members listed on the Oakhill Known Residents List and to those former residents for whom an updated U.S. mailing address can be found, e-mail notice to those former residents listed on the Oakhill Known Former Residents E-mail List, and publication notice in three separate publications—is more than adequate under Rule 23(c)(2).  The Settling Oakhill Parties thus respectfully request that the Court preliminarily approve the Settlement and order the Class Notice to be given.

     C.     Attorney's Fees and Expenses award.

In light of his contribution to the Settlement Class, Class Counsel proposes an award of $162,500 in fees and costs, as a fair and reasonable component of the Settlement.  In reviewing the reasonableness of an attorney's fee award requested as part of a class-action settlement, a reviewing court—sitting in its diversity jurisdiction—applies federal law when determining the reasonableness of the award in the context of the overall settlement, *see* FED. R. CIV. P. 23(e)(2)(C)(iii), but applies the substantive law of the forum state in assessing whether the award is independently reasonable in relation to the work performed by the attorney. *See In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 15 (1st Cir. 2012) [*Volkswagen I*"] ("We also start with the basic premise that the issue of attorney's fees has long been considered

for *Erie* purposes to be substantive and not procedural, and so state-law principles normally govern the award of fees."). Under both analyses, "what constitutes a reasonable fee is a question that is committed to the sound discretion of the judge." *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 164 (D. Mass. 2015) (Young, J.) ["*Volkswagen II*"] (alteration adopted) (citation omitted) (applying Massachusetts law); *see also* FED. R. CIV. P. 23(e)(2)(C) & (D), 2018 cmt. ("Examination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement."). With respect to the state law analysis, Courts of the Commonwealth typically channel their discretion through application of the "lodestar method"—that is, identifying a reasonable number of hours the attorney spent litigating the matter, adjusting that figure on the basis of certain factors, and then considering whether to multiply that number again by a "multiplier" which enhances the "lodestar appropriately to reflect, for example, the scale of the results achieved . . . or the risks counsel took in pursuing contingent fees." *Volkswagen II*, 89 F. Supp. 3d at 165.[16]

With respect to the specific award of fees and costs outlined in the Settlement, Class Counsel states that he vigorously pursued the above-captioned action—both in litigation and settlement postures—on behalf of the Settlement Class. After careful review of his time records, Class Counsel has identified to-date more than 200 hours spent on tasks which primarily benefitted the Settlement Class and which should be accounted for in the resolution of the

---

[16] Courts approach the lodestar analysis as an effective shorthand for reviewing various factors mandated by the Supreme Judicial Court in assessing the reasonableness of a fee award "including the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the results obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." *Volkswagen II*, 89 F. Supp. 3d at 164 (internal quotations omitted); *see also, e.g.*, *In re AMICAS, Inc. Shareholder Litig.*, 27 Mass. L. Rptr. 568, at *3 (Mass. Super. Ct. 2010) (Neel, J.) (same factors).

05863291.25

24

Settlement Class's claims.  *See* **Exhibit 9**, Horowitz Decl., at ¶¶ 19–24 (Doc. 171-9).[17]  Given the skill with which he has prosecuted this litigation and given that Class Counsel is the managing attorney of his civil legal aid law firm and has been practicing law for approximately twelve years, *see id.* at ¶¶ 1–4, Class Counsel submits that his work should be valued at $400 per hour – a rate which is well within the range of what junior partners charge at Boston-area law firms when undertaking complex litigation.  *See*, *e.g.*, *Commonwealth Care All. v. AstraZeneca Pharm., L.P.*, No. CIV.A. 05-0269 BCS 2, 2013 WL 6268236, at *1 (Mass. Super. Ct. Aug. 5, 2013) (Sanders, J.) (collecting cases regarding reasonable fees); *Gordan v. Archer*, 1999 Mass. App. Div. 154, *2 n.7 (Mass. Dist. Ct. 1999) ("The fact that the prevailing party is represented by a legal services attorney is irrelevant to any determination of an award of such fees under the statute.").[18]  Moreover, given the risk he assumed in undertaking this litigation as well as the results he achieved, Class Counsel respectfully submits that his work merits the standard

---

[17] Given the respective sizes of the Oakhill and Oak Point Manufactured Housing Communities, the Settlement Class is likely to be about five times smaller than the putative class of current and former residents of the Oak Point Manufactured Housing Community.  In light of this disparity in size, the undersigned submits that the fairest way to apportion his fees between the two groups is to seek an Attorney's Fees and Expenses award in this Oakhill Settlement for the cost of tasks which primarily benefitted the Oakhill Class.  The undersigned will seek an award in the remaining Oak Point case for the cost of all remaining tasks—including tasks which jointly benefitted both communities.  Accordingly, Class Counsel only seeks an Attorney's Fee and Expenses award in this Oakhill Settlement for the following groups of activities and will seek compensation in the remaining Oak Point litigation for all other tasks not listed here: the investigation of conditions at Oakhill and the review of expert reports concerning the same, Ms. Craw's written discovery responses and document productions primarily attributable to Craw, Ms. Craw's deposition and the deposition of Oakhill Community Manager Josephine Santa Fe and the conduct of settlement negotiations involving the Settlement Class.  *See* **Exhibit 9**, Horowitz Decl., at ¶¶ 20–24 (Doc. 171-9).

[18] While the undersigned acknowledges that in previous fee petitions he has requested a rate of $250 per hour for his work, the requested rate was based on the undersigned's most recent hourly rate while working in the private sector—work which concluded approximately five years ago and which was akin to that of a law firm associate.  *See* **Exhibit 9**, Horowitz Decl., at ¶¶ 2–3 (Doc. 171-9).  The undersigned's work on behalf of the proposed Settlement Class has been substantially more complex and reflective of the work of a law firm partner that merits a higher rate.

multiplier of two for litigation without a paying client that involves novel issues of law and implicates substantial questions of public import. *See, e.g.*, *Volkswagen II*, 89 F. Supp. 3d at 166–67, 171 (adopting multiplier of 2); *Commonwealth Care All.*, 2013 WL 6268236, at *2 (same); *see also, e.g.*, *Roberts v. TJX Cos., Inc.*, No. 13-cv-13142-ADB, 2016 WL 8677312, at *13 (D. Mass. Sep. 30, 2016) (Burroughs, J.) (collecting cases where "[m]ultipliers of 2 and more have been found reasonable"). Accordingly, Class Counsel respectfully submits that the $162,500 in attorney's fees and litigation costs are reasonable components of this settlement, and Defendants do not oppose the request.[19]

D.    Class Representative Incentive Award.

In light of her contribution to the Settlement Class, Class Counsel requests that an incentive award of $17,500 for Ms. Craw would be a fair and reasonable component of the settlement. Courts assess the reasonableness of a proposed class representative incentive award with great discretion and typically measure the award against a class representative's active participation in the litigation as well as her "important function in promoting class action settlements." *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 98 (D. Mass. 2005) (Stearns, J.); *accord Relafen Antitrust Litig.*, 231 F.R.D. at 82. Class Counsel states that that requested $17,500 for Ms. Craw properly reflects her extensive cooperation with Class Counsel

---

[19] "Massachusetts appellate courts have not expressly authorized the use of the percentage method" to calculate reasonable attorney's fees in a common-fund case. *AMICAS*, 27 Mass. L. Rptr. 568, at *3. Nevertheless even if the percentage standard is applied to this settlement—*cf. Volkswagen I*, 692 F.3d at 16–17—the undersigned's fee request is reasonable. The undersigned's requested $162,500 in fees and costs is just shy of 25% of the approximate $690,000 in funds Defendants will pay for this Settlement if Plaintiff's requested Attorney's Fees and Expenses award and Class Representative Award are approved—a percentage which is widely deemed reasonable in such cases and comports with the contingency in the undersigned's standard retainer agreement. *See* **Exhibit 9**, Horowitz Decl., at ¶ 4 (Doc. 171-9); *see also, e.g.*, *Ark. Teacher Ret. Sys. v. State Street Bank & Tr. Co.*, Nos. 11-10230-MLW, No. 11-12049-MLW, No. 12-11698-MLW, 2020 WL 949885, at *10 (D. Mass. Feb. 27, 2020) (Wolf, J.) (noting that "the 20-30% range generally [is] presumed to be reasonable").

and participation in the above-captioned action to ensure that the Settlement Class was properly represented.  Class Counsel proposes that given her active and prolonged participation in this litigation, *see* pp. 15–16, *supra*, the requested $17,500 incentive award is reasonable and Defendants do not oppose the request, *see, e.g.*, *Commonwealth Care All.*, 2013 WL 6268236, at *1 ($15,000 incentive payment found reasonable for each individual plaintiff in extended litigation).

## *CONCLUSION*

Based on the foregoing, the Settling Oakhill Parties and their respective counsel endorse the proposed Settlement as fair, reasonable, and adequate, and respectfully reiterate their request that the Court, pursuant to FED. R. CIV. P. 23: preliminarily determine that the Settlement is fair, reasonable and adequate; preliminarily certify the proposed Injunctive Relief Class under Rule 23(b)(2) and the proposed Damages Class under rule 23(b)(3) for settlement purposes only; and take the other procedural actions outlined in the proposed Order, filed with the Motion for Preliminary Approval as **Sub-Exhibit E** to the **Exhibit 1** (Doc. 171-1), that the undersigned submit are necessary for the proper effectuation of this proposed class-action settlement.

BARBARA CRAW, individually and on behalf of the Oakhill Class,

By her attorney,

*/s/ Ethan R. Horowitz*
Ethan R. Horowitz (BBO No. 674669)
ehorowitz@njc-ma.org
NORTHEAST JUSTICE CENTER
50 Island Street, Suite 203B
Lawrence MA 01840
(978) 888-0624

-and-

05863291.25                                    27

HOMETOWN AMERICA, LLC,
HOMETOWN AMERICA MANAGEMENT, LLC,
HOMETOWN OAKHILL, LLC,

By their attorneys,

*/s/ Lisa C. Goodheart*
Lisa C. Goodheart (BBO No. 552755)
goodheart@sugarmanrogers.com
Tristan P. Colangelo (BBO No. 682202)
colangelo@sugarmanrogers.com
SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
101 Merrimac Street, Suite 900
Boston MA 02114
(617) 227-3030

W. Scott Simpson (*Pro Hac Vice*)
wsimpson@smgblawyers.com
SIMPSON, MCMAHAN, GLICK & BURFORD, PLLC
2700 Highway 280, Suite 203W
Birmingham, AL 24112
(205) 876-1600

-and-

Lee E. Bains, Jr. (*Pro Hac Vice*)
lbains@maynardcooper.com
Thomas W. Thagard (*Pro Hac Vice*)
tthagard@maynardcooper.com
James C. Lester (*Pro Hac Vice*)
jlester@maynardcooper.com
Lorrie L. Hargrove (*Pro Hac Vice*)
lhargrove@maynardcooper.com
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
(205) 254-1000

05863291.25

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 6, 2021, the foregoing Memorandum was electronically filed with the Clerk of the Court through the CM/ECF system, which will send notification of such filing to registered participants.

/s/ *Lorrie L. Hargrove*
Lorrie L. Hargrove